IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) PERRY CLINE, on behalf of himself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>(1) SUNOCO, INC. (R&M); and<br>(2) SUNOCO PARTNERS MARKETING & TERMINALS, L.P.,<br><br>Defendants. | Civil Action No. 17-CV-313-SPS<br><br>(Removed from the District Court of Seminole County, Oklahoma, formerly state case No. CJ-2017-75) |

## NOTICE OF REMOVAL

Please take notice that Defendants Sunoco, Inc. (R&M), now Sunoco (R&M), LLC and Sunoco Partners Marketing & Terminals, L.P. (collectively "Defendants"), notify this Court of the removal of this action from the District Court of Seminole County, Oklahoma, to this Court, and states as follows:

**I.      PLAINTIFF'S CLASS ACTION CLAIMS**

1. On July 17, 2017, Defendants were served with summons and a copy of an original class action petition filed in in the district court of Seminole County, Oklahoma. *See* Summons, Ex. 1; Plaintiff's Original Petition ("Petition"), Ex. 2; Seminole County Docket Sheet, Ex. 3. Plaintiff Perry Cline purports to sue individually and on behalf of a putative class of "thousands" of unnamed individual class members who Plaintiff alleges received untimely payments from Defendants for oil and gas proceeds from wells in the State of Oklahoma. Petition, ¶ 21-22. The Petition asserts claims that make the case removable under the Class Action Fairness Act ("CAFA"), as set forth below. *See* 28 U.S.C. §§1446(b)(3), 1453(b).

2. Plaintiff claims that Defendants, as alleged first purchasers of oil and gas production in the State of Oklahoma, "routinely" delayed making payments to Plaintiff and

19712128_1

putative class members and "consistently" ignored an obligation to pay statutory interest on such payments allegedly in accordance with the Oklahoma Production Revenue Standards Act ("PRSA"). Plaintiff alleges that Defendants' conduct is part of an ongoing fraudulent scheme to avoid paying money to him and to the putative class he says put special trust and confidence in Defendants. And Plaintiff alleges that Defendants have taken advantage of that trust and intentionally suppressed from him and the putative class members that PRSA interest was not correctly paid. Plaintiff asserts that Defendants' alleged practice is intentional, willful, and grossly negligent and constitutes a breach of the PRSA and fraud.

3. Plaintiff seeks for himself and each of the alleged "thousands" of putative class members:

- actual damages to fully compensate for losses sustained, including the statutory interest due under the PRSA on all delayed oil and gas payments;
- punitive damages as provided by Oklahoma law;
- disgorgement of any gains Defendants allegedly derived because it had available to it monies allegedly not paid to Plaintiff and putative class members;
- an equitable accounting to determine the allegedly proper amount of each of the potentially millions of individual royalty payments and ascertain the PRSA interest to be paid on each of those payments;
- an injunction requiring Defendants to pay interest in a specified manner in the future;
- all amounts recoverable under the PRSA as attorney fees and litigation costs; and

- costs and other relief deemed appropriate.

4. Plaintiff seeks to represent a class defined as all persons or entities (except those specifically excluded) who received untimely payments from Defendants (or Defendants' designees) for oil and gas proceeds from Oklahoma Wells, and whose payments did not include the alleged statutory interest. Petition, ¶ 21.

5. Entries of Appearance filed by Plaintiff's counsel in Seminole County are attached as Exhibits 4 through 7. The Special and Limited Appearance and Unopposed Motion to Extend Time to Answer or otherwise Respond to Plaintiff's Petition filed by Defendants in Seminole County is attached Exhibit 8.[1] Defendants are unaware of the existence of any process, pleadings, or orders other than the documents included in Exhibits 1-8. Nor are Defendants aware of any motions pending before the Seminole County District Court in this matter, or any currently set hearings regarding the same other than the documents included in Exhibits 1-8. *See* Seminole County Docket Sheet, Ex. 2.

