IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PERRY CLINE, on behalf of himself
and all others similarly situated,
        Plaintiff,

v.                                                     Civil Action No. 6:17-cv-313-JAG

SUNOCO, INC. (R&M), and,
SUNOCO PARTNERS MARKETING
& TERMINALS, L.P.,
        Defendants.

## OPINION

Perry Cline owns a royalty interest in oil wells in Oklahoma. The defendants, Sunoco, Inc. (R&M), and Sunoco Partners Marketing & Terminals, L.P. ("Sunoco"), purchase oil from the wells, which they then sell. Sunoco pays interest owners, including Cline, proceeds from the oil it purchases and sells. Oklahoma's Production Revenue Standards Act ("PRSA") governs when Sunoco must pay those proceeds and imposes statutory interest for paying the proceeds late. *See* Okla. Stat. tit. 52, § 570, *et seq.* Cline has sued Sunoco for failing to pay the statutory interest on late payments it made on oil proceeds. Cline also seeks to maintain a class action on behalf of well owners who did not receive their production proceeds on time and did not receive statutory interest with those payments. He seeks money damages for violating the PRSA, damages for fraud, punitive damages, an accounting, and other equitable relief.

After Cline filed this lawsuit, Sunoco investigated the claim and tendered to Cline the statutory interest Sunoco believes it owed him. Cline has not cashed the check Sunoco sent him for the interest. Sunoco now moves to dismiss this action, arguing that the Court lacks subject matter jurisdiction because the tender of payment has mooted Cline's claim.

The Court will deny the motion because the tender of payment does not provide Cline with complete relief. Cline, therefore, has standing to pursue his class claims.

## I. **BACKGROUND**

Sunoco purchases oil from numerous wells in Oklahoma and distributes proceeds from the oil to well owners. Under the PRSA, Sunoco must pay statutory interest to interest owners when it does not pay the proceeds on time, based on timetables set forth in the statute. The PRSA contains several exceptions to the requirement to pay within those timetables.

Sunoco often waits to pay the statutory interest until an interest owner requests the interest. Sunoco then investigates the payment and pays the interest if it determines it paid the proceeds late and owes the requestor interest under the PRSA.

In July, 2017, Cline sued Suncoco in Oklahoma state court, alleging that its practice for investigating and paying the proceeds violates the PRSA. He also alleges that Sunoco has committed fraud by hiding the fact that Sunoco owes interest to the class members. Cline seeks class certification, actual damages, an accounting, disgorgement, an injunction, punitive damages,[1] and attorneys' fees and costs. Sunoco removed the action to this Court in August, 2017.

After Cline filed the lawsuit, Sunoco investigated Cline's claims that Sunoco owed Cline statutory interest. In December, 2017, Sunoco sent Cline a check for the interest it believes it owed him for late payments made in 2015 and 2016. Sunoco attached a check to a letter that described the check as an unconditional payment and not an offer to settle the lawsuit. To date, Cline has not cashed the check.

---

[1] Because Cline did not include punitive damages in his initial disclosures, Sunoco argues that Cline can no longer seek these damages.

2

Cline moved to certify the class and name him as class representative in June, 2019. In August, 2019, Sunoco moved to dismiss for lack of jurisdiction. Sunoco argues that it has paid Cline all the statutory interest Sunoco owes him, and that Sunoco has not made any late payments to Cline since 2016. Sunoco says this unconditional tender moots Cline's claim. Sunoco argues that because Cline no longer has a live controversy with Sunoco, the Court should dismiss the case and deny the class certification motion.

## II. DISCUSSION

### A. *Legal Standard*[2]

Federal courts have jurisdiction over "cases" and "controversies." U.S. Const., Art. III, § 2. A plaintiff must show that he has a legally cognizable interest, or personal stake, in the outcome of the litigation. *Genesis Healthcare Corp. v. Symcyzk*, 569 U.S. 66, 71 (2013). "This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Id.* To have standing to bring an action, a plaintiff must prove (1) that

---

[2] A motion under Rule 12(b)(1) tests the court's subject matter jurisdiction. The plaintiff bears the burden of proving subject matter jurisdiction as the party asserting jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). When a defendant moves to dismiss based on mootness, however, the defendant bears the burden to show that a case or controversy no longer exists. *Conkleton v. Zavaras*, 527 F. App'x 750, 752 (10th Cir. 2013). Parties generally bring one of two types of Rule 12(b)(1) motions. "First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). A district court must accept the allegations in the complaint as true when reviewing a facial attack. "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Id.* When reviewing a factual attack, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). Referencing evidence outside the pleadings, therefore, "does not convert the motion into a Rule 56 motion." *Id.*

he suffered an injury in fact that is "concrete and particularized and . . . actual or imminent, not conjectural or hypothetical;" (2) that the injury is "fairly traceable to the challenged action of the defendant;" and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by the relief requested." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

An actual controversy must exist at all stages of the action; if the plaintiff loses his "personal stake" at any point during the litigation, the court must dismiss the action as moot. *See Genesis Healthcare Corp.*, 569 U.S. at 71. "A case becomes moot, however, 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). If a party has a concrete interest in the outcome of the action, "however small," a court should not dismiss the case as moot. *Id.* (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2017)).

