IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PERRY CLINE, on behalf of himself
and all others similarly situated,
        Plaintiff,

v.                                          Civil Action No. 6:17-cv-313-JAG

SUNOCO, INC. (R&M), and,
SUNOCO PARTNERS MARKETING
& TERMINALS, L.P.,
        Defendants.

## OPINION

Perry Cline owns a royalty interest in oil wells in Oklahoma. Sunoco, Inc. (R&M), and Sunoco Partners Marketing & Terminals, L.P. ("Sunoco"), purchase oil from those wells, sell the oil, and, pursuant to Oklahoma law, pay Cline proceeds from those sales. Under Oklahoma law, when Sunoco pays the proceeds late, it must also pay statutory interest. Cline has sued Sunoco for not paying him statutory interest when Sunoco pays the late proceeds. Cline seeks to maintain a class action on behalf of those to whom Sunoco paid production proceeds late and did not pay statutory interest.

To support his motion for class certification, Cline has offered the testimony and expert reports of Barbara A. Ley, a certified public accountant. Ley has developed a model by which she says that she can identify the individual class members and calculate class-wide damages using information from Sunoco's business records. Sunoco has moved to exclude Ley's reports and testimony for the purposes of the class certification motion. Because Ley's testimony and expert reports are admissible, the Court will deny the defendant's motion to exclude.

## I. BACKGROUND

Perry Cline owns a royalty interest in oil wells in Oklahoma. Sunoco buys oil from a large number of wells, including Cline's, sells the oil, and distributes proceeds from the oil to well owners. Under Oklahoma's Production Revenue Standards Act ("PRSA"), Sunoco must pay owners statutory interest if Sunoco does not pay the proceeds pursuant to statutory timetables. *See* Okla. Stat. tit. 52, § 570, *et seq*. The PRSA includes exceptions to the normal deadlines for a first purchaser, like Sunoco, to pay the proceeds, depending on specific circumstances. The PRSA also imposes a 12 percent statutory interest rate on late payments. If a first purchaser pays proceeds late because of an unmarketable title, the PRSA imposes a 6 percent interest rate.

Cline has sued Sunoco, alleging that Sunoco has a practice of not paying interest until an owner requests it. Cline alleges that this practice not only violates the PRSA but also amounts to fraud. Cline has moved to certify a class of owners to whom Sunoco did not pay statutory interest. He has also asked the Court to name him as the class representative.

To support his motion for class certification, Cline introduced the expert reports and opinions of Ley, an oil and gas accountant. Ley's reports rely on a model using information in Sunoco's business records by which she will identify late payments and calculate the statutory interest owed on these payments. She will also exclude certain payments that fall within the exceptions and modified timetables under the PRSA. Ley has calculated the interest due using the 12 percent rate, but can adjust the rate to 6 percent for any late payments made due to unmarketable title. By identifying these payments, Ley's methodology will also identify the individual class members.

Sunoco has moved to exclude Ley's reports and testimony from Cline's class certification motion, arguing that Ley's model is inaccurate and unreliable.

## II. DISCUSSION[1]

Courts apply different standards when evaluating expert testimony at the class certification stage. *See* 3 William B. Rubenstein, *Newberg on Class Actions* § 7:24 (5th ed. 2019). The Supreme Court, however, has suggested that a court should perform a *Daubert* analysis. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 354 (2011) ("The District Court concluded that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings. We doubt that is so."). At the class certification stage, "the parties remain engaged in merits discovery . . . , [so] the information available to experts is limited." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2019 WL 1569294, at *4 (D. Kan. Apr. 11, 2019). The Court, therefore, should focus on the expert's qualifications and methodology when evaluating expert testimony at this stage. *Id.*

---

[1] Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), govern the admissibility of expert testimony. *James River Ins. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 n.1 (10th Cir. 2011). A court acts as a gatekeeper when deciding to admit evidence, and has "broad discretion to determine the admission of expert testimony." *Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997); *see Daubert*, 509 U.S. at 597. To determine admissibility of expert testimony, a court must perform a two-step analysis. *103 Inv'rs I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). First, it must decide "whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion." *Id.* (quoting Fed. R. Evid. 702). Second, it "must determine whether the expert's opinion is reliable under the principles set forth in *Daubert*." *Id.* Those principles include: "(1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *Id.* The factors are "meant to be helpful, not definitive." *Kumho Tire Co.*, 526 U.S. at 151. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

Accordingly, the Court considers Ley's opinion against the Rule 702 and *Daubert/Kumho* framework, but it remains mindful of the stage of the litigation and the purposes for which Cline has introduced Ley's testimony and reports.

