IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PERRY CLINE, on behalf of himself
and all others similarly situated,
    Plaintiff,

v.    Civil Action No. 6:17-cv-313-JAG

SUNOCO, INC. (R&M), and,
SUNOCO PARTNERS MARKETING
& TERMINALS, L.P.,
    Defendants.

## OPINION

Perry Cline owns a royalty interest in one or more oil wells in Oklahoma. Sunoco, Inc. (R&M), and Sunoco Partners Marketing & Terminals, L.P. ("Sunoco"), purchase and resell oil from Cline's wells. Oklahoma law requires Sunoco to pay proceeds from the oil to Cline. If Sunoco pays the proceeds late, it must pay Cline interest on the payment at a rate set forth in Oklahoma's Production Revenue Standards Act ("PRSA"). *See* Okla. Stat. tit. 52, § 570, *et seq.*

Cline has sued Sunoco for paying his production proceeds late without paying the required interest. Cline seeks to maintain a class action on behalf of other owners[1] whom Sunoco paid late and did not pay interest.

Because Cline meets the requirements for class certification under Federal Rule of Civil Procedure 23, the Court will grant the motion and certify the class.

---

[1] The PRSA defines an "owner" as a "person or governmental entity with a legal interest in the mineral acreage under a well which entitles that person or entity to oil or gas production or the proceeds or revenues" from that production. Okla. Stat. tit. 52, § 570.2. Sunoco's argument distinguishes between owners who have a "royalty interest" in a well, which means an interest in a percentage of the production or the proceeds from the production, and those who have a "working interest," which "entitle[s] the owner . . . to drill for and produce oil and gas." *Id.*

## I. BACKGROUND

The PRSA governs the payment of proceeds for oil and gas production from Oklahoma wells. *See* Okla. Stat. tit. 52, § 570, *et seq.* The PRSA requires the first person who buys oil or gas from an interest owner ("first purchaser") or the person holding the proceeds from the sale of the oil and gas ("holder of proceeds") to pay the wells' interest owners their proceeds within specific times. The first purchaser or holder of proceeds must keep the funds "separate and distinct from all other funds." *Id.* § 570.10(A). With some exceptions, the first purchaser or holder of proceeds must pay statutory interest if it does not pay the proceeds on time. The payor must pay 6 percent or 12 percent interest, depending on the cause of the delay in payment.

Sunoco buys crude oil from oil and gas producers, collects and transports the oil, and resells the oil. It contracts with thousands of oil and gas producers in Oklahoma to purchase their oil. Sunoco has paid over 100,000 well owners royalty proceeds for oil and gas production from over 20,000 properties since 2006. It maintains a division order[2] for each property. Sunoco sends division orders to owners and suspends payment until the owner returns a signed and completed division order. If an owner does not want to sign a division order, Sunoco says that it will remove the account from suspension and pay the owner, but that the owner must first tell Sunoco that he or she refuses to sign the division order. When Sunoco pays proceeds late, it often waits until an owner makes a request for interest before investigating the request and paying any necessary interest.

Cline contends that Sunoco has engaged in an ongoing scheme to avoid making the required interest payments.

---

[2] A "division order" documents the division of each owner's interest in the well and the owner's name, address, and tax identification number. Okla. Stat. tit. 52, § 570.11. The division order helps the first purchaser or holder of proceeds pay the proceeds directly to the owner. *Id.*

2

The proposed class comprises owners of wells in Oklahoma who allege that Sunoco paid them oil proceeds late and without the statutory interest.[3] Specifically, Cline seeks to represent the following class[4]:

> All non-excluded persons or entities who: (1) received Untimely Payments from Defendants (or Defendants' designees) for oil proceeds from Oklahoma wells and (2) who have not already been paid statutory interest on the Untimely Payments. An "Untimely Payment" for purposes of this class definition means payment of proceeds from the sale of oil production from an oil and gas well after the statutory periods identified in O[kla]. S[tat]. tit 52, §570.10(B)(1) (i.e., commencing not later than six (6) months after the date of first sale, and thereafter not later than the last day of the second succeeding month after the end of the month within which such production is sold). Untimely Payments do not include: (a) payments of proceeds to an owner under O[kla]. S[tat]. tit 52, §570.10(B)(3) (minimum pay); (b) prior period adjustments; or (c) pass-through payments.
>
> The persons or entities excluded from the Class are: (1) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (2) publicly traded oil and gas companies and their affiliates; (3) persons or entities that Plaintiff's counsel may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; and (4) officers of the court.

