## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PERRY CLINE, on behalf of<br>himself and all others<br>similarly situated, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-313-JAG |
| | ) | |
| SUNOCO, INC. (R&M) | ) | |
| and SUNOCO PARTNERS | ) | |
| MARKETING & TERMINALS, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

### CLASS REPRESENTATIVE'S MOTION TO STRIKE
### SUNOCO'S EXPERT, ERIC KRAUSE

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ................................................................1

II.   FACTUAL BACKGROUND ...............................................1

III.  LEGAL STANDARD ........................................................4

IV.   ARGUMENT ....................................................................7

    A. SUNOCO'S KRAUSE REPORTS VIOLATE RULE 26 AS
    INCOMPLETE DISCLOSURES ..............................................7

    B. SUNOCO'S "SUPPLEMENTAL" KRAUSE REPORT FURTHER VIOLATES THE COURT'S
    ORDER AND THE RULES AS A LATE AND IMPROPER SUPPLEMENT....................10

        i.    SUNOCO'S COMPLETE EXPERT REPORTS ON MARKETABLE
                TITLE ISSUES WERE DUE OCTOBER 25 BECAUSE SUNOCO
                BEARS THE BURDEN ..................................................11

        ii.   SUNOCO'S COMPLETE EXPERT REPORTS WERE DUE
                NOVEMBER 1 AT THE LATEST .......................................13

    C. THE FACTORS WEIGH IN FAVOR OF EXCLUDING
    KRAUSE'S EXPERT OPINIONS ...........................................15

        i.    PREJUDICE AND CLASS REPRESENTATIVE'S ABILITY TO CURE IT ...15

        ii.   SUNOCO'S BAD FAITH AND WILLFULNESS ....................................18

        iii.  KRAUSE'S OPINIONS WILL DISRUPT TRIAL ....................................19

V.    CONCLUSION ...................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Hull v. Sun Ref. & Mktg. Co*,
    1989 OK 168 ..................................................................................12

*Jacobsen v. Deseret Book Co.*,
    287 F.3d 936 (10th Cir. 2002) ...........................................................5

*Rodgers v. Beechcraft Corp.*,
    759 F. App'x 646 (10th Cir. 2018) ........................................... *passim*

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*,
    170 F.3d 985 (10th Cir. 1999)...........................................................6

**Rules and Statues**

Federal Rule of Civil Procedure 26 ...............................................................3,

Federal Rule of Civil Procedure 26(a)....................................................... 5, 6

Federal Rule of Civil Procedure 26(a)(2)................................................5, 7, 9, 12

Federal Rule of Civil Procedure 26(a)(2)(D) ............................................. 5

Federal Rule of Civil Procedure 26(a)(2)(E)............................................. 5

Federal Rule of Civil Procedure 26(e)...................................................5, 9, 18

Federal Rule of Civil Procedure 26(a)(3) ...........................................6, 13

Federal Rule of Civil Procedure 37(b) ................................................ 10

Federal Rule of Civil Procedure 37(b)(2)................................................ 6

Federal Rule of Civil Procedure 37(c).................................................. 10

Federal Rule of Civil Procedure 37(c)(1)............................................6, 7

52 O.S. § 570.10(D)(2).......................................................................12

## I.      INTRODUCTION

Class Representative respectfully requests the Court preclude Sunoco's proposed expert witness, Mr. Krause, from testifying at trial because Sunoco and Mr. Krause violated the Court's Pretrial Order and the Federal Rules.  To be clear, this is not a motion to exclude testimony under *Daubert*.   Class Representative did not file such a motion despite the unreliable nature of Mr. Krause's opinions because such motions are generally disfavored in a bench trial.  Instead, Class Representative learned of new information earlier this week and again today that makes it clear that Sunoco clearly, and intentionally, withheld information and instructed Mr. Krause to withhold opinions in violation of the Court's Pretrial Order.  Class Representative requests an expedited briefing schedule and a hearing on this Motion.

## II.      FACTUAL BACKGROUND

This case was filed over two years ago. Class Representative requested Sunoco's suspense data in his initial discovery requests in 2017 and again in August 2019. *See, e.g.*, Exhibit 1 at RFP Nos. 13-15; Exhibit 2 at RFP No. 37.  Sunoco refused to produce it during the discovery period. Sunoco first disclosed Eric Krause as an expert in March 2019. Discovery closed almost six weeks ago on October 18, 2019. The Court set the expert report deadlines as follows:

- Party with the burden of proof on any issue by October 25, 2019;

- opposing party by November 1, 2019;

- rebuttal experts(s) by November 8, 2019.

Dkt. No. 102 at 2.  Class Representative served his expert reports on October 25.

Sunoco served Mr. Krause's expert report on November 1.  In his original report, Mr. Krause admitted that Sunoco had failed to provide Mr. Krause the necessary suspense data he needed to render certain opinions until one day before (October 31).  Plaintiff could not realize the import and severity of this admission until this week and, ultimately, until Plaintiff deposed Mr. Krause today, December 5.

On December 2, Sunoco began serving new Krause "supplemental" reports in which Mr. Krause provided entirely new opinions based on the late-produced data, as well as other previously undisclosed opinions.  Mr. Krause also admitted again that Sunoco had not provided him with its own suspense history data in time for him to review it.  Krause himself explained the material importance of Sunoco's failure to give him this information: "Due to the _complex nature_ of the data _and because I received the data one day prior to my report being due_, I did not have sufficient time by November 1 to perform a quantification of the effects to any damages resulting from a full analysis and evaluation of this data."  Exhibit 3 at ¶5 (emphasis added).  In his supplemental reports, Mr. Krause admitted that he has still not finished his work, his analysis is ongoing, and it will continue to change and evolve through trial. Even worse, Sunoco has served Plaintiff with new, previously undisclosed data all week.  Indeed, Sunoco provided backup data for Mr. Krause's deposition last night (December 4th) after 5:00 p.m. and again today _after_ Krause's deposition.

The serious nature and severity of Sunoco's bad-faith conduct was revealed at Krause's deposition today, where he testified that he has been asking Sunoco for the data since 2018 but Sunoco did not give him the data he needed to testify.

When unpacked, Krause's statements, reports and testimony demonstrate the following:

- Krause asked Sunoco for the suspense history data in 2018—at least ten months before his expert report was due—because he knew the data was material to his expert opinions;

- Sunoco did not provide Krause with the material data he needed until October 31, 2019—two weeks after the close of discovery and one day before his expert report was due;

- Although material to Krause's expert opinions, the data was too complex for him to review and fully analyze in time to include opinions to a reasonable degree of certainty on it in his November 1 expert report;

- Due to this failure, Krause could not write a report that complied with Rule 26 by the deadline;

- On November 1, 2019, Sunoco knowingly served the incomplete Krause report in violation of Rule 26;

- Sunoco did not seek leave to modify this deadline or alter the Court's schedule for expert disclosures;

- Krause took more than a month to digest the suspense history data and to change his report to include new material opinions and methodologies;

- Sunoco's counsel intentionally instructed Krause to wait to finalize his "supplemental" report until after the Court ruled on the "Motion to Clarify" (Dkt. No. 172) on November 26 to determine how he described damages associated with unclaimed property;

- Krause was asked for the first time after the Court ruled on the "Motion to Clarify" to include new research and opinions related to the percentage of unclaimed property recovered by owners (*see* Exhibit 3 at ¶¶25-34);

3

- Sunoco served the "supplemental" Krause report on December 2, 2019—31 days late and 13 days before trial;

- Sunoco served a "corrected" version of this supplemental report on December 3, 2019; and

- Sunoco served the "back-up materials" related to this supplemental report on December 4, 2019 (the night before Mr. Krause's deposition) stating that Plaintiff "might want to see" them.  Exhibit 4.

Worse still, Krause's supplemental reports state he intends to perform "further work associated with the historical suspense codes proceeds between now and the date of trial." Exhibit 3 at 14. The trial starts in 11 days.

During his deposition, Mr. Krause identified a summary project he has not even started to perform but was asked to perform for the first time on December 2.  That means he has still not complied with Rule 26 and still is not done with his report.  What's next? The target has not stopped moving and—if Sunoco has its way—Krause's opinions would be different when he steps onto the witness stand than they are right now.

As such, and for the reasons below, Class Representative respectfully requests that the Court exclude Sunoco's expert Eric Krause from testifying at trial.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2) states in relevant part, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence" along with "a ***complete statement of all opinions*** the witness will express and the basis and reasons for them" and the "facts or data considered by the witness in forming them," among other things. Fed. R. Civ. P. 26(a)(2) (emphasis added). The timing of these

4

disclosures is typically a matter for Court order.  *Id.* at Rule 26(a)(2)(D) ("A party must

make these disclosures at the times and in the sequence that the court orders.")

Here, the Court's Pretrial Order covers this, stating, "[t]he parties will disclose the

information required under Rule 26(a)(2) on the following schedule:  Party with the burden

of proof on any issue by October 25, 2019; opposing party by November 1, 2019; rebuttal

experts(s) by November 8, 2019."  Dkt. No. 102 at 2. Absent this provision in the Pretrial

order, expert disclosures would have been due "at least 90 days before the date set for trial

or for the case to be ready for trial" and for rebuttal opinions, "30 days after the other

party's disclosure." Federal Rule of Civil Procedure 26(a)(2)(D). Thus, the Court altered

the expert disclosure deadlines from this default, giving Sunoco even more time than it

otherwise would have had.

These deadlines serve a practical and fair purpose. "Rule 26(a) expert reports . . .

are intended not only to identify the expert witness, but also 'to set forth the substance of

the direct examination' . . . [and are] necessary to allow the opposing party 'a reasonable

opportunity to prepare for effective cross examination and perhaps arrange for expert

testimony from other witnesses.'" *Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 656-57

(10th Cir. 2018) (brackets and ellipses original) (quoting *Jacobsen v. Deseret Book Co.*,

287 F.3d 936, 953 (10th Cir. 2002) (quoting Fed. R. Civ. P. 26(a)(2) advisory committee's

note to 1993 amendment).

Parties have a continuing obligation to supplement expert reports "in a timely

manner" if the parties later learn the information initially provided is incomplete or

incorrect. Fed. R. Civ. P. 26(a)(2)(E) & 26(e). However, "[s]upplementation must occur

5

'by the time the party's pretrial disclosures under Rule 26(a)(3) are due.'" *Rodgers*, 759 F. App'x at 657 (quoting Fed. R. Civ. P. 26(e)(2).)

Here, the Court's Pretrial Order set the pretrial expert disclosure deadlines, after which supplementation could not occur.  *See* Dkt. No. 102. The absolute latest deadline was that for rebuttal reports on November 8, 2019.

Under Rule 37(b)(2), if a party "fails to obey an order to provide or permit discovery, … the court where the action is pending may issue further just orders," including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  Fed. R. Civ. P. 37(b)(2). Similarly, under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

District courts have "broad discretion" in determining whether a Rule 26(a) violation is justified or harmless.  *Rodgers*, 759 F. App'x at 657. "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure." *Id.* (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)). However, in making the determination, district courts consider the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.*

## IV.    ARGUMENT

Sunoco failed to provide material information to its own expert.  Sunoco's failure to provide this information is the admitted cause of the expert's inability to render full and complete opinions even as of today.  As a result, both the original Krause report and the "supplemental" Krause reports violated this Court's Pretrial Order (Dkt. 102) and the Federal Rules. Sunoco knew the original report was materially incomplete.  Indeed, Mr. Krause told Sunoco as much as far back as 2018.  The "supplemental" reports were served over a month after the applicable deadlines and are inexcusably untimely.  Mr. Krause still has not completed his analysis.

Further, the factors district courts consider when determining whether an incomplete disclosure or untimely supplement was justified or harmless weigh strongly in favor of excluding Krause's expert opinions under Rule 37(c)(1).  Thus, Class Representative respectfully requests that Krause be excluded from trial.

### a.  Sunoco's Krause Reports Violate Rule 26 as Incomplete Disclosures.

When Sunoco served the original Krause report on November 1, 2019, Sunoco and Krause both knew that the report was materially incomplete. This violates Rule 26(a)(2), which requires, "a ***complete statement of all opinions*** the witness will express and the basis and reasons for them" and the "***facts or data*** considered by the witness in forming them," among other things. Fed. R. Civ. P. 26(a)(2) (emphasis added).  In the November 1 report, Krause stated that he received the suspense history data "on October 31, 2019" and that he was "currently evaluating this data."  *See* Exhibit 5 at ¶49.  Mr. Krause then described what he called a "highly preliminary" quantification (*see id.* at ¶62) that he

acknowledged during his deposition was not his complete opinion to a reasonable degree of accounting certainty.  However, it was not until December 2 that Krause provided what he contends is his updated analysis on this data, but even now he continues to refine his work. Thus, Sunoco did not comply with Rule 26 because it had not provided its expert with the suspense history data he requested in order to render materially complete opinions. Sunoco had two years to pull this data together, produce it in discovery, and provide it to its own experts. But Sunoco *chose* not to.

Moreover, Sunoco did not even ask Mr. Krause to perform his new research and reach his new opinions about unclaimed property until ***after*** the Court ruled on Sunoco's Motion to Clarify.  The Court ruled on that Motion on November 26, long after Sunoco's expert disclosure deadline.

Sunoco created all of these issues. Class Representative requested the suspense history data in 2017. Sunoco objected and refused to produce it until two weeks *after* discovery was closed. Krause testified today that he also asked Sunoco for this same suspense history data on two separate occasions in 2018. Mr. Krause testified that Sunoco blamed "programming" issues and withheld the data from Krause until *one day* before his expert report was due on November 1, 2019. Further, both Sunoco and Krause *knew* the suspense history data was material to Krause's expert opinions. That is why Krause asked for it the first place. And if the data is material to Krause's opinions, it also is material to Class Representative's ability to prosecute his claims and/or deal with Sunoco's defenses— and to the Court's role as fact finder.

Krause "supplemental" report explains, "[d]ue to the complex nature of the data and because I received the data one day prior to my report being due, I did not have sufficient time by November 1 to perform a quantification of the effects to any damages resulting from a full analysis and evaluation of this data." *Id.* at ¶5. That admission means that, when Krause signed his original report and when Sunoco served it on November 1, both Sunoco and Krause *knew* it was materially incomplete. That is, the original report was NOT "a ***complete statement of all opinions*** the witness will express" and did NOT include the "***data considered*** by the witness in forming them[.]" Fed. R. Civ. P. 26(a)(2).  Rather, the original Krause report was a blatant violation of Rule 26, which is why Sunoco tried to "supplement" it on December 2 and 3.

Of course, Class Representative did not know the extent of Sunoco's discovery failures when Sunoco served the original Krause Report on November 1. It was not until after Sunoco served the "supplement" and Krause sat for a deposition today—and admitted that Sunoco failed to give him the data and instructed him to withhold calculations regarding "escheat" damages—that Class Representative discovered the egregiousness of Sunoco's behavior.

Supplementation under Rule 26(e) is not a "get out of jail free card" for intentional discovery abuse. It does not cure the abuse. Otherwise, the normal rules and expectations of discovery would be subsumed by out-of-time "supplements" consisting only of what was clearly required in the first place.  Rather, supplements are for when a "party ***learns*** that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e).  Sunoco did not ***learn*** the original Krause report was materially incomplete

9

or incorrect.  Sunoco knowingly and intentionally served it that way, hoping for a change in circumstances before trial that would absolve it of further action.

Further, Sunoco's "supplemental" Krause reports are *still* incomplete, because they states Krause will be performing "further work associated with the historical suspense codes proceeds between now and the date of trial."  Exhibit 3 at 14.  That is, Sunoco did the exact same thing again—intentionally and knowingly serving incomplete expert reports in violation of Rule 26. The new reports still do NOT contain "a ***complete statement of all opinions*** the witness will express."  Class Representative has no idea what new opinions Sunoco might elicit from Krause at trial.

Not only does Sunoco's conduct violate Rule 26, it is intentional, bad-faith litigation conduct. As such, Krause should be excluded from testifying under Rule 37(b) and (c).

> ### b. Sunoco's "Supplemental" Krause Report Further Violates the Court's Order and the Rules as a Late and Improper Supplement.

Sunoco's "supplemental" Krause reports do not cure or excuse Sunoco's willful violations of Rule 26.  Just the opposite: they further prejudice's Class Representative. In addition to still being incomplete, the primary substance of Krause's new opinions relate to issues on which <u>Sunoco</u> bears the burden of proof. Such opinions were due on October 25, 2019.  *See* Dkt. No. 102 at 2.  And, any remaining opinions were due on November 1 at the latest. *Id.* But, Sunoco served the new report on December 2 and then a "corrected" version on December 3, 2019.  Therefore, the new report is egregiously late and violated the Court's Pretrial Order and the Federal Rules.  Thus, to the extent Mr. Krause is not

excluded from testifying at trial entirely, he should not be permitted to testify regarding the matters set forth in his supplemental report.

### i. Sunoco's *Complete* Expert Reports on Marketable Title Issues were Due October 25 because Sunoco Bears the Burden.

The crux of Sunoco's new expert testimony is that the damages analysis must be changed based on Sunoco's late-produced suspense history data, which Sunoco did not provide Krause in time for his first expert report.  In the supplemental reports, Krause states,

> It remains my opinion after a full review of the suspense history data that it is insufficient alone to fully ascertain the underlying reason for an apparent "Untimely Payment" actually being untimely – and if it is indeed an Untimely Payment, whether or not it would require a payment of interest on the basis of a 6% compounding rate or a 12% compounding rate.

Exhibit 3 at ¶5.  Krause goes on to offer opinions that, based on his review of the new suspense history, "it would be necessary on a case-by-case basis to determine precisely when title became marketable (assuming it ever did) and the associated timing of when the funds were actually released from suspense and paid." *Id.* at ¶7.  Astonishingly, Sunoco's expert then criticized Class Representative's expert, Ms. Ley, for not having "performed any type of analysis that cures any of these issues." *Id.*  However, like Krause, Ms. Ley did not have Sunoco's suspense history data when she completed her report because Sunoco did not produce it until *after* the deadline.

More important, though, is the fact that *Sunoco*—not Class Representative—bears the burden to show that any owner's title was unmarketable.  Indeed, the inquiry under the PRSA is <u>not</u> whether the royalty owner possessed marketable title, but whether payment

was withheld "***because***" the payor had legitimate marketability concerns.   52 O.S.
§ 570.10(D)(2); *see also Hull v. Sun Ref. & Mktg. Co*, 1989 OK 168, ¶ 9, 789 P.2d 1272,
1277.  The default interest rate is 12%.  If Sunoco wishes to avail itself of the 6% interest
provision of the PRSA for untimely payment, then *Sunoco* must show that the title at issue
was unmarketable.  Why would Class Representative be required to establish Sunoco's
safe-harbor status?[1]

That Sunoco bears the burden on these issues is critical because the Court's Pretrial
Order clearly states, "[t]he parties will disclose the information required under Rule
26(a)(2) on the following schedule:  **Party with the burden of proof on any issue by
October 25, 2019**[.]"  Dkt. No. 102 at 2.  Thus, the new opinions in the supplemental report
related to marketable title issues were due on October 25.  However, Sunoco served the
first supplemental report on December 2, 2019—which is 38 days late.

Then, Krause testified today that Sunoco did not even tell him about the applicable
deadline deadline:

> Q: Did anyone approach you about having a report ready on October
> 25th about anything?
>
> A: Not that I recall.

Krause Depo. (Dec. 5, 2019).[2]  Indeed, Sunoco instructed or allowed Mr. Krause to write
his supplemental report criticizing Ms. Ley's damages analysis for allegedly failing to

---

[1] Class Representative has filed contemporaneously herewith a trial brief addressing in
more detail this burden of proof issue, which brief is incorporated herein by reference.
[2] Given the urgency in resolving whether Mr. Krause's report should be struck, Plaintiff files this
Motion on the same day as Mr. Krause's deposition.  The deposition transcript is not yet available

account for unmarketable title issues without ever telling Mr. Krause that *Sunoco bears the burden*:

> Q: Has anyone talked to you about the burden of proof in this case?
> A: Um, you have.
>
> Q: Has anyone told you that Sunoco bears the burden to show whenever it thinks title is not marketable?
> A: No, sir.

*Id.*   No wonder Sunoco's Krause report was late and incorrect. Sunoco never told Krause what he needed to know.

### ii. Sunoco's *Complete* Expert Reports Were Due November 1 at the Latest.

Even putting aside the fact that Sunoco bears the burden on marketable title issues, the deadline for "opposing party" expert reports in the Court's Pretrial Order is November 1, 2019. Dkt. No. 102 at 2.  Thus, that date is the absolute latest that Sunoco could have served an expert report.

While parties have a duty to supplement expert reports under Rule 26, such "[s]upplementation must occur 'by the time the party's pretrial disclosures under Rule 26(a)(3) are due.'" *Rodgers*, 759 F. App'x at 657.  Here, other than for rebuttal, the last possible deadline for Sunoco's expert disclosures is set in the Court's Pretrial Order as November 1, 2019.  Dkt. No. 102 at 2. Sunoco served its supplemental report on December 2, 2019—which is 31 days late.

---

and citations to Mr. Krause's testimony are transcribed from audio recordings taken during the deposition. Objections have been omitted.

Moreover, the "supplemental" report was not even a supplement at all.  In addition to the brand-new opinions and methodologies related to the suspense history data, Krause included entirely new research and opinions about how frequently owners claim unclaimed property.  *See* Exhibit 3 at ¶¶25-34. These new opinions are not tethered to the late suspense history data.  Thus, Sunoco could and should have included them in Krause's November 1 report, but chose not to.

The reason?   Even though Krause had finished much of his report before Thanksgiving, Sunoco instructed Krause *not* to finalize his report until the Court ruled on its Motion to Clarify:

> Q: Sunoco's lawyers told you to wait to finalize your report, and that wasn't an accident, was it?
>
> A: I'm not sure how it could've been an accident. I was asked to wait on the 25th to finalize the report until after the order came out by the Court as to whether or not the unclaimed property funds were in or out of the class.
>
> Q: You say asked. Sunoco's lawyers are the ones that authorize you to do work in this case, correct?
>
> A: Yes, sir.
>
> Q: So if they ask you to wait, you have to do it, right?
>
> A: If they ask me to wait and file a report, I'm going to wait and file the report.
>
> Q: It's an instruction from the lawyers in this case that retained you that you followed?
>
> A: I would agree with that.

Krause Depo. (Dec. 5, 2019).  This is just more egregious behavior by Sunoco. And, Sunoco's "supplemental" Krause reports violate the Court's Pretrial Order and the Federal Rules governing timely supplementations.

Because the original Krause report and the supplemental reports all violated Rule 26 and the Court's Pretrial Order, the only question is whether Krause's testimony should be excluded. It should.

### c.   The Factors Weigh in Favor of Excluding Krause's Expert Opinions.

District courts consider the following factors in deciding whether to exclude late expert reports: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the proponent's bad faith or willfulness. *Rodgers*, 759 F. App'x at 657. (quoting *Woodworker's Supply, Inc.*, 170 F.3d at 993). Here, all of these factors weigh in favor of excluding Krause's expert opinions.

### i.   Prejudice and Class Representative's Ability to Cure it.

The prejudice caused by Sunoco's actions here are numerous. When Sunoco first served the original Krause report on November 1, 2019, Class Representative had no way of knowing just how materially incomplete it was. Class Representative had no idea that Sunoco had instructed Krause not to include certain opinions.  Rather, in the 31 days between the November 1 report and the "supplemental" report, Class Representative logically presumed Sunoco's expert reports were materially complete (even though Krause included the boilerplate "I reserve the right to supplement" language like all experts and complained about the late-produced suspense history data). That is why Class

Representative did not move to exclude Krause then. And even after receiving the "supplemental" reports, Class Representative did not know just how bad Sunoco's material omissions were until taking Krause's deposition today. Hence, this Motion.

These were crucial days which—had Sunoco provided its own expert with its own data and timely served complete reports—Class Representative could have used to prepare. With less than 10 days left before trial, Class Representative will be hard-pressed to deal with Krause's incomplete old opinions and ever-changing new ones, especially given all of the other requirements of trial, such as completing pretrial briefs (due December 6), drafting proposed findings of fact and conclusions of law (due December 11), and preparing to examine the 35 witnesses on Sunoco's witness list (the majority of whom Sunoco never previously disclosed).

And, Sunoco's omissions are highly material.  Krause himself established that in multiple ways. To start, Krause asked for the suspense history data two times back in 2018 *because* it was material.  And the way he uses it in the new report clearly demonstrates just how material he believes it is. For example, one of his new opinions is that Ms. Ley's damages calculation should be reduced by $5.8 million based on the suspense history data—twice the amount in his original report.  Specifically, Krause states, "my more refined analysis would reduce Ms. Ley's principal interest damages by about $3,560,225 and her "interest on interest" calculation by another $2,229,803." Exhibit 3 at ¶15. *That is material*.  Krause literally changed his damage calculation methodology 13 days before trial. This is not a supplement. This is what Krause and Sunoco should have done in the first place.

Going further, Krause then muddies his reduced damages calculation with a new opinion that depending on how he applies the 6% and 12% interest rates (another undisclosed methodology), the damages would range from "between $27,079,160 on the low side, and $44,639,775 on the high side"—a massive delta.  This too is a material opinion and new methodology that Class Representative just now received.  Wrong as his opinions are (and they are woefully wrong), it is difficult to imagine anything more prejudicial than material changes to an opposing expert's methodologies on the eve of trial.

Regarding his new "unclaimed property opinions," Mr. Krause opines that "the majority of the damages Ms. Ley calculates will never be claimed from the states by any owners."  Exhibit 3 at ¶34.  This opinion is irrelevant because state escheat claim rates have nothing to do with the fact that Sunoco failed to pay the interest it owes to the rightful owners.  Nevertheless, Mr. Krause certainly believes this is a material opinion as he felt the need to include it at Sunoco's request, but only *after* Sunoco lost its Motion to Clarify.  This is an entirely new area of research and opinions from Mr. Krause (*i.e.*, how frequently unclaimed property is recovered), and the late addition of new opinions violates the Court's Order and Rule 26.

Again, Class Representative has already spent weeks preparing to cross-examine Krause on his *original* opinions, which Class Representative just learned were materially incomplete or wrong.  Sunoco has now changed many of those opinions and threatens to continue changing them until trial. As such, Class Representative does not have "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'"  *Rodgers*, 759 F. App'x at 656-57.  Class

Representative's team is not afraid of hard work and long hours. However, this Court's orders, the Federal Rules, and simple fairness all dictate that Sunoco cannot intentionally serve an incomplete expert damages report and then, two weeks before trial, spring a new, complex damages calculation and methodologies on Class Representative.

Moreover, Sunoco has stated that Krause is doing "further work associated with the historical suspense codes proceeds between now and the date of trial." Exhibit 3 at 14. And, just yesterday, Sunoco served a "corrected" supplemental report that changed certain of Krause's damages numbers again—and provided the backup data the night before Mr. Krause's deposition. It is difficult to prepare to cross-examine or respond to expert opinions that are subject to change on a whim. The prejudice to Class Representative is obvious and rampant.

Therefore, Sunoco's failure to serve a complete Krause report followed by egregiously late "supplements" caused surprise and prejudice to Class Representative, and little can be done to cure it. This factor favors excluding Krause.

### ii. Sunoco's Bad Faith and Willfulness.

This factor also weighs in favor of exclusion. Sunoco's bad-faith antics plague the entirety of Krause's opinions. *See supra* Factual Background. Sunoco chose every action it took regarding withholding documents and expert opinions as part of its litigation strategy. *See id.* This includes deliberately telling Mr. Krause to wait to finalize the supplemental report until after a ruling on the Motion to Clarify. This is not the case where a "party *learns* that in some material respect the disclosure or response is incomplete or incorrect," as contemplated by the supplementation provisions of Rule 26(e). Sunoco made

its bed; now it must lie in it.  Sunoco's conduct in almost all aspects of Krause's expert reports was willful and done in bad faith.  This factor favors exclusion too.

### iii.  Krause's Opinions will Disrupt Trial.

This final factor also weighs in favor excluding Krause's testimony. Indeed, the entire point of Krause's changing expert opinions is to *disrupt*. Krause's original opinions were materially incomplete, making it difficult for Class Representative to address them. Krause's new opinions relate to an issue for which Sunoco bears the burden, and Sunoco chose to withhold the relevant data.  Allowing such late opinions based on late-produced data will certainly disrupt the trial.

Last, given that Sunoco further intends to change the opinions in Krause's report between now and the time of trial, it is impossible to predict just how disruptive his testimony will be. And, that is Sunoco's goal: to prevent Class Representative from adequately preparing for cross-examination and trial.

In sum, all of the factors weigh in favor of excluding Krause from testifying at trial under Rule 37.

### V.    CONCLUSION

For the foregoing reasons, Class Representative respectfully requests that the Court exclude Sunoco's damages expert, Eric Krause, from testifying at trial.  In the alternative, Krause should not be permitted to offer any of the opinions contained in the supplemental reports of December 2 and 3. Class Representative respectfully requests an expedited briefing schedule and a hearing on this motion.

Respectfully submitted,

*/s/ Bradley E. Beckworth*
Bradley E. Beckworth, OBA No. 19982
Jeffrey Angelovich, OBA No. 19981
Andrew G. Pate, TX Bar No. 24079111
Trey Duck, OBA No. 33347
**NIX PATTERSON, LLP**
3600 North Capital of Texas Highway
Suite 350, Building B
Austin Texas, 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
*bbeckworth@nixlaw.com*
*jangelovich@nixlaw.com*
*dpate@nixlaw.com*
*tduck@nixlaw.com*

Susan Whatley, OBA No. 30960
**NIX PATTERSON, LLP**
P.O. Box 178
Linden, Texas 75563
Telephone: (903) 215-8310
*swhatley@nixlaw.com*

Patrick M. Ryan, OBA No. 7864
Phillip G. Whaley, OBA No. 13371
Jason A. Ryan, OBA No. 18824
Paula M. Jantzen, OBA No. 20464
**RYAN WHALEY COLDIRON
JANTZEN PETERS & WEBBER
PLLC**
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK  73102
Telephone: (405) 239-6040
Facsimile:  (405) 239-6766
*pryan@ryanwhaley.com*
*pwhaley@ryanwhaley.com*
*jryan@ryanwhaley.com*
*pjantzen@ryanwhaley.com*

Michael Burrage, OBA No. 1350
**WHITTEN BURRAGE**
1215 Classen Dr.
Oklahoma City, OK 73103
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
*mburrage@whittenburragelaw.com*

Robert N. Barnes, OBA No. 537
Patranell Lewis, OBA No. 12279
Emily Nash Kitch, OBA No. 22244
**BARNES & LEWIS, LLP**
208 N.W. 60th Street
Oklahoma City, OK  73118
Telephone:  (405) 843-0363
Facsimile:  (405) 843-0790
*rbarnes@barneslewis.com*
*plewis@barneslewis.com*
*ekitch@barneslewis.com*

Lawrence R. Murphy, Jr.,
OBA No. 17681
**SMOLEN LAW**
611 S. Detroit Ave.
Tulsa, Oklahoma 74120
*larry@smolen.law*

**CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send email notification of such filing to all registered parties.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: December 5, 2019.                    */s/ Bradley E. Beckworth*
                                            Bradley E. Beckworth