# EXHIBIT 1

TO DEFENDANTS' RESPONSE TO MOTION TO STRIKE SUNOCO'S EXPERT, ERIC KRAUSE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PERRY CLINE, on behalf of himself, and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>SUNOCO, INC. (R&M); and<br>SUNOCO PARTNERS<br>MARKETING & TERMINALS, L.P.,<br><br>        Defendants. | Case No: 6:17-cv-313-JAG |

## DECLARATION OF ERIC KRAUSE

1. My name is Eric Krause, a Director at Applied Economics Consulting Group, Inc. I have been retained by Sunoco, Inc. (R&M) and Sunoco Partners Marketing & Terminals L.P. (individually or collectively, "Sunoco" or "Defendants") in this lawsuit as an expert witness. This Declaration is made on personal knowledge as to my own work and a review of information and data supplied by the parties.

2. I understand that Perry Cline, the named Plaintiff in the above-captioned case ("Plaintiff") has filed a "Motion to Strike" that asks the Court to either exclude me from testifying at trial altogether or at least exclude me from testifying as to certain matters related to my December 2, 2019 Supplemental Report.

3. Plaintiff makes clear that the grounds for his Motion to Strike relate to timing issues, not the reliability of my opinions under *Daubert*.

4. Based on my review of the Motion to Strike, Plaintiff appears to mischaracterize certain facts. Accordingly, I submit this declaration to aid the Court in deciding Plaintiff's Motion to Strike.

5. My Supplemental Report of December 2, 2019 provided my response to the new opinions and damages calculations disclosed by Plaintiff's expert, Barbara Ley, in her November 8, 2019 report, and refined the opinions and calculations I had disclosed previously in my report of November 1, 2019.

6. As stated in my November 1, 2019 report, it's my understanding that the historical suspense data produced by Sunoco on October 31 was "generated only after Sunoco endeavored significant time and programming resources in a good faith effort to respond to Plaintiff's requests." The following exchanges in my deposition reiterate this understanding:

> Q: Why did Sunoco not give you that data that you needed until October 31st?
>
> \*\*\*
>
> A: I was told early in the class certification period that they didn't know if they could program their system to output that data and that they were trying to work on it.
>
> And then after class certification, it is my understanding that they [through] ongoing efforts, that they were finally able to get something that was outputted, and that is the four spreadsheets that were provided [to] me.
>
> \*\*\*
>
> Q: Why did Sunoco not give you that data until October 31st?
>
> A: It's my understanding that that's when the data became available.

7. Upon receiving the historical suspense data on October 31, 2019, I immediately began evaluating the data and specifically noted in my November 1, 2019 report that I would supplement my analysis once I was able to complete a refined study. I note that Plaintiff's expert, Barbara Ley, similarly disclosed her "preliminary calculations" utilizing the historical suspense data for the first time in her November 8, 2019 rebuttal report, in which she disclosed her opinion

2

of "Class damages attributable to marketable/unmarketable title issues" using the historical suspense code data produced on October 31. She also stated in that report that her "review of this data is ongoing" and that she was "currently working to make these links" of the suspense code data to specific payments in the Sunoco accounting data. Ms. Ley has not yet disclosed the results of that further analysis of the historical suspense code data. Based on my review of Ms. Ley's workpapers, it appears that her current figures only capture the last code effective for any owner or property in a damages-generating record and applies it only to the periods following the transaction date of that code change. This effectively ignores all of the damages prior to that final code when there are often numerous other codes preceding the single code capture she utilizes. This explains why fewer than 80% of her damages have actually been linked to any codes. My Supplemental Report of December 2 was intended in part to discuss that analysis of the November 8 rebuttal report of Ms. Ley.

8. Plaintiff appears to criticize me for taking "more than a month to digest the suspense history data" while simultaneously emphasizing the complexity of that data in his Motion to Strike. I note that based on the available evidence, I was able to accomplish far more with the data linking the damages to codes where possible during this time. Along similar lines, Plaintiff appears to criticize me for providing the "back-up materials" to my supplemental report on December 4, 2019. Those materials consisted of only the SQL code backing up the calculations presented in my report. To date, Plaintiff's expert has provided only limited back-up materials but no similar materials indicating she performed the analysis I performed since receiving the historical suspense data on October 31, 2019.

9. As I explained in my deposition, I had substantially completed my analysis of the historical suspense data completed on or around November 25, 2019. It is my understanding that

3

the Court informed counsel for both parties that day during a hearing on Defendants' "Motion to Clarify" that the Court would issue a ruling the next day pertaining to proceeds sent to various states under unclaimed property laws. The uncertainty over what to include in my calculations created substantial and potentially avoidable complexity and/or contingencies in my report. Thus, I waited a *single day* – *i.e.*, until after the Court's ruling on unclaimed property issues – to begin finalizing my analysis of the historical suspense data, in case the Court's ruling simplified my report.

10. In order to ensure my analysis was complete and to finalize other aspects of my supplemental report unrelated to historical suspense data, my supplemental report was not served until December 2, 2019. Ensuring my analysis was complete and finalizing other aspects of my supplemental report took many hours of work. I also note that both I and my support staff traveled for Thanksgiving, although I continued to work on the report over the Thanksgiving holiday, and the report was not completed until December 2, 2019. Moreover, I regrettably experienced two personal tragedies during this week that required additional travel and other attention.[1] At no point did I delay my work or delay serving my supplemental report for any improper purpose, whether at the direction of counsel or otherwise.

11. Plaintiff emphasizes that I served a corrected version of my December 2, 2019 supplemental repot on December 3, 2019. Plaintiff neglects to mention—as I testified in my deposition—that the one and only change in this corrected version of my supplemental report was a *single footnote* where I simply updated two numbers in the single footnote 35 to match the rest of my report. This is self-evident from a review of the two documents as well and was disclosed to counsel for Plaintiff at the time the December 3 report was served.

---

[1] I can provide more details should the Court request them.

4

12. Plaintiff also refers to a "summary project" I was asked to perform for the first time on December 2. As I explained in my deposition, I am working to create a summary table, for demonstrative and illustrative purposes only, of data that has already been disclosed and provided to Plaintiff. Plaintiff's expert could compile the same summary table with the data she currently has.

13. Having never previously raised an objection to the timeliness of Sunoco's production of the historical suspense data, my November 1, 2019 report, or my December 2, 2019 report, Plaintiff's counsel Mr. Drew Pate took my deposition on December 5, 2019, which had been requested by Plaintiff counsel in November and scheduled at that time for December 5. Plaintiff's expert Ms. Barbara Ley attended, as did Mr. Bradley Beckworth, one of Plaintiff's lead trial counsel. During the deposition, Ms. Ley appeared to provide Plaintiff's counsel with questions to ask me by passing notes to Mr. Pate. Numerous questions in the deposition related to procedural timing issues rather than the substance or merits of my opinions and analysis. The deposition did not last a full day. Mr. Pate informed my counsel at the end of my deposition (around 2 p.m.) that Plaintiff would be moving to strike some or all my opinions as untimely.

14. In my professional career, I have never seen an expert's opinions successfully challenged as untimely where the opposing party took the expert's deposition after the alleged untimely disclosure.

15. Plaintiff's Motion argues that "[t]he target has not stopped moving" when referring to my opinions in this case. The main "moving target" I am aware of are the opinions of Plaintiff's expert Barbara Ley, including the Plaintiff's class list (and corresponding damage model) which changed from over 74,000 owners on October 25, 2019 when Ms. Ley's first report was issued to just more than 53,000 owners by November 8, 2019 when her rebuttal report was issued.

16. My report of December 2, 2019 contained a disclosure of my opinions about Ms. Ley's revised damages model, first disclosed in her November 8 rebuttal report, as well as her first disclosure on November 8 of her opinions about damages related to unclaimed funds (escheat payments). Much of my December 2 report addresses those issues. I also included a further update in my report of the opinions and numbers I had disclosed in my earlier reports about Sunoco's pay history metrics, but these were not opinions.

17. In my experience with federal court litigation, the experts often refine their calculations after issuing their formal reports, and then make further disclosures outlining these refinements at their depositions or in a supplemental report before trial, just as here. I further expect that Ms. Ley and I will necessarily need to adjust all damages-related numbers in our prior reports before or during the December 16, 2019 trial based on the results of the opt out process, in which some members of the class will have opted out, to eliminate any damages attributable to them from the class damages computations, as well as to account for any liability determinations made by the Court.. As the opt out deadline is December 9, the opt-out information might not be available to the experts before trial on December 16.

Pursuant to 28 U.S.C. § 1746: I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 9th day of December, 2019.

Eric Krause