IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PERRY CLINE, on behalf of himself
and all others similarly situated,
        Plaintiff,

v.                                              Civil Action No. 6:17-cv-313-JAG

SUNOCO, INC. (R&M), and,
SUNOCO PARTNERS MARKETING
& TERMINALS, L.P.,
        Defendants.

## OPINION

Perry Cline represents class members who own interests in oil wells in Oklahoma. The defendants, Sunoco, Inc. (R&M), and Sunoco Partners Marketing & Terminals, L.P. ("Sunoco"), purchase and sell oil from the wells. Sunoco pays the class members proceeds when it sells the oil. Oklahoma's Production Revenue Standards Act ("PRSA") governs when Sunoco must pay those proceeds and imposes statutory interest for paying the proceeds late. *See* Okla. Stat. tit. 52, § 570, *et seq.* Cline has sued Sunoco for failing to pay the statutory interest on late payments it made on oil proceeds.

Cline has moved for partial summary judgment on two issues: (1) whether Sunoco violates the PRSA by not paying statutory interest on late royalty payments until an owner demands that interest; and (2) whether the PRSA requires Sunoco to pay the statutory interest at the same time it makes the late payments. Because the Court concludes that Sunoco must pay the statutory interest without a demand and at the same time it makes the late payment, the Court will grant Cline's motion for partial summary judgment.

# I. BACKGROUND

Sunoco buys oil from numerous wells in Oklahoma and distributes proceeds from the oil to well owners. The class members own interests in those wells. The PRSA dictates when Sunoco must pay the proceeds, and it requires Sunoco to pay statutory interest to interest owners when it pays the proceeds late.[1]

Sunoco often waits until an interest owner requests the statutory interest before it pays that interest. When it receives a request, Sunoco investigates the payment and pays the interest if it determines that it owes interest under the PRSA. Sunoco, however, says that it sometimes pays interest owners the required statutory interest without a request.

In July, 2017, Cline sued Sunoco in Oklahoma state court. Cline alleges that Sunoco's practice of paying interest on late proceed payments violates the PRSA, and that Sunoco has committed fraud by hiding the fact that Sunoco owes interest to the class members. Sunoco removed the action to this Court in August, 2017.

Cline moved to certify the class and name him as class representative in June, 2019. In his motion, Cline explained that this action raises common questions of law and fact, including:

> (1) whether, under Oklahoma law, Sunoco owed interest to Plaintiff and the Class on any and all Untimely Payments;
> (2) whether owners must make a demand prior to being entitled to receive statutory interest;
> (3) whether Sunoco's failure to pay interest to Plaintiff and the putative class on any Untimely Payments constitutes a violation of the PRSA; and
> (4) whether Sunoco defrauded Plaintiff and the putative class by knowingly withholding statutory interest.

---

[1] Sunoco is considered a "first purchaser or holder of proceeds" under the PRSA. *See* Okla. Stat. tit. 52, § 570.10.

(Dk. No. 91, at 22-23.) On October 3, 2019, the Court certified a class of interest owners to whom Sunoco paid proceeds late but did not pay the statutory interest.[2] The Court approved the manner and form of class notice in November, 2019. The class opt-out period expired on December 9, 2019.

In October, 2019, Cline moved for partial summary judgment on whether Sunoco violates the PRSA by waiting to pay statutory interest until an owner requests it, and whether the PRSA requires Sunoco to pay the statutory interest with the late payments. Sunoco moved to strike or stay briefing on the motion until after the class notice period expired. The Court denied the motion to strike or stay and instructed the parties to brief the motion as ordered by the Court. On December 6, 2019, the Court held a hearing on the motion for partial summary judgment. Because the opt-out period has expired, the Court finds it appropriate to issue a ruling on the merits of this action.

---

[2] Specifically, the class includes:

> All non-excluded persons or entities who: (1) received Untimely Payments from Defendants (or Defendants' designees) for oil proceeds from Oklahoma wells on or after July 7, 2012, and (2) who have not already been paid statutory interest on the Untimely Payments. An "Untimely Payment" for purposes of this class definition means payment of proceeds from the sale of oil production from an oil and gas well after the statutory periods identified in OKLA. STAT. tit 52, §570.10(B)(1) (i.e., commencing not later than six (6) months after the date of first sale, and thereafter not later than the last day of the second succeeding month after the end of the month within which such production is sold). Untimely Payments do not include: (a) payments of proceeds to an owner under OKLA. STAT. tit 52, §570.10(B)(3) (minimum pay); (b) prior period adjustments; or (c) pass-through payments.
>
> The persons or entities excluded from the Class are: (1) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (2) publicly traded oil and gas companies and their affiliates; (3) persons or entities that Plaintiff's counsel may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; and (4) officers of the court.

(Dk. No. 127, at 1.)

## II. DISCUSSION[3]

### *A. Disputes of Facts*

To succeed on the motion for partial summary judgment, Cline must first establish that Sunoco omits interest on late payments and waits for a demand from an owner before paying that interest. The parties disagree about whether Sunoco's actions constitute a uniform "policy" or a frequent "practice," and Sunoco insists that it sometimes pays interest with the late payment and without the request of the interest owner. Those arguments miss the point. Sunoco cannot seriously dispute that it waits to pay statutory interest until it receives a request from the interest owner; indeed, it has admitted that it does. (*See, e.g.*, Dk. No. 103-2; Dk. No. 105, at 17-18.) The record establishes that Sunoco engages in this conduct. (*See* Dk. No. 142-1, 7:13-8:19; Dk. No. 142-2, 6:6-8:10; Dk. No. 142-3, 7:2-9:10; Dk. No. 142-5, 7:8-15; Dk. No. 160-1, 6:12-7:19.) Thus, no genuine dispute of material fact exists about Sunoco's actions with regard to the interest payments.

### *B. Questions of Law*

Cline asks the Court to decide two legal questions that lie at the center of this litigation.[4] First, he asks for a ruling that Sunoco's "uniform policy of not paying statutory interest until an

---

[3] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[4] Sunoco argues that Cline's motion requests an impermissible advisory opinion about a nonmaterial issue. Of course, the Court may not render advisory opinions, but it can decide "concrete legal issues, presented in actual cases." *United Pub. Workers of Am. (C.I.O) v. Mitchell*, 330 U.S. 75, 89 (1947). Moreover, "[i]t is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of

4

owner makes a demand" violates the PRSA. (Dk. No. 142, at 9.) Second, he asks the Court to decide whether the PRSA "expressly require[s] *payment* of interest at the time proceeds are paid late." (Dk. No. 142, at 11.) Because any demand requirement depends on when Sunoco must pay interest, the Court first considers when the PRSA requires Sunoco to pay interest on late payments.

*1. Timing of Interest Payments*

In relevant part, § 570.10(D) of the PRSA provides:

> 1. . . . [W]here proceeds from the sale of oil or gas production or some portion of such proceeds are not paid prior to the end of the applicable time periods provided in this section, that portion not timely paid shall earn interest at the rate of twelve percent (12%) per annum to be compounded annually, calculated from the end of the month in which such production is sold until the day paid.
>
> 2. a. Where such proceeds are not paid because the title thereto is not marketable, such proceeds shall earn interest at the rate of (i) six percent (6%) per annum to be compounded annually for time periods prior to November 1, 2018, and (ii) the prime interest rate as reported in the Wall Street Journal for time periods on or after November 1, 2018, calculated from the end of the month in which such production was sold until such time as the title to such interest becomes marketable or the holder has received an acceptable affidavit of death and heirship in conformity with Section 67 of Title 16 of the Oklahoma Statutes, or as set forth in subparagraph b of this paragraph.

§ 570.10(D). The PRSA also requires that, with some enumerated exceptions,

> a first purchaser or holder of proceeds who fails to remit proceeds from the sale of oil or gas production to owners legally entitled thereto within the time limitations set forth in [§ 570.10(B)] shall be liable to such owners for interest as provided in [§ 570.10(D)] on that portion of the proceeds not timely paid. When two or more

---

necessity expound and interpret that rule." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). The complaint alleges that Sunoco had to pay statutory interest with the late payments and failed to do so, thereby violating the PRSA. (*See* Compl. ¶¶ 6-7, 32-38, 41-50). Thus, the Court must decide when Sunoco was required to actually pay that interest to the class members, so this ruling does not constitute an advisory opinion. To the extent that Sunoco argues that the motion is overbroad, the Court has already limited the class definition to payments that fall outside the exclusions listed in § 570.10. The Court's ruling, therefore, only applies to those payments that fit within the class definition; it offers no opinion on whether Sunoco has violated the PRSA with regard to payments outside the class definition.

5

persons fail to remit within such time limitations, liability for such interest shall be shared by those persons holding the proceeds in proportion to the time each person held such proceeds.

§ 570.10(E).

Cline argues that the PRSA requires Sunoco to pay interest at the time it makes the late payment based on the language of the statute, the legislative intent of the interest provision, and a relevant Oklahoma state court decision.

Sunoco contends that it is liable for interest when it makes late payments, but that the PRSA does not require it to pay that interest at the same time it makes the late payments. Sunoco distinguishes § 570.10(D) from PRSA provisions that require individuals to "pay" or "remit" proceeds to the person entitled to them.[5] *See, e.g.*, § 570.10(B)(1)-(3). Sunoco argues that § 570.10(D) only requires proceeds to "earn interest" and that Sunoco "shall be liable" for the interest unless an exception provides otherwise. Because the PRSA does not expressly set forth a payment schedule or require "first purchasers or holders of proceeds" to pay interest absent a claim for that interest, Sunoco contends that the Court cannot "rewrite" the PRSA to require interest payments automatically with the late payment.

The Court turns to relevant Oklahoma law and principles of statutory interpretation to answer this question.

### a. The Pummill *Decision*

Courts sitting in diversity jurisdiction "apply state law with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007). A decision by the highest court of the state binds federal courts when

---

[5] Sunoco also points to the actions of non-parties to convince the Court that the statute does not require Sunoco to pay interest with the late payment. But Sunoco's actions, not the actions of others, are the subject of this litigation, and the Court must consider the conduct and legal questions currently before it.

interpreting state law. *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). Similarly, the decisions of lower state courts provide persuasive guidance to federal courts in diversity cases. *Id.* at 237-38.

One Oklahoma state court case directly addressed when a "first purchaser or holder of proceeds" must make interest payments under the PRSA. In *Pummill. v. Hancock Exploration LLC*, an Oklahoma trial court considered whether the defendants' "old" policy of waiting to pay statutory interest until an owner demanded it and its "new" policy to include the statutory interest on late payments when the defendants were at fault for the late payment violated § 570.10(D). No. CV-2011-82, 2012 WL 13098574, at *1 (Okla. Dist. Ct. Grady Cty. July 16, 2012) (Order on Issue IV). On summary judgment, the Court held that both policies violated § 570.10(D). The court reasoned that "[t]he plain language of this statute imposes an obligation to include interest on late payments regardless of whether the royalty owners make demand for such interest." *Id.* at *2. "Compliance with the statute is not optional," and the defendants "ha[d] the statutory obligation to pay such interest without prior written or oral demand by royalty owners." *Id.* Thus, the court granted summary judgment on the interest payment issue ("Issue IV") in favor of the plaintiffs. The court also granted summary judgment on three other issues ("Issues I through III") unrelated to the timing of interest payments.

The defendants appealed the trial court's orders. *See Pummill v. Hancock Expl. LLC*, No. 111,096 (Okla. Civ. App. June 27, 2014). The Oklahoma Court of Civil Appeals affirmed the trial court's decision on all four issues, explaining that "the findings of fact and conclusions of law of the trial court adequately explain the decision." *Id.* at 5.

The Oklahoma Supreme Court vacated the decision of the Civil Court of Appeals. *Pummill. v. Hancock Expl. LLC*, 341 P.3d 69 (Okla. 2014). The court noted that the interest

7

payment issue "was not contested." *Id.* at 69. It also concluded that "facts which could affect the resolution of the district court Issues I through III need to be addressed before the fact-finder." *Id.* The court, therefore, affirmed in part and reversed in part the trial court's decision and remanded the case to decide the specific fact issues. *Id..* On remand, the courts did not make any further rulings on the interest payment issue. *See* Order Denying Certiorari, *Pummill v. Hancock Expl. LLC,* No. 114,703 (Okla. May 21, 2018); *Pummill,* 419 P.3d 1268; *Pummill v. Hancock Expl. LLC,* No. CV-2011-82 (Okla. Dist. Ct. Grady Cty. Jan. 15, 2016).

Cline and Sunoco dispute whether the Oklahoma Supreme Court's 2014 *Pummill* decision binds this Court in light of the procedural history of the case and the fact that the parties did not contest the interest payment issue. Cline thinks it does, and Sunoco thinks it does not. The Court agrees with Cline. The Oklahoma Supreme Court reversed in part and affirmed in part the decision of the Court of Civil Appeals and remanded the case to the trial court. *Pummill,* 341 P.3d at 69. The court explained that Issues I through III "need[ed] to be addressed before the fact-finder." *Id.* That only left one issue that it could have affirmed—Issue IV. *See also Pummill v. Hancock Expl. LLC,* 419 P.3d 1268, 1272 (Okla. Civ. App. 2018) ("[The Oklahoma Supreme Court] . . . vacated [the Court of Civil Appeals'] opinion, affirmed the trial court's judgment as to statutory interest, reversed its judgment as to the three other issues, and remanded."). Although Sunoco vigorously argues that the parties did not contest Issue IV and the Oklahoma Supreme Court did not rule on the trial court's interest payment decision, it has not explained what else the Oklahoma Supreme Court could have "affirmed" in its ruling.

Even if the Court did not agree that the Oklahoma Supreme Court adopted the trial court's ruling on Issue IV, the *Pummill* decision reflects how an Oklahoma state court would

view the issue directly before this Court. *Pummill* also falls in line with the Court's own interpretation of § 570.10(D).

### b. Plain Language of the PRSA

"Legislative intent controls statutory interpretation." *Krug v. Helmerich & Payne, Inc.*, 362 P.3d 205, 210 (Okla. 2015). Courts ascertain intent "from the whole act based on its general purpose and objective." *Id.* at 210-11. Courts must consider relevant portions together "whenever possible to give full force and effect to each." *Id.* at 211. Courts will look to the language of the statute and "presume that the Legislature intends what it expresses." *Id.* It will give terms "their plain and ordinary meaning" unless "a contrary intention plainly appears." *Id.*

The plain language of § 570.10 requires Sunoco to pay interest at the same time it makes a late payment. In § 570.10, the Oklahoma Legislature ("the Legislature") set forth a deadline for Sunoco to pay proceeds to interest owners. Sunoco argues that the statute does not require automatic payment of interest with the late payment because the Legislature did not also specify a deadline for paying the interest. Sunoco, therefore, believes it can withhold interest until an owner either asks for that interest or sues them for it.

That interpretation runs counter to the PRSA's plain language. The omission of the terms "remit" or "pay" from § 570.10(D) does not preclude a requirement that a "first purchaser or holder of proceeds" pay interest with the late payments. Indeed, requiring automatic payment of statutory interest gives full force and effect to the remaining provisions of § 570.10, which set forth a timeframe to pay proceeds and a consequence for paying the proceeds late. *See Krug*, 362 P.3d at 211. Moreover, Sunoco's interpretation would require the Court to read into the statute a grace period between when it makes a late payment and when it pays the interest. The plain language of § 570.10 does not support such an interpretation.

9

Sunoco, therefore, must pay interest at the same time it makes the late payment. *See Pummill*, 2012 WL 13098574, at *2 ("The plain language of this statute imposes an obligation to include interest on late payments.").

*c. History and Purpose of the PRSA*

At most, the omission of the terms "remit" or "pay" from § 570.10(D) raises an ambiguity appropriate for judicial resolution. To resolve a doubt about the meaning of a statute, courts should refer to the statute's history. *Lekan v. P&L Fire Prot. Co.*, 609 P.2d 1289, 1292 (Okla. 1980). "[W]here a statute is ambiguous or its meaning uncertain it is to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent." *TRW/Reda Pump v. Brewington*, 829 P.2d 15, 20 (Okla. 1992). Courts will not assume the legislature "to have done a vain and useless act in the promulgation of a statute, nor will an inept or incorrect choice of words be applied or construed in a manner to defeat the real or obvious purpose of a legislative enactment." *Id.* (citation omitted); *see also Purcell v. Santa Fe Minerals, Inc.*, 961 P.2d 188, 193 (Okla. 1998).

Thus, the Court must consider the purpose of § 570.10(D). The Legislature enacted the statutory interest provision "to ensure that those entitled to royalty payments would receive proceeds in a timely fashion." *Hull v. Sun Ref. & Mktg. Co.*, 789 P.2d 1272, 1279 (Okla. 1989). Indeed,

> [t]he Legislature in clear and unambiguous terms required timely payment when revenue was derived from or attributable to any production of natural gas. The obvious overriding purpose of the Act is to ensure that royalty owners are timely paid their share of the proceeds. The Legislature has followed a path of strengthening mineral owners['] rights since the Act's inception. Prejudgment interest is accruable in the event such payment is not timely made.

*Krug*, 362 P.3d at 214.

The 12 percent interest rate imposed by the statute preceding § 570.10 initially acted as a penalty, while the 6 percent interest rate compensated the owner for the use of his money until he established marketable title.[6] *See Fleet v. Sanguine, Ltd.*, 854 P.2d 892, 899-900 (Okla. 1999), *superseded by statute as recognized in Purcell.*, 961 P.2d at 193; *In re Tulsa Energy*, 111 F.3d 88, 91 (10th Cir. 1997). The Legislature, however, removed the language describing the 12 percent interest rate as a "penalty." *See Purcell*, 961 P.2d at 193. Nevertheless, courts have continued to acknowledge that "[t]he 12% prejudgment interest acts to compel compliance with the statute's requirement that proceeds be paid to those entitled thereto." *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1320 (10th Cir. 1998).

Sunoco tries to circumvent an unavoidable (and unfavorable) reading of the PRSA by asking this Court to ignore well-founded principles of statutory interpretation and prior relevant case law. Indeed, Sunoco's theory runs counter to the statute's overarching legislative intent. *See Krug*, 362 P.3d at 214; *Hull*, 789 P.2d at 1279. The Legislature enacted § 570.10's predecessor statute in 1980 because "first purchasers and holders of proceeds" wrongfully withheld production proceeds and used those proceeds for their own benefit. Attorney General's Opinion No. 2015-6, 2015 WL 5193536, at *1, 4 (Okla. A.G. Sept. 1, 2015).[7] The PRSA meant to "strengthen[] mineral owners['] rights" and to ensure that "first purchasers and holders of proceeds" paid production proceeds on time. *Krug*, 362 P.3d at 214.

---

[6] For time periods on or after November 1, 2018, the PRSA now requires proceeds withheld due to unmarketable title to "earn interest at . . . 'the prime interest rate as reported in the Wall Street Journal.'" § 570.10(D)(2)(a).

[7] Oklahoma courts consider Attorney General opinions persuasive authority "when a court is determining legislative intent." *Quinlan v. Koch Oil Co.*, 25 F.3d 936, 941 (10th Cir. 1994); *see also Nat'l Cowboy Hall of Fame & W. Heritage Ctr. v. State* ex rel. *Okla. Human Rights Comm'n*, 579 P.2d 1276, 1279 (Okla. 1978).

11

Section 570.10(D), therefore, provides an important incentive for Sunoco to pay interest owners on time. Sunoco does not dispute that it owes interest on late payments, nor could it. But Sunoco's interpretation would allow Sunoco to delay paying the statutory interest indefinitely. Reading the provision to allow Sunoco to withhold the interest from the late payment would, therefore, undermine the very purpose of that provision, rendering it meaningless. Such an interpretation would also mean that the Legislature undertook "a vain and useless act in the promulgation of a statute . . . [that would] defeat the real or obvious purpose of [the] legislative enactment." *TRW/Reda Pump*, 829 P.2d at 20. Resolving the ambiguity by requiring Sunoco to pay the interest at the same time as the late payment, therefore, avoids "absurd consequences . . . without violating legislative intent." *Id.*

## 2. *Demand Requirement*

Cline next asks the Court to decide whether Sunoco may wait until an owner makes a demand for statutory interest before paying that interest.[8] The PRSA does not require interest owners to demand payment to receive royalty proceeds. *See* § 570.10; *cf. Hull*, 789 P.2d at 1279; *Quinlan*, 25 F.3d at 939-40. Because the Court concludes that § 570.10(D) requires a "first purchaser or holder of proceeds" to pay the interest with the late payment, the interest owner need not demand the interest either. *See Pummill*, 2012 WL 13098574, at *2 ("The plain language of this statute imposes an obligation to include interest on late payments *regardless of whether the royalty owners make demand for such interest.*" (emphasis added)). Accordingly, Sunoco may not require interest owners to demand interest payments before paying that interest.

---

[8] Cline describes this as a "uniform policy." (Dk. No. 142, at 9.) Sunoco contends that it sometimes pays interest without a demand. The Court considers this distinction immaterial because Sunoco has consistently admitted that it often waits until an owner makes a demand for interest before paying that interest. Thus, the Court considers whether Sunoco's actions violate the PRSA, regardless of whether Sunoco considers it a "policy."

12

## III. CONCLUSION

The PRSA requires Sunoco to pay interest on late payments at the same time it makes those payments, and Sunoco cannot require an interest owner to make a demand before paying that interest. Thus, the Court will grant Cline's motion for partial summary judgment.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: <u>10 December 2019</u>
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge