**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **PERRY CLINE, on behalf of himself and all others similarly situated,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | **Case No. 17-cv-313-JAG** |
| **SUNOCO, INC. (R&M) and SUNOCO PARTNERS MARKETING & TERMINALS, L.P.,** ) ) ) ) | |
| **Defendants.** ) | |

**CLASS REPRESENTATIVE'S REPLY IN SUPPORT OF HIS
MOTION TO STRIKE SUNOCO'S EXPERT, ERIC KRAUSE**

### I. INTRODUCTION

Sunoco's Response (Dkt. No. 230, "Response") to Class Representative's Motion to Strike Sunoco's Expert, Eric Krause (Dkt. No. 207, "Motion") is another incredibly disingenuous pleading. Sunoco expressly admits that it did not attempt to gather and analyze the suspense history data until "*after* the Court certified the class on October 3[.]" Response at 2 (emphasis added). This despite the fact that Class Representative requested the data over two years ago. Krause himself requested it over a year ago.

The Court did not bifurcate discovery. The Court did not tell Sunoco it could wait and produce merits discovery if, and only after, the Court granted a certification motion. However, Sunoco chose to withhold highly relevant information based on a gamble that it might win on class certification. That is not how the Rules work. Sunoco took a high stakes litigation risk: refuse to gather and produce key discovery in the hopes that it would win

1

certification and never face summary judgment and trial on behalf of anyone other than Mr. Cline. Sunoco's gamble did not pay off. In short, Sunoco intentionally thwarted the purpose of Rule 26(a): "to allow the opposing party 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 656-57 (10th Cir. 2018) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002).

Only after Class Representative took a deposition of Krause based on his extremely late "supplemental" report did Class Representative discover how intentionally harmful Sunoco's behavior was. The "supplemental" report renders much of Krause's original report obsolete as Krause's opinions are still changing; it also reveals how incomplete and misleading the original report was.

Not only does Sunoco's Response admit Sunoco's intentional conduct in violation of Rule 26, it also confirms Sunoco's inability to carry its burden to establish—through Krause or otherwise—that the 6% rate should apply to certain suspended and late-paid proceeds on marketable title grounds. Plaintiff asks the Court to not reward Sunoco for its conduct.

## II.     ARGUMENT

### A. Sunoco Intentionally Withheld the Suspense History Data, Krause's Opinions Thereon, and Krause's Unclaimed Property Opinions.

Sunoco argues that Class Representative did not request the suspense history data until August 2019. Response at 2-3, 15. This statement is simply not true. On August 10,

2

2017—*two years prior*—Class Representative sent Sunoco his initial discovery requests, which included the following request:

> **REQUEST FOR PRODUCTIO NO. 7:** All Documents concerning each amount suspended by Defendant from ***any Owner*** in the Oklahoma Wells during the Relevant Time Period, including but not limited to: the name of each Owner; the well name and its legal description, the date Defendant suspended payments of each Owner's O&G Proceeds; ***the reason(s) each amount was suspended by the Defendant***; the date Defendant ultimately paid the O&G Proceeds; and the amount of such payment.

Dkt. No. 207-1 at RFP No. 7 (emphasis added). The request is pellucid. Class Representative definitely requested suspense history data. For all owners. Yet, Sunoco accuses Class Representative of lying about this in his Motion. Response at 2. The opposite is true.

Trying to mask its behavior with buzzwords from Rule 26, Sunoco argues it "quite reasonably objected that producing the data—if it could be done at all—would be unduly burdensome and not proportional to the needs of the case pre-certification." Response at 4, 15. The Court never granted Sunoco's objections. Sunoco did not file a motion for a protective order. Discovery was never bifurcated for pre- and post-certification discovery. And, both parties knew their respective expert disclosure deadlines back in August.

Further, Sunoco admits that it was not until October 2019 that it finally "sought to determine whether there was some way it could produce historical suspense code data for those within the class." Response at 4. This admission entirely undermines Sunoco's excuse for not having produced the data years ago. If Sunoco did not even determine whether producing the data was possible—which, of course, it was—how could Sunoco "truthfully object" years prior that it would be unduly burdensome? In fact, if Sunoco really

3

didn't think it needed to provide this data until August 2019, that means that, once Sunoco got around to it, it took Sunoco less than a month to get the data into usable format and produce it to Krause and Class Representative, *after* the discovery cut-off. *See* Response at 4. This admission destroys Sunoco's argument that "the data ***did not exist*** in any kind of usable form" until "Sunoco undertook heroic efforts following class certification[.]". *Id.* at 15 (emphasis original).

However, Sunoco did not actually withhold this data because it was difficult, but rather because it hoped it would win class certification. Importantly, Sunoco disingenuously argued that individual issues related to marketable title and suspended proceeds precluded certification. It further argued that reviewing each and every suspense reason was not feasible. Now, Sunoco itself has demonstrated that it was entirely possible and feasible for it to produce this data. But Sunoco chose not to produce it precisely because it would have deprived Sunoco of its "individualized issues" and "feasibility" arguments. This is bad-faith plain and simple.

Moreover, Class Representative was not the only one to ask for this data: *Eric Krause asked for it two times back in 2018*. Sunoco admits this fact. Response at 4. Indeed, both Sunoco and Krause *knew* when they served the original Krause report that it was materially incomplete. Sunoco chose to serve the original report anyway—just one day after it had finally produced the suspense history data. Sunoco's Response admits the data was relevant to Krause's opinions in his original report regarding "the need to use a 6% rate of interest for late payments where title had not been marketable." *Id.* at 5. Krause and Sunoco knew this as early as 2018 when Krause requested the data. But they chose to

4

proceed with their gamble that maybe Sunoco would win class certification. This is a knowing violation of Rule 26.

Sunoco attempts to downplay its actions by arguing that the new Krause report is a mere supplement that did not materially change his opinions. Response at 12-13. However, this is not accurate. The "supplemental" Krause report does not simply use "the same methodology" with new "inputs and calculations to produce a more complete and accurate report," as Sunoco suggests. *Id.* at 13. The "supplemental" report *changes* Krause's methodology. Indeed, Krause himself euphemistically calls his new effort a "more refined *analysis*." Dkt. No. 207-3 at ¶15 (emphasis added). The purpose of Sunoco's new analysis was to incorporate—***for the first time***—the suspense history data that Sunoco sat on for two years despite Class Representative and Krause both requesting it repeatedly. That in turn fundamentally changed his opinions and the approach Sunoco would take at trial. Further, it demonstrated the material incompleteness of Krause's original report, which Class Representative relied on for weeks to his detriment.

As for the new unclaimed property opinions in the "supplemental" Krause report, Sunoco admits they are not supplements at all. Sunoco claims, "Plaintiff does complain about certain comments on unclaimed proceeds, but Mr. Krause offered these items in response to Ms. Ley's rebuttal report and in the wake of the Court's ruling on the motion to Clarify, and much of this was already disclosed in his declaration on November 14 filed in support of that motion." Response at 9. However, the Court's Pretrial Order did not allow for rebuttal reports to rebuttal reports. *See* Dkt. 102 at ¶2.

5

Moreover, Sunoco could have included these unclaimed property opinions in Krause's original report but consciously chose not to. Indeed, Sunoco confirms that "Sunoco's counsel told [Krause] on November 25 that the Court would be ruling on Sunoco's motion to clarify the very next day—as the Court had announced—and indicated he should wait for that ruling to finalize portions of his supplement that would depend on whether unclaimed proceeds were in the class or not." *Id.* at 8. However, Sunoco had zero rational basis to think unclaimed proceeds were not in the class, as confirmed by the Court's Order on the motion to clarify. Thus, Krause's new opinions on unclaimed property were not supplements. Sunoco intentionally withheld them based on another irrational gamble.

## B. The Harm Caused by Sunoco's Actions Has Not Been Cured.

The fact that Class Representative took another deposition of Krause after receiving his new report does not cure Sunoco's discovery violations. *See* Response at 9. Rather, it was at this deposition that Class Representative first learned the full import and inappropriate reasoning for Sunoco's withholding the suspense history data and the new opinions in the "supplemental" report. Class Representative further learned that those opinions are still changing, and that Sunoco intends to create new expert material before trial. The deposition did not "eviscerate[] any notion [Class Representative] will be unfairly surprised at trial and unable to respond." *Id.* Rather, it demonstrated just how incomplete the original Krause report was and how much surprise and disruption Krause's testimony will invite at trial. Class Representative promptly filed the present Motion immediately following this deposition.

6

Nor does the fact that Krause's original report contained statements to the effect that he would continue working on aspects of his report excuse the harm caused by Sunoco's intentional actions. *See* Response at 16. If that were true, expert disclosures under Rule 26 would be reduced to meaningless *pro forma* statements subject to change at any time. It would permit sandbagging on an unprecedented scale. This argument should be rejected.

### C. Sunoco Bears the Burden of Proof on Marketable Title Issues and Has Demonstrated It Cannot Meet That Burden.

Even if Class Representative had not specifically requested the data over two years ago, Sunoco should have affirmatively produced the suspense history data because Sunoco knew Krause would rely on its to offer opinions at trial. At the very latest, Sunoco knew this in 2018 when Krause himself requested the data. Specifically, Sunoco knew it would need this data to demonstrate if and when it was entitled to pay 6% interest—which is Sunoco's burden—if the case went to trial. But Sunoco chose to wait and see if the Court would grant class certification first. That is the entire purpose of the post-certification "supplemental" report: Sunoco lost the gamble and knew its evidence for trial was incomplete. Sunoco has been scrambling to catch up ever since.

Sunoco unpersuasively argues—citing general and inapplicable case law in passing—that it does not bear the burden to establish the 6% interest rate applies late-paid proceeds suspended on marketable title grounds. The applicable Oklahoma case law says otherwise. Class Representative incorporates by reference his pretrial brief on this issue and stands on the arguments therein. Dkt. No. 208.

Further, Sunoco's Response plainly admits that it cannot meet its burden. For instance, Sunoco explains, "Krause stated that he would rely on Sunoco's title expert, Kraettli Epperson, who offered opinions that certain codes likely denote unmarketable title, while others *could* denote unmarketable title but not necessarily (those codes are indeterminate)." Response at 5 (emphasis added). Krause's original report only included a "preliminary estimate" as to how those "indeterminate" codes *might* affect the applicable interest rate. *Id.* at 6. Then, over a month after serving the original Krause report, Sunoco served the "supplemental" Krause report containing a "more refined analysis" based on the late-produced suspense history data. However, while the new report changes Krause's methodology and opinions, it does not get Sunoco any closer to meeting its burden on the 6% issue. Rather, the "supplemental" report solidified Sunoco's inability to carry its burden: Krause is *still* not finished analyzing the suspense history data, which Sunoco *still* calls "indeterminate."

The best evidence of Sunoco's failure to carry its burden is the massive range of damages the new Krause report puts forward. Sunoco and Krause were not able to determine which rate applies to a large number of suspended accounts (due to the "indeterminate" codes) and, thus, "Krause made two calculations, one applying 6% to all such transactions and the other applying 12% to all such transactions, which resulted in a range of $27 million to $44 million." Response at 9. Sunoco's Response claims this "range simply illustrates the uncertainty in Ms. Ley's damages model." *Id.* That argument is absurd. This is a strict liability statute. The default interest rate is 12%. Sunoco must demonstrate that payment was withheld for a marketable title issue for any payment(s) it

8

wishes to only pay 6% interest on. Calling a group of suspense codes "indeterminable" on its face is an admission that those codes do not meet the stringent unmarketable title standard and, as such, cannot justify a 6% rate.

Out of an abundance of caution, and *before* Sunoco served its "supplemental" Krause report, Class Representative timely served a rebuttal report from expert, Barbara Ley, to account for the late-produced suspense history data and Krause's incomplete "preliminary" opinions as to the potential application of the 6% interest rate. However, this did not magically shift the burden the Class Representative, as Sunoco Claims. *See* Response at 14. Rather, the Ley rebuttal report demonstrates that even *if* Sunoco were capable of carrying its burden—which it is not—the damages calculation can be adjusted to account for any ***proven*** marketable title issues. Further, Ms. Ley's efforts to deal with the late-produced suspense history data—which Sunoco produced *after* her expert report was due—does not cure the harm caused by the late-production, the incompleteness of the original Krause reports, or the material changes in the "supplemental" report.

### D. The Court Should Also Exclude the Exhibits on Sunoco's New Exhibit List

Relatedly, the Court should also strike Sunoco's untimely Amended Proposed Exhibit List (Dkt. No. 229). The Court's Pretrial Order, in effect since August 5, 2019, states that "defendant shall file a list of exhibits by **November 16, 2019**." Dkt. No. 102 at ¶8 (emphasis in original). The Pretrial Order further states that "any exhibit not listed pursuant to this paragraph will not be admitted into evidence." *Id.* On December 9, 2019, Sunoco added the following three exhibits to its list:

| DX-307 | | | Expert Report of Kraettli Epperson with exhibits (11-1-2019) |
| DX-308 | | | Expert Report of Eric Krause (11-1-2019) with exhibits |
| DX-309 | | | Supplemental Expert Report of Eric Krause (12-2-2019) with exhibits |

Dkt. No. 229-1 at 18. Because Sunoco failed to list these exhibits by November 16, 2019, they must be excluded under the Pretrial Order's clear instruction.

While any alleged "good cause" for Sunoco's late submission is irrelevant, none exists here. As an initial matter, Sunoco objected to Class Representative's expert reports and the exhibits thereto as hearsay. *See* Dkt. No. 191. Even so, Mr. Epperson's and Mr. Krause's November 1, 2019 reports were completed more than two weeks before the deadline for submitting proposed exhibits. Sunoco could have listed them on time, it simply didn't. Likewise, the only reason Mr. Krause's December 2, 2019 report wasn't completed prior to the deadline to file proposed exhibits was because Sunoco withheld the documents Mr. Krause needed to do so. Dkt. No. 207 at 3-4. Sunoco's failure to comply with the Court's expert report deadline is not an excuse for its failure to comply with the proposed exhibit deadline. There is simply no reason for the Court to deviate from its clear instruction that untimely exhibits will not be admitted into evidence.

Respectfully submitted,

*/s/ Bradley E. Beckworth*

Bradley E. Beckworth, OBA No. 19982
Jeffrey Angelovich, OBA No. 19981
Andrew G. Pate, TX Bar No. 24079111
Trey Duck, OBA No. 33347
**NIX PATTERSON, LLP**
3600 North Capital of Texas Highway
Suite 350, Building B
Austin Texas, 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
*bbeckworth@nixlaw.com*
*jangelovich@nixlaw.com*
*dpate@nixlaw.com*
*tduck@nixlaw.com*

Susan Whatley, OBA No. 30960
**NIX PATTERSON, LLP**
P.O. Box 178
Linden, Texas 75563
Telephone: (903) 215-8310
*swhatley@nixlaw.com*

Patrick M. Ryan, OBA No. 7864
Phillip G. Whaley, OBA No. 13371
Jason A. Ryan, OBA No. 18824
Paula M. Jantzen, OBA No. 20464
**RYAN WHALEY COLDIRON JANTZEN PETERS & WEBBER PLLC**
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK  73102
Telephone: (405) 239-6040
Facsimile:  (405) 239-6766
*pryan@ryanwhaley.com*
*pwhaley@ryanwhaley.com*
*jryan@ryanwhaley.com*
*pjantzen@ryanwhaley.com*


Michael Burrage, OBA No. 1350
**WHITTEN BURRAGE**
1215 Classen Dr.

11

Oklahoma City, OK 73103
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
*mburrage@whittenburragelaw.com*

Robert N. Barnes, OBA No. 537
Patranell Lewis, OBA No. 12279
Emily Nash Kitch, OBA No. 22244
**BARNES & LEWIS, LLP**
208 N.W. 60th Street
Oklahoma City, OK  73118
Telephone:  (405) 843-0363
Facsimile:  (405) 843-0790
*rbarnes@barneslewis.com*
*plewis@barneslewis.com*
*ekitch@barneslewis.com*

Lawrence R. Murphy, Jr.,
OBA No. 17681
**SMOLEN LAW**
611 S. Detroit Ave.
Tulsa, Oklahoma 74120
*larry@smolen.law*

**CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send email notification of such filing to all registered parties.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: December 10, 2019.               */s/ Bradley E. Beckworth*