## II. JURISDICTION OF THE FEDERAL COURT

6. This Court has original jurisdiction over this class action because the matter in controversy exceeds the sum or value of $5,000,000.00, a member of the putative class of plaintiffs is a citizen of a State different from any defendant, and the number of members of the putative class exceeds 100. *See* Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

### A. There Is a Diversity of Citizenship

7. As Plaintiff alleged in the Petition, Defendants together are citizens of Texas and Pennsylvania. *See* Petition, ¶¶ 13-14; *see also* 28 U.S.C. § 1332(d)(10) (indicating that a limited partnership is a citizen of the states where it is organized and where it has its principal place of

---

[1] Exhibit 8 includes a corrected certificate of service.

business for purposes of CAFA). The named Plaintiff is an individual who resides in (and is therefore a citizen of) Oklahoma. Members of the putative class, as defined in the Petition, are individuals who reside in (and are therefore citizens of) every state in the U.S. and many foreign countries.

8.      Because members of the putative class, as defined by the Petition, are citizens of states different from those of which any Defendant is a citizen, the minimum diversity required by CAFA is satisfied. 28 U.S.C. § 1332(d)(2)(A)(B) & (10) (CAFA diversity exists if "any member of a class of plaintiffs is a citizen of a State different from any defendant" or "any member of a class of plaintiffs is a…citizen or subject of a foreign state and any defendant is a citizen of a State"); *see also Weber v. Mobil Oil Corp.*, 506 F.3d 1311, 1313 (10th Cir. 2007) (indicating that § 1332(d)(2)(A) "extends the subject matter jurisdiction of the federal courts to encompass putative class actions in which at least one plaintiff class member is diverse from one defendant and where the amount in controversy exceeds $5 million").

**B.      The Amount in Controversy Exceeds Five Million Dollars**

9.      For CAFA purposes, the claims of each individual class member are "aggregated" to determine if the amount in controversy requirement is met. 28 U.S.C. § 1332(d)(6). A defendant's "plausible allegation in the notice of removal that the matter in controversy exceeds the jurisdictional threshold" suffices to invoke federal jurisdiction. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014).[2] As in this case, when the plaintiff

---

[2] *Dart* established that no evidentiary submission need accompany the notice of removal. *Id.* at 554. Evidentiary submissions are not required unless the material jurisdictional facts alleged in the notice of removal are contested. *McPhail v. Deere & Co.,* 529 F.3d 947, 954 (10th Cir. 2008). Uncertainty about whether the plaintiff can actually obtain the sum or value alleged at issue will not defeat federal jurisdiction unless it is "legally certain" that the plaintiff cannot recover them. *Id.*; *see also Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). *Brill*'s articulation of the rule the Tenth Circuit likewise adopted is compelling:

does not specify the amount of damages claimed, the defendant may rely, among other things, on an estimate of potential damages from the allegations in the complaint to support its plausible allegations and even to establish that the jurisdictional threshold is exceeded. *McPhail v. Deere & Co.*, 529 F.3d 947, 956-57 (10th Cir. 2008).

10. Here, the allegations on the face of Plaintiff's Petition establish beyond doubt that federal jurisdiction exists. Plaintiff alleges that the amount in controversy exceeds $10,000 and that his claims in particular are for an unspecified amount less than $75,000 "exclusive of attorneys' fees, litigation expenses, costs and interest." Petition ¶ 19. Plaintiff claims there are "thousands" of others just like him with similar claims. *Id.* ¶ 22. He seeks a broad array of legal and equitable relief described to remedy what he asserts is a pervasive, consistent scheme to obtain "interest free loans" and asks the Court to determine, in addition to the statutory interest amounts allegedly owed, the amount of any benefits Defendants obtained from this alleged scheme. *Id.* ¶¶ 31-36, 62.

11. Plaintiff also seeks to compel Defendants to pay for the accounting of potentially millions of individual payment transactions, related to perhaps as many sales of oil and gas produced from thousands of wells for thousands of alleged class members. He seeks a perpetual injunction to impose on every future transaction. *Id.* ¶ 60-61. And although his amount-in-controversy allegation purports to be exclusive of litigation expenses and attorneys' fees,

---

> When the plaintiff prefers to be in state court, however, the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy. A defendant's notice of removal then serves the same function as the complaint would in a suit filed in federal court. The complication is that a removing defendant can't make the plaintiff's claim for him. . . . The demonstration [in the notice of removal] concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.

Plaintiff seeks to recover them for himself and the class based on a claimed statutory right. *Id.* at Prayer ¶ 7. On these allegations alone, it is indisputable that the sum or value of more than $5,000,000, exclusive of interest or costs, is in controversy.

### a.   Actual Damages

12.   Plaintiff seeks to recover compensatory damages reflecting the statutory interest allegedly due on any untimely royalty payments Defendants made. Petition, Prayer ¶ 2 (requesting order "requiring Defendant to pay Plaintiff and Class members. . . the compounded interest on Untimely Payments as required by law"). These interest amounts may be considered in determining the CAFA jurisdictional amount because Plaintiff claims that they are his and the putative class's actual damages. Plaintiff's equitable accounting claim is predominantly aimed at compelling the determination and payment of these statutory interest amounts, and his Petition makes clear that they are not ancillary to some other underlying amount in dispute. *Cf. State Farm Mut. Auto. Ins. Co. v. Narvaez,* 149 F.3d 1269, 1271 (10th Cir. 1998).

13.   Plaintiff contends that Defendants "consistently ignored their obligations to pay interest" and "knowingly and intentionally suppressed the fact that interest was owed." Petition*,* ¶¶ 7, 53. Plaintiff thus apparently seeks to litigate the claims of thousands of individual claimants over a twenty-four year period running from the enactment of the PRSA in 1992 to the present under some theory of fraudulent concealment, despite the fact that the statute of limitations is 5 years under the PRSA. *See* Petition, ¶¶ 21, 23, 54 (class definition not limited in time, and class claims include alleged "knowing and intentional" suppression and deception of the fact that interest was owed).[3] Defendants vigorously dispute the merits of Plaintiffs' claims, the propriety of any relief to Plaintiff or the proposed class, and any implication that Defendants have

---

[3] Defendants in no manner concede that its potential liability extends back to the statute's inception in 1992, but reference this point only because Plaintiff's class definition and other pleadings do not reference a relevant time period.

fraudulently concealed the alleged wrongful conduct. If taken as true, however, Plaintiff's allegations demonstrate that the amount in controversy exceeds the CAFA jurisdictional threshold.

14. Indeed, in the last 5 years (without going back to 1992, as presumably alleged in the Petition), Defendants have remitted payments for oil and gas proceeds received for production from Oklahoma wells to over 135,000 payees. The magnitude of payees, the millions of individual royalty payments made over theses years to payees, and the alleged PRSA interest rates allegedly due on the payments Plaintiff says Defendants "routinely" delayed (12% or 6%, depending on the reason for withholding) plausibly supports Defendants' allegation that the amount in controversy exceeds the CAFA $5,000,000 jurisdictional amount, exclusive of interest and costs.

        **b. Attorneys' Fees, Expert Fees, Disgorgement, and Punitive Damages**

15. Even assuming the compensatory damages claim alone did not meet CAFA's amount in controversy requirement, the $5,000,000 threshold is most certainly met when those potential damages are considered with the other relief Plaintiff seeks in this case. First, Plaintiff alleges a right to recover attorney and expert fees, which the PRSA allows to a prevailing party. Okla. Stat. tit. 52, § 570.14(A)(2). Plaintiff's attorney has testified in support of attorneys' fee applications in other royalty owner class litigation that an award of forty percent of the class recovery is customary and reasonable. Under Plaintiff's allegations and his attorney's testimony in other royalty cases, if Plaintiff prevails in this case, attorneys' fees alone could easily be several million dollars. *See McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741, at * 46-47 (W.D. Okla. Oct. 27, 2008) (citing *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*, 1993 U.S. Dist. LEXIS 19969 at *2 (W.D. Okla.

June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").

16.     In addition, expert fees in class action royalty-related litigation are usually substantial given the complexity of the issues involved and the volume of complex data that must be analyzed to determine compliance with lease, division order, statutory, and other obligations. In this particular case, those complexities are magnified by the sheer size of the proposed class, the decades of millions of royalty payments involved, and the title issues attendant to determining which interest rate under the PRSA applies. It is thus reasonable to conclude that expert witness fees that would be incurred to analyze the relevant instruments and the payment, production, and sales records would result in at least several hundreds of thousands of dollars in expert fees recoverable under the PRSA if Plaintiff prevails.

17.     Furthermore, it is settled that "'[p]unitive damages may be considered in determining the requisite jurisdictional amount.'" *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012) (quoting *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003)).[4] Similarly, if a plaintiff seeks disgorgement, the amount

---

[4] In order to include punitive damages, the defendant is not required to prove that the plaintiff is more likely than not to recover punitive damages, but need only show that "(1) state law permits a punitive damages award for the claims in question; and (2) the total award, including compensatory and punitive damages, could exceed $5,000,000." *Frederick* v. *Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012); *see also Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) ("the question…is not whether the class is more likely than not to recover punitive damages, but whether [state] law disallows such a recovery"). Oklahoma's 23 O.S. § 9.1(C) may allow recovery of punitive damages for the fraud claim pleaded here and recovery could include up to twice the amount of actual damages. When, as here, Plaintiff has alleged purported tortious acts and associated punitive damages for thousands of putative class members, the Court is entitled to make "effortless mathematical calculations" and conclude based on the face of the Petition that the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See Plummer v. Farmers Grp., Inc.*, 388 F. Supp. 2d 1310, 1318 (E.D. Okla. 2005) (holding that defendants' notice of removal showed, by preponderance of evidence, that amount in controversy exceeded

to be disgorged is correctly considered part of the amount in controversy. *Cox v. Allstate Ins. Co.*, CIV-07-1449-L, 2008 WL 2167027, at *2 (W.D. Okla. May 22, 2008). Given the size of the proposed class, the alleged twenty-four year claim period, and the millions of individual royalty payments at issue, the punitive damages and disgorgement (alleged to be the amount of any benefits to Defendants derived from use over time of interest owed to Plaintiff and the putative class) in this case likely will be several million dollars.

### c. Accounting

18. The value of the matter in controversy in suits requesting equitable relief such as an accounting includes the cost of performing that relief if granted. *See, e.g.*, *Okla. Retail Grocers Ass'n v. Wal-mart Stores, Inc.*, 605 F.2d 1155, 1155 (10th Cir. 1979). An accounting with respect to the claims of the thousands of putative class members in this matter would not be a simple task. One would need to identify and analyze voluminous ownership, production, payment, and sales records with respect to each individual class claimant and each of their individual monthly royalty payments to determine compliance with the PRSA and, if there is no compliance, what amount is due. This monumental project would require the work of qualified oil and gas accountants and, assuming a full accounting can be accomplished in light of the complexities and individual analyses that must be done, could take over a year to accomplish. Because of the number of claimants, payments, wells, and complexities involved, the cost to perform an accounting by itself and in the form Plaintiff requests will likely exceed $5,000,000.

19. It is therefore apparent that the amount in controversy exceeds the jurisdictional amount in controversy for removal under CAFA, without even considering Plaintiff's additional claim for injunctive relief, which would necessarily add to the amount in controversy.

---

$5,000,000 where plaintiff requested unspecified actual damages and punitive damages for each of "thousands" of class members).

C. **There Are No Defendants Who Are Government Entities and the Putative Class Members Exceed One Hundred**

20. CAFA does not apply to any class action in which the primary defendants are States, State officials, or other governmental entities or the number of members of the class is less than 100. 28 U.S.C. § 1332(d)(5). Here, there are no governmental entity defendants, and the number of putative class members exceeds 100.

21. Neither of the Defendants is a State, State official, or governmental entity.

22. The number of putative members of the class exceeds 100. Plaintiff alleges that there are "thousands" of putative class members. Petition, ¶ 22. Therefore CAFA's requirement that the proposed plaintiff class as at least 100 members is met.

23. Defendants do not believe Plaintiff has defined a proper class, and the Petition does not allege the exact number of purported class members. However, based on the allegations included in the Petition, Plaintiff's proposed class, if certified, would include at least 100 members as required by 28 U.S.C. § 1332(d)(5)(B). *See generally supra* at ¶ 14.

D. **Removal Is Timely**

24. Defendants were served with the Summons and Petition on July 17, 2017. *See* Ex. 1. This Notice of Removal is timely because it is filed within 30 days after such service. 28 U.S.C. §§1446(b), 1453.

E. **State Court Docket Sheet/ Notice of Filing in the State Court**

25. In accordance with 28 U.S.C. 1446(d), this pleading certifies that this Notice of Removal is being filed in the District Court of Seminole County, Oklahoma within 30 days of the service of the Summons and Petitions on Defendants. Also, in accordance with Local Rule 81.2, a copy of all documents filed or served and a copy of the docket sheet in the District Court of Seminole County, Oklahoma, is being filed concurrently herewith.

26. Under 28 U.S.C. § 1446(a), the United States District Court for the Eastern District of Oklahoma is the appropriate court for filing this Notice of Removal from the District Court of Seminole County, State of Oklahoma. See 28 U.S.C. § 116(b). Venue is proper for purposes of removal only pursuant to 28 U.S.C. § 1441(a).

27. Defendants reserve the right to amend or supplement this Notice of Removal.

28. Defendants reserve all defenses, including, without limitation, those set forth in Federal Rule of Civil Procedure 12(b).

Based on these facts, Defendants remove the above-captioned action to the United States District Court for the Eastern District of Oklahoma.

Dated: August 14, 2017                                  Respectfully submitted,


                                                        s/Mark D. Christiansen
                                                        Mark D. Christiansen OBA # 1675
                                                        **MCAFEE & TAFT**
                                                        **A PROFESSIONAL CORPORATION**
                                                        10th Floor, Two Leadership Square
                                                        211 N. Robinson Ave.
                                                        Oklahoma City, OK 73102-7103
                                                        Telephone: (405) 552-2235
                                                        Fax: (405) 228-7435
                                                        mark.christiansen@mcafeetaft.com

                                                        Daniel M. McClure (*pro hac vice pending*)
                                                        dan.mcclure@nortonrosefulbright.com
                                                        Rebecca J. Cole (*pro hac vice pending*)
                                                        rebecca.cole@nortonrosefulbright.com
                                                        **NORTON ROSE FULBRIGHT US LLP**
                                                        1301 McKinney, Suite 5100
                                                        Houston, TX 77010-3095
                                                        Telephone (713) 651-5151
                                                        Fax (713) 651-5246

                                                        **ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August, 2017, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to the following:

Michael Burrage
WHITTEN BURRAGE
512 N. Broadway, Suite 300
Oklahoma, City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
mburrage@whittenburragelaw.com

Susan R. Whatley
Andrew G. Pate
NIX, PATTERSON & ROACH, L.P.
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415
swhatley@nixlaw.com
dpate@nixlaw.com

Patrick M. Ryan
Philip G. Whaley
Jason A. Ryan
Paula M. Jantzen
RYAN WHALEY COLDIRON JANTZEN
    PETERS & WEBBER PLLC
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 239-6040
Facsimile: (405) 239-6766
pryan@ryanwhaley.com
jryan@ryanwhaley.com
pjantzen@ryanwhaley.com

Bradley E. Beckworth
Jeffrey J. Angelovich
Lisa P. Baldwin
Trey Duck
Cody L. Hill
NIX, PATTERSON & ROACH, LLP
3600 North Capitol of Texas Highway
Suite 350B
Austin, Texas 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5332
bbeckworth@nixlaw.com
jangelovich@npraustin.com
lbaldwin@nixlaw.com
tduck@nixlaw.com
codyhill@nixlaw.com

Lawrence R. Murphy, Jr.
Mariann M. Robison
RICHARDS & CONNOR
ParkCentre Building
525 South Main Street
Twelfth Floor
Tulsa, OK 74103-4509
Telephone: (918) 585-2394
Facsimile: (918) 585-1449
lmurphy@richardsconnor.com
mrobison@richardsconnor.com

I hereby certify that on the 15th day of August, 2017, I will notify the District Court of Seminole County, Oklahoma, where this case was pending, of this removal, and will include a copy of this Notice of Removal.

                                                s/Mark D. Christiansen
                                                Mark D. Christiansen