### B. The Campbell-Ewald *Decision*

*Campbell-Ewald* lies at the heart of this dispute. In *Campbell-Ewald*, the Supreme Court considered whether an "unaccepted offer to satisfy the named plaintiff's individual claim [is] sufficient to render a case moot when the complaint seeks relief on behalf of the plaintiff and a class of persons similarly situated." *Id.* at 668.

The plaintiff in that case brought a putative class action against an advertiser for violating the Telephone Consumer Protection Act ("TCPA"). Before the deadline for the plaintiff to file a class action complaint, the defendant both offered to settle the plaintiff's claim and filed a Rule

68 offer of judgment with the court.[3] The settlement offer would provide the plaintiff treble damages. The offer also included a stipulated injunction that would bar the defendant from sending text messages in violation of the TCPA, but that denied liability and disclaimed grounds to impose the injunction. The plaintiff did not accept the settlement offer and let the Rule 68 offer of judgment lapse. The district court and the court of appeals both held that the unaccepted offer of judgment did not moot either the claims of the individual plaintiff or of the putative class.

The Supreme Court agreed. The Court distinguished a lapsed offer of judgment from three tax cases in which the defendants actually paid the full amount demanded rather than just offered to pay. By contrast, once the Rule 68 offer lapsed, the plaintiff "remained emptyhanded." *Id.* at 672. The majority also criticized the dissent's approach as "plac[ing] the defendant in the driver's seat,"[4] and noted that the defendant "sought to avoid a potential adverse decision, one that could expose it to damages a thousand-fold larger than the bid Gomez declined to accept." *Id.* The Court withheld "decid[ing] whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.* at 672.

---

[3] *See* Fed. R. Civ. P. 68(a)-(b) ("At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment. . . . An unaccepted offer is considered withdrawn.").

[4] Chief Justice Roberts, writing in dissent, asserted that the offer of judgment mooted the plaintiff's claim because, "[i]f the defendant is willing to give the plaintiff everything he asks for, there is no case or controversy to adjudicate." *Id.* at 682 (Roberts, C.J., dissenting). He also observed that "[t]he majority does not say that payment of complete relief leads to the same result. For aught that appears, the majority's analysis may have come out differently if Campbell had deposited the offered funds with the District Court." *Id.*

5

### C. Decisions After Campbell-Ewald

After *Campbell-Ewald*, "courts . . . split on whether actual payment of full relief moots an individual's claim, with multiple decisions turning on whether the case was a class action." *Kuntze v. Josh Enters., Inc.*, 365 F. Supp. 3d 630, 640 (E.D. Va. 2019) (collecting cases); *see also Getchman v. Pyramid Consulting, Inc.*, No. 4:16-CV-1208-CDP, 2017 WL 713034, at *2 (E.D. Mo. Feb. 23, 2017) (collecting cases). The Supreme Court has not resolved that split.[5] *Id.* Unsurprisingly, Sunoco and Cline each cite numerous cases supporting their respective arguments.

In an unpublished decision, the Fourth Circuit held that a defendant did not moot a plaintiff's claim when it tried to pay the plaintiff the full amount of relief. *Bennett v. Office of Fed. Empl. Grp. Life Ins.*, 683 F. App'x 186, 188 (4th Cir. 2017) (per curiam). The plaintiff had returned the check for the full amount, and that act "made the payment an unaccepted settlement offer." *Kuntze*, 365 F. Supp. 3d at 641. The Fourth Circuit acknowledged that the magistrate judge did not have the decision in *Campbell-Ewald* when making his recommendation, but the court "conclude[d] that Bennett's claims [were] not moot" in light of *Campbell-Ewald*. *Bennett*, 683 F. App'x at 188.

The Court finds *Bennett* persuasive insofar as it holds that returning a check for the full settlement amount transforms the payment into an unaccepted settlement offer. *Id.*; *see also O'Neal v. Am.'s Best Tire LLC*, No. CV-16-00056-PHX-DGC, 2016 WL 3087296, at *3 (D. Ariz. June 2, 2016) (holding that a plaintiff who did not accept, cash, or deposit a defendant's check "remain[ed] adverse and retain[ed] the same stake in the litigation"). The Court also agrees "that, when an individual plaintiff receives complete relief for her claims, that plaintiff no

---

[5] The Tenth Circuit has not directly weighed in either.

longer has a live case or controversy because there is no additional relief that she can hope to obtain through further litigation." *Kuntze*, 365 F. Supp. 3d at 642.[6] Tendering payment, however, does not necessarily constitute full relief. *See id.* (finding that a judgment is sometimes necessary to afford a plaintiff complete relief, especially when the payment method does not guarantee the plaintiff that the defendant will pay the full amount required to moot the claim); *see also Chen v. Allstate Ins.*, 819 F.3d 1136, 1146 (9th Cir. 2016) ("Pacleb has not actually or constructively received the $20,000. Nor has he received relief on his individual injunctive relief claim.").

Thus, when a defendant pays a plaintiff the full amount of money the plaintiff requests while the litigation remains ongoing, that payment does not automatically render the plaintiff's claims moot. Instead, the Court must consider the payment in the context of the particular case and the relief that the plaintiff requests. With those guiding principles in mind, the Court turns to Sunoco's payment to Cline in this case.

### D. Application

Sunoco's motion fails for two reasons: (1) Sunoco's tender of payment does not give Cline complete relief, and (2) Cline has a continuing interest in the additional remedies he seeks.

#### 1. Complete Relief

Sunoco argues that it has paid Cline the amount of interest it owes, that it has not made a late payment to Cline since 2016, and that Cline has not alleged a real and immediate threat of future injury. Sunoco does not argue that Cline did not have a concrete injury at the beginning of the lawsuit. Instead, Sunoco only argues that Cline does not have a concrete injury anymore.

---

[6] Kuntze brought her complaint for overtime wages under the FLSA individually. She did not seek to maintain a class action. Kuntze also only requested money damages in her prayer for relief.

7

Because Cline had a concrete injury before receiving payment from Sunoco, Sunoco must show that its payment to Cline constitutes complete relief.

Sunoco's uncashed check to Cline does not provide Cline complete relief. First, Sunoco argues that Oklahoma law allows an unconditional tender of payment to discharge a debt, regardless of acceptance, so Sunoco's check to Cline moots his claims. Sunoco's argument misses the mark. Paying the statutory interest debt does not automatically prevent Cline from recovering other forms of relief.

Second, Sunoco's argument that "[n]umerous post-*Campbell Ewald* cases have found that merely sending a check to the plaintiff in the amount of the damages is sufficient to moot the case" fails because the cases it cites do not support its argument. (Dk. No. 103, at 21). In all of those cases, the plaintiffs did not request any non-monetary relief in their complaint.[7] Cline has requested more than the late interest payments. Thus, Sunoco's payment to Cline, even if accepted, would not give Cline complete relief.

## 2. *Additional Remedies*

In addition to compensatory damages, Cline requests punitive damages, injunctive relief, accounting, and disgorgement. Sunoco goes to great lengths to argue that it will win the case because Cline cannot recover any of these remedies as a matter of law. But these arguments miss the point. Standing deals with a litigant's interest in pursuing the case, not with whether he

---

[7] *See Reuling v. MOBIT LLC*, No. CV-18-00568-PHX-BSB, 2018 WL 3159726, at *1 (D. Ariz. June 28, 2018) (seeking unpaid wages, liquidated damages, and statutory penalties); *Demmler v. ACH Food Cos.*, No. 15-13556-LTS, 2016 WL 4703875, at *3 (D. Mass. June 9, 2016) ("Nowhere in the Complaint does Demmler seek a declaratory judgment or injunctive relief."); *Piyapat Ponsurayamas v. Teppo Partners L.P.*, No. 3:15-CV-2345-N, 2016 U.S. Dist. LEXIS 195094, at *2-3 (N.D. Tex. Aug. 10, 2016) (seeking "overtime wages, double damages, court costs, damages for assault, and reasonable attorney fees"); *cf. Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 54 (1st Cir. 2015) ("In many cases involving damages in a certain amount as the only remedy, delivery of a bank check might get around the infirmities in using a Rule 68 offer.").

8

will ultimately win the case. At this stage, the Court cannot conclude that Cline cannot recover any of his requested remedies. Cline has established a concrete interest in these additional remedies, and therefore, a concrete interest in the outcome of this action. *See Campbell-Ewald*, 136 S. Ct. at 669.

To obtain injunctive relief, Cline "must show more than past harm or speculative future harm." *Riggs v. City of Albuquerque*, 916 F.2d 582, 586 (10th Cir. 1990). He must also show "continuing, present adverse effects" of the defendant's actions. *Ward v. Utah*, 321 F.3d 1263, 1269 (10th Cir. 2003). An injunction "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). A court may consider past wrongs as evidence of whether a "real or immediate threat of repeated injury" exists, "[b]ut the prospect of future injury" rests on the likelihood that the alleged conduct will reoccur to that plaintiff. *Id.* at 102.

Sunoco's argument requires the Court to ignore Cline's continuing ownership interest in the wells from which Sunoco purchases oil. Sunoco has not said that it has changed its business practices for making interest payments. Nor has Sunoco said that it has or will stop purchasing oil from wells in which Cline has a royalty interest. Rather than "pure speculation and fantasy" that Sunoco will pay Cline late and fail to pay interest, every time Sunoco purchases oil from Cline's wells and pays—or delays payment of—proceeds for that oil, Cline suffers "a real or immediate threat of repeated injury."[8] *Lujan*, 504 U.S. at 567; *Lyons*, 461 U.S. at 111; *cf. Colo.*

---

[8] If the Court construes Sunoco's argument as a promise that Sunoco will never repeat the conduct, the Court must find that (1) "[i]t is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur[,]" and that (2) "[i]nterim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Equal Emp't Opportunity Comm'n v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1173 (10th Cir. 2017).

9

*Cross-Disability Coal. v. Abercrombie & Fitch, Co.*, 765 F.3d 1205, 1210-13 (10th Cir. 2014) (finding a plaintiff's intent to return to a store six times per year established a "real and imminent threat of encountering the alleged accessibility barrier" at the store in the future). The payment to Cline, therefore, does not bar Cline from receiving injunctive relief.

Sunoco's challenges to Cline's other remedies do not demonstrate mootness. Regarding accounting and disgorgement, Sunoco merely defines the terms and concludes, without explanation, that Cline could not receive any other relief than his statutory interest or would have no stake in an order "compelling [Sunoco] to pay that amount plus interest to the court." *See United States v. Badger*, 818 F.3d 563, 566 (10th Cir. 2016). Sunoco also argues that Cline has waived punitive damages, but Sunoco has asked the Court to decide whether subject matter jurisdiction exists, not to strike Cline's punitive damages claim.[9] Sunoco, therefore, has not met its burden to show that Cline cannot recover any of these remedies.

Further, Sunoco asks the Court to decide that Cline "has a perfectly adequate remedy at law." (Dk. No. 117, at 10.) Ultimately, Sunoco may prevail on this defense, but nothing precludes Cline from asking for equitable remedies. *Cf. McNerney v. A.M.T. Grp., Inc.*, No. 1:15-CV-1260 (GTS/DJS), 2016 WL 5107117, at *6 (N.D.N.Y. Sept. 20, 2016) ("Plaintiff's request for injunctive relief under the FLSA must be denied because the right to seek such relief rests exclusively with the United States Secretary of Labor."). The Court also will not decide

---

Here, Sunoco admits that its practices remain the same, so it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*

[9] Additionally, Sunoco argues that the PRSA constitutes an exclusive remedy, and that Cline cannot claim punitive damages. *See* Okla. Stat. tit. 52, § 903. Sunoco omits the fact that the statute unequivocally creates an exception to allow for other remedies if Cline can show that Sunoco violated the PRSA knowingly or willfully. *See id; see also McClintock v. ExxonMobil Oil Corp.*, No. CIV-16-136-KEW, 2018 WL 1547373 (E.D. Okla. Mar. 2. 2018). Not only does Cline allege fraud, but he also alleges that Sunoco violated the PRSA knowingly and intentionally. (Compl. ¶ 49. 51-57.)

whether to exercise its equitable jurisdiction at this stage. *See Reirdon v. Cimarex Energy Co., et al.*, No. CIV-16-445-SPS, 2019 WL 2610115, at *2-3 (E.D. Okla. June 25, 2019) (finding alternative theories of relief appropriate at the pleading stage but dismissing the equitable claims on summary judgment).

Much of Sunoco's argument amounts to its insistence that Cline will lose the case and, therefore, lacks standing. The test, however, is whether he has an interest in the outcome, not whether he will prevail. Because Cline has established a concrete interest, "however small," in remedies beyond recouping the unpaid statutory interest, Sunoco has not mooted this action. *Campbell-Ewald Co.*, 136 S. Ct. at 669.

### 3. *Class Action Complaint*

Sunoco also asks the Court to dismiss Cline's class claims because Sunoco has paid Cline the statutory interest it owes him. Sunoco cannot, however, avoid the class claims by paying Cline a portion of the relief he requests and asking the Court to ignore the rest. The Court "reject[s] this gambit." *Id.* at 672. Because Cline has a "live claim of h[is] own[, he] must be accorded a fair opportunity to show that certification is warranted." *Id.*

### III. **CONCLUSION**

Cline has a concrete interest in the outcome of this litigation, and Sunoco's tender of payment to Cline does not moot this action. Thus, the Court will deny Sunoco's motion to dismiss.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 3 October 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

11