### A. Qualifications

The Court must first determine whether Ley's "knowledge, skill, experience, training, or education" make her qualified to give an opinion. Fed. R. Evid. 702; *see also 103 Inv'rs I, L.P.* 470 F.3d at 990. Sunoco says that Cline overstates Ley's qualifications and distinguishes the cases in which Ley has testified, but it does not argue that Ley lacks the necessary qualifications to render an opinion. Ley, a certified public accountant licensed to practice in Oklahoma and Texas, has over forty years of experience. Her expertise includes oil and gas issues. Ley has testified in a number of oil and gas cases in both state and federal courts in Oklahoma. Thus, Ley has adequate qualifications to testify as an expert in this matter.

### B. Reliability

Next, the Court must determine whether Ley's testimony "is reliable under the principles set forth in *Daubert*." See *103 Inv'rs I, L.P.*, 470 F.3d at 990. Sunoco lodges two attacks against Ley's testimony.

First, Sunoco argues that Ley's methodology does not accurately identify the proposed class members. Sunoco points to a number of payments Ley excludes—primarily, those payments falling under the exceptions to the PRSA—and says that, by excluding the payments from the model but not from the definition, the model does not cover the entire class. In response, Cline says that he has proposed a revised class definition in his reply to the motion to certify that excludes those categories. Instead of explaining to the Court why Ley's model would not cover the entire class based on the revised definition, Sunoco simply responds that the Court

should reject the revised definition, exclude the testimony, and deny the motion to certify the class. The Court accepts Cline's proposed class definition,[2] so Sunoco's first argument fails.

Second, Sunoco describes Ley's model as "inaccurate and unreliable," and says that Ley's model "does not reliably identify 'Untimely Payments' . . . and does not properly calculate statutory interest." (Dk. No. 107, at 14, 17). Sunoco also points out that Ley has said that she will change the model to exclude certain kinds of payments but has not actually done so. Sunoco contends that the Court cannot rely on Ley's assurances alone that she can exclude those categories at some point in the future.

Ley's testimony and expert reports demonstrate that Ley's model, although not fully developed, provides a reliable way to identify untimely payments and calculate damages sufficient to satisfy the *Daubert* standard. *Cf. In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) ("As class certification decisions are generally made before the close of merits discovery, the court's analysis is necessarily prospective and subject to change, . . . and there is bound to be some evidentiary uncertainty."). Ley has a background in oil and gas as well as accounting, and has performed similar analyses in other cases. She has reviewed Sunoco's business records, and she has demonstrated that she can translate the information into a model that identifies the class members and calculates damages. Moreover, Ley has explained how she plans to update her model to exclude the PRSA exceptions. "There is nothing in the record at this stage to show that [Ley's] opinions are so 'fundamentally unsupported' as to require exclusion." *Id.* at 615 (quoting *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)).

---

[2] The Court's modification to the revised definition will not change the categories Cline excludes.

Sunoco's arguments ultimately challenge the weight the Court should give to Ley's reports and testimony. That does not make the testimony and reports inadmissible. Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Accordingly, the Court will not exclude Ley's testimony and reports from Cline's motion to certify the class.[3]

### III. CONCLUSION

Ley's testimony is admissible, so the Court will consider it when making its class certification decision. Thus, the Court will deny the defendant's motion to exclude.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 3 October 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[3] Strangely, Sunoco argues that the Court should exclude Ley's opinions regarding the contents of the check stubs even though "Cline does not cite them in his Motion to Certify." (Dk. No. 107, at 26). The Court, therefore, does not know what Sunoco wants it to exclude. Regardless, the Court has considered whether Ley can use the check stubs in her methodology or give testimony about the check stubs, and it does not find any potential argument to exclude her review of the check stubs persuasive.