(Dk. No. 91, at 30; Dk. No. 114, at 13.)

---

[3] Cline relies on the expert reports of Barbara Ley, a certified public accountant, to establish that Cline can identify the putative class members and calculate damages class-wide with common proof. For the reasons stated in a separate opinion, the Court will deny Sunoco's motion to exclude Ley's expert report and testimony (Dk. No. 107) and has considered her conclusions to decide the instant motion.

[4] This includes the revised definition proposed in Cline's reply. The revisions provide a more narrow and manageable definition, and the Court analyzes whether Cline satisfies the Rule 23 requirements accordingly. The Court will, however, grant Sunoco's motion for leave to file a sur-reply (Dk. No. 119), and it will direct the Clerk to docket the sur-reply.

## II. DISCUSSION[5]

Federal Rule of Civil Procedure 23 governs class actions, including class certification. The party seeking certification must first satisfy the requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Fed. R. Civ. P. 23(a). In addition to the requirements of Rule 23(a), the proposed class must fall within at least one of the three types of class actions listed in Rule 23(b). Rule 23(b)(3), the relevant type of class action in this case, requires (5) predominance and (6) superiority. Fed. R. Civ. P. 23(b)(3). Although the Tenth Circuit does not require a separate ascertainability analysis, the Court will consider (7) ascertainability as a separate factor. The Court addresses each requirement in turn.

### A. Numerosity

The proposed class representative must demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The plaintiff must present "some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirements. There is, however, no set

---

[5] The party seeking class certification bears the burden of proof. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Soseeah v. Sentry Ins.*, 808 F.3d 800, 808 (10th Cir. 2015). "[A]t the class certification stage a district court must generally accept the substantive, non-conclusory allegations of the complaint as true." *Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009). Additionally, "'the trial court [must be] satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' Frequently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 350-51 (internal citations omitted) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "[A] district court 'may not evaluate the *strength* of a cause of action at the class certification stage,' but it must determine, 'without passing judgment on whether plaintiffs will prevail on the merits,' whether a plaintiff has satisfied the provisions of Rule 23." *Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009) (quoting *Shook, et al. v. Bd. of Cty. Comm'rs, et al.*, 543 F.3d 597, 612 (10th Cir. 2008)); *see also Amgen Inc., et al. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquires at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

formula to determine if the class is so numerous that it should be so certified." *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978). The Court must consider "the particular circumstances of the case." *Id.*; *see also Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980) ("The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.").

Here, the proposed class encompasses thousands of interest owners, which easily satisfies the numerosity requirement under Rule 23(a)(1). *See Rex*, 585 F.2d at 436 (citing certified classes comprising 17 to 358 members).

### B. Commonality

The proposed class meets the commonality requirement because it presents "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Even a single [common] question" satisfies this requirement. *Wal-Mart*, 564 U.S. at 359. Cline must show that "the class members have suffered the same injury," and that the "common contention . . . is capable of classwide resolution . . . [and] will resolve an issue that is central to the validity of each . . . claim[] in one stroke." *Id.* at 350; *see also Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013). Furthermore, "every member of the class need not be in a situation identical to that of the named plaintiff," and "[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). A common question of law requires the putative class to "share a discrete legal question of some kind." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999)

Cline sets forth four questions of law and fact that he argues satisfy the commonality requirement:

5

> (1) whether, under Oklahoma law, Sunoco owed interest to Plaintiff and the Class on any and all Untimely Payments;
> (2) whether owners must make a demand prior to being entitled to receive statutory interest;
> (3) whether Sunoco's failure to pay interest to Plaintiff and the putative class on any Untimely Payments constitutes a violation of the PRSA; and
> (4) whether Sunoco defrauded Plaintiff and the putative class by knowingly withholding statutory interest [as applied to Count II (fraud) of the original petition].

(Dk. No. 91, at 22-23.) Cline argues that Sunoco's business records and employee testimony will confirm its "uniform policy of not paying statutory interest unless requested by an owner." (*Id.* at 23.) Cline says that the proposed class will use common evidence of Sunoco's unlawful actions, and that if the Court finds Sunoco had a duty to pay that interest without a request and Sunoco breached that duty, every class member will prevail.

The case presents common questions of law and fact "capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350. Sunoco relies on "myriad individualized factors" to argue that the "'common' questions at the center of this case . . . cannot be resolved on a class-wide basis through common proof." (Dk. No. 105, at 31, 41.) Sunoco's challenge to commonality, however, reads more like a challenge to predominance. While factual differences may exist between the individual class members, these differences do not defeat the commonality prong under Rule 23(a)(2). Rather than "broadly conflat[ing] a variety of claims to establish commonality via an allegation of 'systematic failures,'" Cline alleges that Sunoco did not pay statutory interest on late payments to the proposed class members based on Sunoco's single, uniform practice. *J.B.*, 186 F.3d at 1289. Essentially, Cline presents discrete legal questions both about whether Sunoco violated the PRSA pursuant to its policy and about the injuries the proposed class members suffered as a result. *Id.* If the Court holds Sunoco liable, all the class members prevail. Cline has satisfied the Rule 23(a)(2) commonality requirement.

6

## C. Typicality

In this case, "the claims or defenses of [Cline] are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "limit[s] the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of the Nw.*, 446 U.S. at 330. "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *see also DG ex rel. Stricklin, et al. v. Devaughn, et al.*, 594 F.3d 1188, 1198-99 (10th Cir. 2010).

To succeed on his PRSA claims, Cline must show that Sunoco (1) owed Cline payments; (2) made the payments to Cline late; and (3) did not pay the interest on the late payments. *See Chieftain Royalty Co. v. Marathon Oil Co.*, No. Civ-17-334-SPS, 2018 WL 2745906, at *2 (E.D. Okla. June 7, 2018). To succeed on his fraud claim, Cline must show that Sunoco made "1) a material misrepresentation, 2) knowingly or recklessly . . . , 3) with intent that it be relied upon, and 4) the party relying on the false statement suffer[ed] damages." *Silver v. Slusher*, 770 P.2d 878, 881 n.8 (Okla. 1988).[6]

Cline plans to rely on facts related to Sunoco's process for paying statutory interest to prove his PRSA claim. Cline also plans to rely on facts related to Sunoco's check stubs to show that Sunoco concealed the interest it owed to him. Those same facts would also prove—or disprove—the PRSA and fraud claims of the absent class members. Sunoco admits to using the same process for remitting most payments during the class period, and Sunoco used the same check stub format across the class.

---

[6] The accounting, disgorgement, and injunctive relief claims "necessarily flow out of the base claims." *Chieftain Royalty Co.*, 2018 WL 2745906, at *4; *see also Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1258 (W.D. Okla. 2012).

7

Sunoco tries to defeat the typicality prong by arguing that Cline (1) does not have standing to bring claims on behalf of either himself or the class, and (2) has interests adverse to the other putative class members. Sunoco fails on both arguments.

### i. *Standing*

In the midst of briefing this motion, Sunoco filed a motion to dismiss for lack of subject matter jurisdiction, alleging that it paid Cline the amount he seeks in interest. Sunoco thus challenges Cline's standing to bring this action individually or on behalf of the class. The Court will issue a separate opinion and order denying the motion to dismiss and explaining its reasoning. That ruling renders Sunoco's standing argument moot.

### ii. *Adversity*

Sunoco argues that "deep and significant adversity" exists between Cline, a royalty owner, and the working interest owners also included in the class because the class claims "could trigger an obligation on behalf of many of those same working interest owners to indemnify Sunoco." (Dk. No. 105, at 42.) Cline responds that the PRSA only contemplates claims against the entities who paid the proceeds late, not third parties.

To support its argument on adversity, Sunoco relies on *Cherokee Nation of Oklahoma v. United States*, 199 F.R.D. 357 (E.D. Okla. 2001). *Cherokee*, however, differs in important ways from this case. In *Cherokee*, the plaintiffs, "two Indian tribes that operate various Indian Health Services programs pursuant to contracts entered into under the Indian Self–Determination Act," received project support costs from the federal government. *Id.* at 359. They performed their contracts separately, and the contracts did not have standard language or specify a particular "full funding" amount. Every year, the Indian Health Services calculated the full contract amount for each contract according to various government circulars. The plaintiffs sued because they had

not received full payment and sought class certification for 329 tribes in 35 states, of which 296 had experienced contract payment shortfalls.

The court declined to certify the class partly because the named plaintiffs were not "typical" of the class. *Id.* at 364. It concluded that each tribe's contract "is individual and specific to it, . . . [and] negotiated separately from the other tribes," resulting in different definitions of "full funding." *Id.* Additionally, the court held that "the plaintiffs' interests are antagonistic to those of the members of the proposed class" because the Indian Health Services had a finite budget. *Id.* at 364-65. The damage payments would come from the Indian Health Services' budget, meaning one plaintiff's claim would decrease the funds available to pay the remaining plaintiffs.

In *Cherokee*, the central, substantive issue related to separately-negotiated contract rights that pulled from a common, finite budget. In contrast, this Court need only decide whether Sunoco violated its statutory obligations under the PRSA.[7] The PRSA clearly states that "a ***first purchaser or holder of proceeds*** who fails to remit proceeds from the sale of oil or gas production to owners legally entitled thereto within the time limitations . . . of this section shall be liable to such owners for interest . . . on that portion of the proceeds not timely paid." Okla. Stat. tit. 52, § 570.10(E)(1) (emphasis added).

Sunoco has not demonstrated that the putative class members do not have the same statutory rights as Cline, or that the putative class does not have sufficiently similar financial interests in pursuing these claims against Sunoco. The contracts between Sunoco and working interest owners, or between Cline and his lessees, do not affect Sunoco's obligations under the

---

[7] Sunoco says that working interest owners receive 90 percent of all money paid but has not addressed Ley's observation that Sunoco owes the majority of damages in this action to royalty owners.

9

PRSA. (Dk. No. 105, at 42); *see* 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1768 (3d ed. 2019) ("[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.").[8] Further, the class members do not seek to tap a designated and limited fund, but rather simply seek damages (and equitable relief) against Sunoco.

Simply put, this is not a case in which "[t]he court cannot be assured that the plaintiff[], as [the] representative class member[], will aggressively pursue the claims of all proposed class members because of [his] own possible financial interest." *Cherokee*, 199 F.R.D. at 365.

Accordingly, Cline's claims satisfy the typicality requirement under Rule 23(a)(3). Fed. R. Civ. P. 23(a)(3).

### D. Adequacy

Turning to adequacy, Cline must prove that both the representative parties and class counsel will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4), (g)(4). "It is axiomatic that a plaintiff cannot maintain a class action when his interests are antagonistic to, or in conflict with, the interests of the persons he would seek to represent." *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 463 (10th Cir. 1974). The Court must "stringently appl[y]" this requirement. *Id.*

Sunoco repeats its argument regarding Cline's intra-class conflict in an effort to defeat the adequacy prong. As already explained, Cline has suffered the same injuries and has the same interests and incentives as the putative class to "fairly and adequately" protect the class'

---

[8] *Cf. Pueblo of Zuni v. United States*, 243 F.R.D. 436, 449 (D.N.M. 2007) ("Plaintiff challenges th[e] conclusion [that the plaintiffs' interest are antagonistic for the reasons in *Cherokee Nation*] by noting that IHS has never reimbursed the Judgment Fund. Whether or not the IHS has ever actually reimbursed the Fund. . . does not vitiate the mandate that reimbursement is required [by statute].")

interests. Fed. R. Civ. P. 23(a)(4); *cf. Rhea v. Apache Corp.*, No. CIV-14-0433-JH, 2019 WL 1548909, at *6 (E.D. Okla. Feb. 15, 2019) ("Given the nature of plaintiff's claim, coupled with the evidence of the uniform process being employed by defendant in how it paid royalties, the court concludes the theoretical potential for conflict, without more, is insufficient to disqualify plaintiff as an adequate class representative."). The Court also finds that class counsel qualifies as experienced in class actions and other complex civil litigation, and Sunoco does not argue otherwise. Thus, Cline and class counsel meets Rule 23's adequacy requirement.

### E. Predominance

Next, Sunoco's challenge to the predominance requirement fails because "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). While similar to the commonality inquiry, "the predominance criterion is far more demanding." *Amchen Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). It "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive." *CGC Holding Co., et al. v. Broad & Cassell, et al.*, 773 F.3d 1076, 1087 (10th Cir. 2014). Instead, a court must first "*characterize* the issues in the case as common or not, and then *weigh* which issues predominate." *Naylor Farms, Inc., et al. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019).

A court "should consider the extent to which material differences in damages determinations will require individualized inquiries." *Roderick*, 725 F.3d at 1220. An "individualized monetary claim[]" may not defeat a finding that common questions exist, but "predominance may be destroyed if individualized issues will overwhelm those questions

11

commons to the class." *Id.* Even so, "there are ways to preserve the class action model in the face of individualized damages." *Id.* (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 41 n.\* (2013) (Ginsburg, J., and Breyer, J., dissenting) ("A class may be divided into subclasses for adjudication of damages. . . . Or, at the outset, a class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings.")). As long as "at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately." *Naylor Farms*, 923 F.3d at 789.

Common questions of law and fact predominate. The Court must evaluate Sunoco's practice for paying interest and determine (1) whether Sunoco owed interest to the class for making late payments, (2) whether Sunoco could wait for owners to make a demand before paying that interest, (3) whether Sunoco's failure to pay the interest or delays in paying interest pursuant to its practice violates the PRSA, and (4) whether Sunoco defrauded the class by knowingly withholding that interest. The claims will rise or fall on common evidence. *See CGC Holding*, 773 F.3d at 1088 (explaining that the predominance analysis requires a court to evaluate the elements of the underlying causes of action). If the Court finds liability, it must fashion an appropriate remedy, guided by the objective criteria set forth in the PRSA.

Sunoco points to a number of individual questions that the Court must consider to decide liability and to calculate damages, but the Court does not find them persuasive. For example, Sunoco's argument that "myriad individualized factors" predominate falls short because the Court adopts Cline's modified class definition and accepts Ley's methodology for identifying the class members and calculating damages. Sunoco may vigorously contest Ley's conclusions, but Ley's model can determine damages on a class-wide basis sufficient for this stage of the

proceedings.[9] The revised definition excludes payments falling into four categories (the six month grace period, minimum suspense payments, pass-through payments, and prior period adjustments). Ley has said that she can exclude those payments from her model. Ley has also explained the method by which she intends to identify marketable title issues using Sunoco's codes, even if Sunoco contends its own coding system is unreliable for these purposes.

Sunoco also challenges Cline's fraud claim as too individualized. Fraud claims do not always warrant class treatment, particularly "if there was material variation in the representation made or in the kinds or degrees of reliance by the persons to whom they were addressed." Fed. R. Civ. P. 23 advisory committee notes to 1966 amendment. Courts will certify fraud claims, though, when the law of one state applies to the majority of the claims and the check stubs sent to royalty owners "presented . . . a 'standardized, written representation.'" *Rhea*, 2019 WL 1548909, at *9. Cline intends to establish fraud through the check stubs Sunoco issued uniformly to the putative class members. Cline has adequately refuted Sunoco's challenge to the fraud claim and established that the fraud claim "is 'susceptible to general and classwide proof.'" *Naylor Farms, Inc., et al. v. Chaparral Energy, LLC*, No. Civ-11-0634-HE, 2017 WL 187542, at *8 (W.D. Okla. Jan. 17, 2017) (quoting *CGC Holding*, 773 F.3d at 1089).

Sunoco points to various other individual questions as well, including questions regarding contracts between Sunoco and various well owners, the marketability of title, indemnification agreements, waivers, potential third-party litigation, Sunoco's proposed defenses, and equitable remedies. Notwithstanding those individual inquiries, the class is "sufficiently cohesive to

---

[9] The Court can later divide the class into subclasses to determine damages, or amend or alter its class certification order, if necessary. *See Naylor Farms*, 923 F.3d at 798 ("[T]he district court correctly noted that if necessary, it can later divide the class into subclasses for purposes of determining damages."); Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

13

warrant adjudication by representation." *Amchen*, 521 U.S. at 623. Moreover, many of these challenges to class certification are overexaggerated and largely incredible.

Finally, Sunoco asks the Court to apply the five-year statute of limitations and limit the class period to claims arising after July, 2012.[10] *See* Okla. Stat. tit. 52, § 570.14(D). Cline has not adequately rebutted Sunoco's statute of limitations argument. "Oklahoma follows the discovery rule allowing limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury." *Resolution Tr. Corp. v. Grant, et al.*, 901 P.2d 807, 813. To toll the statute of limitations, the Court would need to perform individual inquiries into the reasonable diligence of each class member that would defeat the predominance requirement under Rule 23(b)(3). Because Cline has not adequately rebutted that conclusion and has not defined the class period, the Court will limit the class claims to those arising on or after July 7, 2012.

Accordingly, Cline meets the predominance requirement, but the Court limits the class to claims arising on or after July 7, 2012.

### F. Superiority

Cline must also show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To evaluate this requirement, a court should consider

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

---

[10] Notably, Cline's class definition does not specify a time period.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Amchen*, 521 U.S. at 615-16 (describing the factors as "nonexhaustive"). "It is enough that class treatment is superior because it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding*, 773 F.3d at 1096 (quoting *Amchen*, 521 U.S. at 615).

A class action is superior in this case. This case involves proceeds from Oklahoma wells paid pursuant to the requirements of an Oklahoma statute, and it centers on issues that the Court can resolve class wide. The parties have engaged in extensive discovery and have been litigating the case for over two years. No other litigation is currently pending, and the Court does not foresee any difficulty in managing this case as a class action. Sunoco speculates that the attorneys' fee award will be unduly burdensome but presents no evidence to support that claim. Sunoco also argues that some interest owners "are capable of representing their own interests and resolving any claims they have directly with Sunoco." (Dk. No. 105, at 40.) Sunoco's emphasis on the class members' options to recoup money owed ignores the putative class' interest in a uniform judgment about whether Sunoco's business practice violates the PRSA. Litigating the claims together serves the interests of economy, efficiency, and uniformity of decisions, so Cline meets the superiority requirement.

### E. Ascertainability

Although the Tenth Circuit does not enumerate ascertainability as a separate factor in the class certification analysis, class actions must present "some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement." *Rex*, 585 F.2d at 436; *Shook, et al. v. El Paso County, et al.*, 386 F.3d 963, 972 (10th Cir. 2004) ("[T]he lack of identifiability is a factor that

15

may defeat Rule 23(b)(3) class certification."). The plaintiff does not need to identify every potential class member at the outset of the litigation, but "the class description [must be] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1760 (3d ed. 2019); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 306-07 (3d Cir. 2013).

To determine ascertainability, courts within the Tenth Circuit require "first, that the class be defined with reference to objective criteria; and second, a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Braver v. Northstar Alarm Servs. LLC., et al.*, 329 F.R.D. 320, 334 (W.D. Okla. 2018). Cline's class definition aligns with the exceptions outlined in the PRSA, establishing that "the class [can] be defined with reference to objective criteria." *Id.* Ley's proposed model provides a reliable and administratively feasible mechanism for determining class membership. *Id.* The Court can therefore ascertain the proposed class.

Curiously, Sunoco simultaneously touts the interest owners' sophistication and understanding of the PRSA with regard to some factors, and argues that the class members, Sunoco, and this Court cannot reasonably determine who fits into exceptions to a class definition that tracks the language of the statute. Sunoco cannot have it both ways. Ley's model uses Sunoco's business records to specifically identify class members, assuring the Court that, even if the sophisticated interest owners cannot figure out whether they fall within the class, Ley's model can. Moreover, Sunoco's own conduct belies its argument, since, when required to do so, Sunoco itself determines whether putative owners should receive interest, and in what amount.

Accordingly, Cline has demonstrated that the proposed class definition will not present an ascertainability problem.

## III. CONCLUSION

Because Cline meets the requirements for class certification, the Court will grant the motion. The Court declines to hold a hearing because it will not aid in the decisional process.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 3 October 2019
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge