IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PERRY CLINE, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 6:17-cv-313-JAG |
| SUNOCO, INC. (R&M); and SUNOCO PARTNERS MARKETING & TERMINALS, L.P., | ) ) ) ) | |
| Defendants. | ) ) | |

## SUNOCO DEFENDANTS' MOTION FOR NEW TRIAL AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... IV

ARGUMENT ........................................................................................................... 1

I.     Sunoco files this motion out of an abundance of caution, in the event the Tenth Circuit rules that this Court's Judgment Order is a final, appealable judgment. ................................................................................................ 1

II.    The Court should order a new trial because, under the circumstances here, Sunoco did not have a fair trial, and the only way to prevent an injustice is to order a new trial and decertify the class. ........................................................ 4

     A.    The procedural facts leading up to the post-trial ruling on burden of proof contributed to the unfairness of this trial. .................................. 5

     B.    The Court's post-trial opinion imposed on Sunoco—for the first time—the burden of proof to show which class members had unmarketable title ................................................................................ 9

     C.    The Court should order a new trial and should limit that trial to the claims belonging to Perry Cline because the Court should decertify the class. ............................................................................................. 11

     D.    The trial revealed that other class-certification requirements are not satisfied. ............................................................................................ 13

     E.    A new trial is required because the Court's post-trial allocation of the burden of proof to Sunoco violated Sunoco's Due Process rights. .............................................................................................. 15

III.   A new trial is required because the Court erroneously assigned, to Sunoco, the burden of proof to show whether each class member, as an individual plaintiff, had marketable title, and thus to show which interest rate applies to each. .......................................................................................................... 16

     A.    Under Tulsa Energy, Plaintiffs, rather than Sunoco, bear the burden of proof on the marketable-title issue. ........................................ 17

     B.    Plaintiffs are suing Sunoco under PRSA Subsection "E," so the Court should have analyzed Subsection "E"—rather than Subsection "D"—to determine the elements of Plaintiffs' claim. ........... 18

     C.    Plaintiffs bear the burden of proof on their claim for statutory interest under Subsection "E"—including the burden to establish, as an element of their claim, the "interest as provided in subsection D." ...................................................................................................... 18

D.      To establish the "interest as provided in subsection D," Plaintiffs
        had the burden of proof to show whether their title was marketable
        at the time payment of proceeds was delayed................................... 19

IV.     The punitive damages award is excessive under the U.S. Constitution.............. 20

A.      On reprehensibility, the harm here is economic (not physical). ............. 21

B.      The ratio of compensatory to punitive damages is
        unconstitutionally high........................................................... 23

C.      The damages award exceeds any civil or criminal penalties for
        comparable misconduct. ........................................................ 25

PRAYER................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Albertson's, Inc. v. Amalgamated Sugar Co.*,
  503 F.2d 459 (10th Cir. 1974) .................................................. 14

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ............................................................ 21

*Bosche v. Lear Petroleum Expl., Inc.*,
  816 F.2d 1460 (10th Cir. 1987) ................................................ 16

*Brown v. Electrolux Home Prod., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ................................................ 12

*Burke v. Regalado*,
  935 F.3d 960 (10th Cir. 2019) ............................................. 23, 24

*Chandler-Frates & Reitz v. Kostich*,
  1981 OK 74, 630 P.2d 1287, 1289 ............................................... 25

*Cimino v. Raymark Industries, Inc.*,
  151 F.3d 297 (5th Cir. 1998) .................................................. 16

*Cline v. Sunoco, Inc. (R&M)*,
  2019 WL 6720206 (Dec. 10, 2019) .............................................. 24

*Cont'l Trend Res., Inc. v. OXY USA Inc.*,
  101 F.3d 634 (10th Cir. 1996) ......................................... 21, 23, 24

*Cook v. Rockwell International Corp.*,
  618 F.3d 1127 (10th Cir. 2010) ............................................. 2, 4

*E.E.O.C. v. Fed. Express Corp.*,
  513 F.3d 360 (4th Cir. 2008) .................................................. 21

*F.D.I.C. v. Hamilton*,
  122 F.3d 854 (10th Cir. 1997) ................................................. 24

*Floyd v. Laws*,
  929 F.2d 1390 (9th Cir. 1991) ................................................. 1

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) .................................................. 16

*In re Tulsa Energy, Inc.*,
  111 F.3d 88 (10th Cir. 1997) .................................................. 17

*Johansen v. Combustion Eng'g, Inc.*,
   170 F.3d 1320 (11th Cir. 1999) ........................................................ 21

*Krakauer v. Dish Network, L.L.C.*,
   925 F.3d 643 (4th Cir. 2019) ............................................................ 3

*Landon v. Plasencia*,
   459 U.S. 21 (1982) ........................................................................ 16

*Lindsey v. Normet*,
   405 U.S. 56 (1972) ........................................................................ 16

*Lompe v. Sunridge Partners, LLC*,
   818 F.3d 1041 (10th Cir. 2016) ........................................................ 25

*Montgomery Ward & Co. v. Duncan*,
   311 U.S. 243 (1940) ........................................................................ 4

*Okland Oil Co. v. Conoco Inc.*,
   144 F.3d 1308 (10th Cir. 1998) ........................................................ 24

*Parsons v. Dist. Court of Pushmataha Cty.*,
   408 P.3d 586 (Okla. 2017) .............................................................. 19

*Pioneer Ctrs. Holding Co. v. Alerus Fin., N.A.*,
   858 F.3d 1324 (10th Cir. 2017) ........................................................ 19

*Richardson v. Oldham*,
   12 F.3d 1373 (5th Cir. 1994) ............................................................ 1

*S.W. Oklahoma Dev. Auth. v. Sullivan Engine Works, Inc.*,
   1996 OK 9. 910 P.2d 1052, 1056-57 .................................................. 22

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ........................................................................ 14

*Sherrill v. Royal Indus.*,
   526 F.2d 507 (8th Cir. 1975) ............................................................ 1

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ........................................................................ 21

*Stirman v. Exxon Corp.*,
   280 F.3d 554 (5th Cir. 2002) ............................................................ 15

*Strey v. Hunt International Resources Corp.*,
   696 F.2d 87 (10th Cir. 1982) ........................................................ 2, 4

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) ............................................................................. 3, 4, 12

*United States v. Intermountain Furniture Mfg. Co.,*
    363 F.2d 554 (10th Cir. 1966) ............................................................................. 16

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.,*
    725 F.3d 1213 (10th Cir. 2013) ............................................................................. 14

*Walney v. SWEPI LP,*
    CV 13-102, 2019 WL 1436938 (W.D. Pa. Mar. 31, 2019) ...................................... 12

*Whiteside v. Gill,*
    580 F.2d 134 (5th Cir. 1978) ............................................................................. 16

*Wilhelm v. Blue Bell, Inc.,*
    773 F.2d 1429 (4th Cir. 1985) ............................................................................. 4

**Statutes**
Okla. Stat. tit. 15, § 266 ............................................................................. 25

Okla. Stat. tit. 23, § 6 ............................................................................. 25

Okla. Stat. tit. 52, § 570.10 ............................................................................. passim

**Other Authorities**
Wright & Miller, Federal *Practice* & Procedure § 2805 ............................................... 4

Wright & Miller, *Federal Practice & Procedure* § 2818 .............................................. 1

**Rules**
Fed. R. Civ. P. 23 ............................................................................. passim

Fed. R. Civ. P. 59(b) ............................................................................. 1, 4

**Constitutional Provisions**
U.S. Const. amend. V ............................................................................. 20

U.S. Const. amend. VIII ............................................................................. 20

U.S. Const. amend. XIV ............................................................................. 20

## ARGUMENT

"As a general rule of federal practice, any question which has been presented to a federal district court for a ruling and which has not thereafter been waived or withdrawn is preserved for review" and "need not be raised again on a motion for a new trial to preserve it for review." *Floyd v. Laws*, 929 F.2d 1390, 1400-01 (9th Cir. 1991); *accord Richardson v. Oldham*, 12 F.3d 1373, 1377 (5th Cir. 1994); *Sherrill v. Royal Indus.*, 526 F.2d 507, 509 n.2 (8th Cir. 1975); Wright & Miller, *Federal Practice & Procedure* § 2818 (3d ed. 2006). Thus, Sunoco files this motion for new trial subject to, and without waiving, any issues previously raised and ruled upon (or to be ruled upon) by this Court.[1]

**I.     Sunoco files this motion out of an abundance of caution, in the event the Tenth Circuit rules that this Court's Judgment Order is a final, appealable judgment.**

On August 27, 2020, this Court entered its Judgment Order in this case. Dkt. No. 308. The Judgment Order states in relevant part:

> [P]ursuant to Federal Rule of Civil Procedure 58, the Court ENTERS JUDGMENT against the defendants as to Count One. The Court AWARDS damages in the amount of $80,691,486.00 in actual damages and $75,000,000.00 in punitive damages.

*Id.* Assuming the Judgment Order is a final, appealable judgment, Sunoco's Motion for new trial is due September 24, 2020. Fed. R. Civ. P. 59(b).

---

[1] Those issues include, but are not limited to, the points raised in Defendants' Response to Plaintiff's Motion to Certify Class (Dkt. 105), Defendants' Response to Class Representative's Motion for Partial Summary Judgment (Dkt. 160), Defendants' Motion to Clarify That Class Definition Does Not Include Escheat Payments to States, or Alternatively to Decertify Class or Exclude Escheat Payments From Class, and Brief in Support (Dkt. 172), Defendants' Pretrial Brief on Standing, Ripeness and Prohibitions Against "Fluid" Recovery of Damages (Dkt. 222), Defendants' Pretrial Brief Regarding Plaintiff's Claims on Behalf of Owners of Unclaimed Proceeds Paid to the States (Dkt. 223), Defendants' Post-Trial Brief (Dkt. 274), Defendants' Amended Proposed Findings of Fact and Conclusions of Law (Dkt. 275), all arguments that Sunoco raised at the trial of this case and at the closing argument held June 17, 2020, and any and all other arguments that Sunoco raised before, during, or after trial.

But the Tenth Circuit has questioned whether the Judgment Order is, in fact, a final appealable judgment.  After Sunoco filed its notice of appeal from the Judgment Order, the Tenth Circuit, on September 18, 2020, issued an Order (1) questioning whether the Judgment Order is a final, appealable judgment; (2) suspending the appellate briefing schedule; and (3) directing Sunoco to file, in the Tenth Circuit, a memorandum brief addressing whether the Judgment Order is a final, appealable judgment.

The finality question arises from the fact that this Court has not yet:

- adopted a plan for allocating damages among class members, or

- provided directions for disposing of any funds that, under the plan of allocation, go unclaimed after distributions are made.

In *Strey v. Hunt International Resources Corp.*, 696 F.2d 87, 88 (10th Cir. 1982), the Tenth Circuit held that a class-action judgment was <u>not</u> final because that judgment "award[ed] damages in favor of the plaintiff class" but did not "provide for the division of damages among the class members [or] the disposition of any funds that go unclaimed by class members."  *Id.*  The Court explained that the judgment would not be final "until the district court establishes both the formula that will determine the division of damages among class members and the principles that will guide the disposition of any unclaimed funds."  *Id.*

And in *Cook v. Rockwell International Corp.*, 618 F.3d 1127, 1137–38 (10th Cir. 2010), the Tenth Circuit applied the principles of *Strey*—although in *Cook*, the Court ended up holding that the judgment was final.  Like the judgment in *Strey*, the District Court's judgment in *Cook* recited "the total damages" but did not "distribute the aggregate class award among individual members."  *Id.* But unlike the judgment in *Strey*, the judgment in *Cook* "attached a Plan of

Allocation," which provided "a thorough framework for determining each individual class member's damages." *Id.*

In *Cook*, the Tenth Circuit held that the judgment was final and appealable *because the district court's Plan of Allocation provided* "for the appointment of a claims administrator, who is directed to determine the proper allocation of damages based on specific data," and "for the distribution of any unclaimed funds," and any challenges to the allocation of damages "would not affect the total damages owed by Defendants, which are clearly identified in the judgment." *Id.* Here, this Court has not yet entered such a plan of allocation.

*Strey* and *Cook* appear to be good law in the Tenth Circuit even though, in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1050 (2016), the Supreme Court exercised appellate jurisdiction where the District Court had not adopted a plan for allocating damages among class members.  In *Tyson Foods*, the Supreme Court did not expressly address finality of the judgment, but nevertheless exercised appellate jurisdiction where the judgment

(1)   stated a total amount of damages awarded to a plaintiff class, but

(2)   did not provide how the damages would be allocated among class members.

*Id.*  The petitioner challenged the judgment on grounds that "it will not be possible to know which [class members] are entitled to share in the award." *Id.*  The Court rejected that argument as "premature" because "the damages award has not yet been disbursed, nor does the record indicate how it will be disbursed." *Id.*  The Court held that the petitioner "may raise a challenge to the proposed method of allocation when the case returns to the District Court for disbursal of the award." *Id.*

Three years later, the Fourth Circuit relied on *Tyson* in holding that a class-action judgment was final.  *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 651 n.1 (4th Cir. 2019).  The court

explained that the judgment "includes an aggregate damages award," and "[a]ll that remains at the district court are questions as to distribution of the damages award that can be resolved expeditiously and easily via a claims process."  *Id.*

The Tenth Circuit has not yet had an opportunity to consider (1) what effect, if any, *Tyson Foods* has on the holdings of *Strey* and *Cook*; or (2) whether the holdings of *Strey* and *Cook* should be revisited in light of *Tyson Foods*.  However, under current Tenth Circuit law, *Strey* and *Cook* would indicate that the Judgment Order is not a final, appealable judgment.

Nevertheless, given the possibility that the Tenth Circuit may hold the Judgment Order to be a final judgment, Sunoco's post-judgment motions would be due within 28 days after entry of the Judgment Order.  Fed. R. Civ. P. 59(b).  Therefore, Sunoco files this Motion for New Trial within 28 days after entry of the Judgment Order.  If the Tenth Circuit rules that the Judgment Order is not final, then Sunoco reserves its right to file post-judgment motions—including a subsequent Motion for New Trial—once final judgment is entered.  And Sunoco reserves its right, in such additional post-judgment motions, to assert, among other complaints/objections, challenges to the plan for allocating damages that this Court ultimately adopts.

## II.   The Court should order a new trial because, under the circumstances here, Sunoco did not have a fair trial, and the only way to prevent an injustice is to order a new trial and decertify the class.

If necessary "to prevent injustice,'" "the district court ha[s] a duty to order a new trial." *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1433 (4th Cir. 1985) (quoting 11 Wright & Miller, *Federal Practice & Procedure* § 2805 at 38 (1973)); *Pitts v. Electro-Static Finishing, Inc.*, 607 F.2d 799, 804 (8th Cir. 1979).  A new trial must also be ordered if "the trial was not fair." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940); 11 Fed. Prac. & Proc. Civ. § 2805. "Any error of law, if prejudicial, is a good ground for a new trial."  Mary Kay Kane, 11 Fed. Prac. & Proc. §2805.  Here, the trial was not fair, and a new trial is required to prevent injustice, because

the Court held—for the first time *post-trial*—that Sunoco, *at trial*, bore the burden of proof to show which class members had unmarketable title (and thus were entitled to interest at 6%, as opposed to 12%).

      **A.**    **The procedural facts leading up to the post-trial ruling on burden of proof contributed to the unfairness of this trial.**

          **1.**    **To certify the class, the Court held that (a) individualized marketable-title issues would not predominate because (b) Plaintiffs' damages expert, Ms. Ley, would resolve those issues on a class-wide basis using Sunoco's suspense codes.**

As the Court is aware, the Production Revenue Standards Act ("PRSA") provides:

- interest on late-paid proceeds accrues at 6% if the proceeds were late because the owner had an unmarketable title, and

- interest accrues at 12% if the proceeds were late for some other reason.

Okla. Stat. tit. 52, § 570.10(D).  At class-certification stage, Sunoco informed the Court that Rule 23(3)(b)'s predominance requirement is not satisfied here because the Court would need to make an "individualized determination," for each class member, to decide whether that class member had marketable or unmarketable title. Dkt. 105 at 23-24.[2]  Sunoco acknowledged that its computer system contains "suspense codes" reflecting, to some extent, Sunoco's reason for delaying a payment of proceeds, but Sunoco explained that those "codes" are "too general" to show definitively which class members had unmarketable title.  Dkt. 105 at 24.

---

    [2] In fact, to decide the 6%-versus-12%-interest issue, it would be necessary to determine whether the class member had marketable title *at each point in time* during the period in which the proceeds were late paid.  For example, if, for a particular class member, proceeds were paid a year late, for part of that year, the class member's title may have been <u>un</u>marketable, and for another part of that year, that title may have been marketable.  Thus, the marketable-title issue is not a singular determination for each class member, but rather must be determined for the entire relevant time period for each class member.

In response, Plaintiffs said that Sunoco's suspense codes could in fact be used at trial to resolve the marketable-title issues on a class-wide basis. Dkt. 114 at 8-9. Plaintiffs described Sunoco's codes as "elaborate" and said the "Court [] can rely on [those codes] to understand the reason why an owner's funds were held in suspense." *Id.* Of course, Sunoco disagreed with Plaintiffs' position concerning Sunoco's suspense codes. Dkt. 105 at 24. But Plaintiffs' damages expert Barbara Ley testified, *in her pre-trial deposition*, that her methodology would enable her to determine, in a formulaic way, which class members had marketable title and which class members had unmarketable title. Tr. at 616-18. (But, at trial, as explained below, Ms. Ley said the opposite.) Moreover, Plaintiffs had elected to forego pre-trial discovery of the 33,000 Sunoco division order files that could be analyzed individually to determine whether delayed payments of proceeds were due to unmarketable title. *See* Hearing Transcript on plaintiff's motion to compel, October 5, 2018, Dkt. 185, at 30, 43-44, 52-53 (The Court to plaintiffs' counsel: "Why aren't you asking for all or some sampling of the division order files?....And they offered it to you, as a way to resolve some of these disputes, and you have turned them down on that.").

In certifying the class, this Court agreed with Plaintiffs that individualized, marketable-title issues would not predominate at the trial because Ms. Ley would determine marketable-title issues on a class-wide, formulaic basis, rather than on a basis individualized for each class member. Dkt. 126 at 13. While acknowledging Sunoco's position (*i.e.*, that Sunoco's suspense codes do not show which class members had marketable title), the Court nevertheless credited Ley's contention that she would "identify marketable title issues using Sunoco's [suspense] codes." Dkt. 126 at 13. Thus, in certifying the class, the Court observed that "Sunoco points to a number of individual questions that the Court must consider to decide liability and to calculate damages," but the Court "d[id] not find them persuasive." Dkt. 126 at 13. The Court held:

> [T]he Court [] accepts [Plaintiffs' damages expert's] Ley's methodology for [] calculating damages. Ley has [] explained the **method by which she intends to identify marketable title issues** using Sunoco's codes, *even if Sunoco contends its own coding system is unreliable for these purposes.*

*Id.* (emphases added).

Accordingly, the Court certified this class based on the express assumption that (1) the marketable-title issues could be resolved without an individualized, time-consuming, class-member-by-class-member analysis because (2) Plaintiffs' damages expert Ley "intends to identify marketable title issues using Sunoco's codes." *Id.*

> ## 2. The rapid schedule, from class certification to trial, confirmed that the Court intended to try the case without individualized, marketable-title evidence for each of the 53,000 class members.

The Court's pre-trial scheduling order (Dkt. 102) was consistent with the Court's view that the case would be tried without individualized, marketable-title evidence.  The case proceeded as follows:

- **October 3, 2020**—the Court certified the class.  Dkt. 126.

- **October 18, 2020**—discovery cut-off.  Dkt. 102.

- **November 16, 2020**—Defendants' trial witnesses, trial exhibits, and deposition designation deadline.  Dkt. 102.

- **November 26, 2020**—the Court ruled on Sunoco's motion to clarify the class definition.  Dkt. 186.

- **December 9, 2020**—class opt-out deadline.

- **December 10, 2020**—the Court ruled on Plaintiffs' Motion for Partial Summary Judgment.  Dkt. 231.

- **December 16, 2020**—the trial on the merits began.

Under the Court's schedule, the parties had less than ten weeks, post-certification, to prepare for a merits trial in a class action with 53,000 class members. While such a ten-week schedule was presumably adequate for Ms. Ley to make her promised, formulaic, class-wide, marketable-title determinations (as the Court had indicated, pre-trial, that she would), that schedule plainly did not include time for the parties to develop individualized marketable-title evidence for each of the 53,000 class members—a process that would likely take a year or more to complete. Tr. at 235-36, 554; *see* n.2, *supra*. Defendants argued in their Pre-Trial Brief on Burden of Proof that Plaintiffs had the burden to prove marketable title during the period of delay for any late payments of proceeds. Dkt. 213.

### 3. The trial validated Sunoco's pre-trial position that Ms. Ley could <u>not</u> determine marketable-title issues on a formulaic, class-wide basis.

Just as Sunoco had predicted, at trial, Ms. Ley was unable to determine marketable-title issues on a formulaic, class-wide basis. Tr. at 617-18. After hearing the evidence, the Court found that Sunoco's suspense codes "do <u>not</u> give a determination that title is marketable or unmarketable." Dkt. 298 at 15, 30-31 & n.21 (emphasis added). Thus, to determine the 6%-versus-12%-interest issue, *someone* would need to analyze marketable-title issues individually, for each of the 53,000 class members. *Supra*, n.2.

The evidence, as well as the Court's statements on the record, reflected that it would take a year or more to develop that individualized evidence. Thus, the evidence showed that, leading up to trial, a three-person team studied a small sample of Sunoco's division order file records to determine whether Sunoco suspended payments due to unmarketable title. Tr. at 235-36, 554; Dkt. 230-2 ¶¶ 12-13. It took that team three weeks to identify Sunoco's reasons for suspending roughly *60* of the 53,000 class members. *Id.* As the Court observed: "I think everybody agrees that, if you're going to go and figure [] out [the marketable title issues] for each person, it's a fair

amount of work." Tr. at 958. Indeed, the Court predicted that it might take a "year" to do that analysis. Tr. at 629. Title expert Epperson gave uncontroverted testimony that Sunoco's suspense codes may provide some indication whether title was marketable or unmarketable, but a review of Sunoco's individual division order files and public records for each property and class member would be required to make a "definitively accurate determination of marketability or unmarketability." Tr. 718-19, 738, 744. Accordingly, the trial confirmed that an accurate adjudication of the 6%-versus-12%-interest issue for all 53,000 class members would require a lengthy and individualized analysis of each class member's claim(s).

**B.    The Court's post-trial opinion imposed on Sunoco—for the first time—the burden of proof to show which class members had unmarketable title.**

Once it became clear that an accurate resolution of the marketable-title issues would require individualized proof for each of the 53,000 class members, the Court should have decertified the class for a failure of Rule 23(b)(3)'s predominance requirement. But instead of decertifying the class, the Court retroactively held, for the first time *post-trial*, that, *at trial*, Sunoco bore the burden of proof to show which class members had unmarketable title.

In its Opinion, the Court states that Sunoco did not even try to carry that burden. Op.18. But, back at the class-certification stage, the Court had implied that Plaintiffs bore the burden of proof on the marketable-title issue. After all, the Court held, at class-certification stage, that Plaintiffs' damages expert Ms. Ley would identify marketable-title issues in a formulaic, class-wide manner using Sunoco's suspense codes. Dkt. 126 at 13. It was not until after the trial was over that the Court notified Sunoco, for the first time, that the Court was requiring Sunoco (rather than Plaintiffs) to bear the burden of proof on the marketable-title issue—even though this who-bore-the-burden-of-proof issue was repeatedly raised before trial. *See, e.g.*, Dkt. 114 at 8-9; Dkt. 113 at 12-13; Dkt. 118 at 7-9.

The Court's opinion indicates that if Sunoco's records had *already* reflected which class members had unmarketable title, then Sunoco could have presented marketable-title evidence in the form of a compilation or summary.  Op. 18. But it is undisputed that Sunoco's electronic records, including the suspense codes in Sunoco's accounting database, did *not* already reflect definitively which class members had unmarketable title at which time periods. *Supra*, n.2.  Nor should Sunoco be held liable for 12% interest to the entire, 53,000-member class because Sunoco's suspense codes did not permit Ms. Ley's promised formulaic, class-wide determination of the marketable-title issues.  There is no cause of action here against Sunoco for improper record-keeping, and the PRSA does not require Sunoco to maintain its records in any particular format.  The requirements for class certification imposed by Rule 23, Federal Rules of Civil Procedure, cannot be suspended as some sort of sanction against Sunoco for not keeping records in a format that would assist a plaintiff class in presenting a formulaic, class-wide case on the marketable-title issues.

At the end of the day, extensive individualized inquiries were required here to determine which class members had unmarketable title at which time periods, and thus to determine the 6%-versus-12%-interest issue for each of the 53,000 class members.  The need to adjudicate marketable-title issues on an individualized basis means this class should not have been certified and/or should have been decertified.  Fed. R. Civ. P. 23(b)(3).

In its Opinion, the Court states that Sunoco did not object to finishing trial a day early, and that Sunoco did not seek additional trial time to put on marketable-title defenses.  Op.18.  But Sunoco had no reason to request additional trial time.  Again, before trial, the Court had rejected Sunoco's position that individualized evidence would be required on the marketable-title issue, and the Court certified the class based on the Court's holding that Ms. Ley would resolve the

marketable-title issues in a formulaic, class-wide manner using Sunoco's suspense codes.  At trial, Sunoco amply proved that Ms. Ley could not do so.  Sunoco thus simultaneously (1) rebutted Plaintiffs' case for 12% interest and (2) established that the class was not certifiable.  *See* Fed. R. Civ. P. 23(b)(3).

Moreover, when Sunoco attempted, at trial, to adduce evidence to demonstrate that individualized evidence was necessary to prove why particular payments for particular class members were late, the Court cut off the presentation of evidence as to one exemplar class member, sustained an objection, and precluded Sunoco from presenting any "more [examples] like this," reasoning that Sunoco's presentation was "fairly cumulative."  Tr. at 278-80.  Even if Sunoco had been in a position to show, for each of the 53,000 class members, why each payment was late, the Court made clear that Sunoco was not permitted to do so.  Sunoco was not attempting, at trial, to put on individualized proof for each of the 53,000 class members; indeed, as shown above, when Sunoco tried to adduce such individualized proof, the Court cut off the presentation of evidence.

### C. The Court should order a new trial and should limit that trial to the claims belonging to Perry Cline because the Court should decertify the class.

A new trial cannot be in the form of a 53,000-person class action because the individualized, marketable-title issues would predominate and overwhelm the trial.  Fed. R. Civ. P. 23(b)(3).  But, if Sunoco bears the burden of proof on the marketable-title issue, then fairness requires that the class be decertified and a new trial be held so that Sunoco will have an opportunity to carry that burden as to the Plaintiff Perry Cline, or alternatively if the class is not decertified, to attempt to carry that burden as to all 53,000 members of the class.

This individualized analysis is necessary regardless of who bears the burden of proof on the marketable-title issue.  Thus, for purposes of class certification, the burden of proof is irrelevant because, for a correct adjudication of this case, someone—whether Plaintiffs or Sunoco—would

- 11 -

need to spend an enormous amount of time addressing these individualized marketable-title issues for each and every class member. *See Walney v. SWEPI LP*, CV 13-102, 2019 WL 1436938, at *8 (W.D. Pa. Mar. 31, 2019) ("Assuming arguendo that title defects are in the nature of an affirmative defense as to which SWEPI bears the burden of providing more 'concrete' or 'direct' proof, this merely proves SWEPI's argument that the 'predominance' requirement is no longer satisfied. Such proof could only come upon a more particularized examination of individual lease transactions, which is contrary to the point of class certification….). Such an individualized analysis is exactly what Rule 23(b)(3)'s predominance requirement prohibits.

Although "affirmative defenses peculiar to some individual class members" will not invariably defeat certification (*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)), class certification is improper if individualized analyses are required to adjudicate an "unusually important" affirmative defense (2 Newberg on Class Actions § 4:55 (5th ed.)). And here, the marketable-title issue is unusually important. That issue determines the applicable rate of interest (6% or 12%) for each of the 53,000 class members and, for each class member, requires a complex analysis of owner and well records over time. *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1241 (11th Cir. 2016) ("Individual affirmative defenses can defeat predominance" if "the affirmative defenses could apply to the vast majority of class members and raise complex, individual questions"). Moreover, this defense would substantially affect Plaintiffs' recovery— potentially by tens of millions of dollars—because it would determine whether a class member's interest accrues at 12% or 6% (or the prime rate after November 1, 2018). Thus, the class must be decertified, and a new trial should be limited to Perry Cline's individual claim. But even if the Court does not decertify the class, at a minimum, a new trial is required on the class's claims.

**D.      The trial revealed that other class-certification requirements are not satisfied.**

The trial revealed other reasons why Rule 23's class certification requirements are not satisfied.  In its pre-trial, class-certification briefing and at trial, Sunoco showed that individualized inquiries would be required to determine liability and damages for late payments on several issues,[3] including which payments are subject to the PRSA's so-called six-month grace period—where the PRSA allows up to six months to pay proceeds in a "first sale" from a well.  52 O.S. § 570.10.  Dkt. 105 at 31.  And at trial, Plaintiffs' damages expert Ms. Ley admitted that, for some sales of oil, the data given to her by Sunoco and the State of Oklahoma did not indicate whether the sale was a "first sale."  Tr. at 519-20.   Thus, to learn whether those sales were "first sales" (subject to the six-month grace period), Ms. Ley would have needed to do additional, individualized analyses. Those are the individualized issues that Sunoco, pre-trial, predicted would arise. Dkt. 105 at 23.

To avoid confronting the individualized, "first sale" issues that would have been fatal to class certification, Ms. Ley simply *assumed* that some sales were "first sales" and, thus, applied a six-month grace period as to those sales.  Tr. at 519-20.  But Ms. Ley's assumption separately precludes class certification because that assumption has the effect of prejudicing claims of absent class members.  After all, if the six-month grace period applies, and Sunoco paid proceeds within that grace period, then the plaintiff will have no recovery (because the payment will not be "untimely").  Thus, when Ms. Ley assumed that certain sales were "first sales" (and applied the six-month grace period), she necessarily precluded recovery for the class member involved.

---

[3] As noted above, by focusing on certain issues and objections in this Motion, Sunoco is not waiving, abandoning, or narrowing—but, instead, Sunoco continues to assert—all its previously raised objections and arguments (including objections and arguments to class certification), even if those objections and arguments are not restated in this Motion.  *Supra*, p.1 & n.1 (listing Sunoco's various filings, including filings containing Sunoco's class-certification objections).

However, if Ley had performed the claim-by-claim assessment necessary to determine whether these sales were *in fact* "first sales," she might have learned that some of these sales were not the first sale from a well, such that the absent class member should have had a valid claim.  In this way, Ms. Ley's application of the six-month grace period prejudices absent class members.  Rule 23 does not permit class certification where the class representative and class counsel will be forced arbitrarily to sacrifice the claims of absent class members.

The class action is simply a method for aggregating the individual claims held by each class member.  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010); *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013).  Thus, the class action "leaves the parties' legal rights and duties intact." *Shady Grove*, 559 U.S. at 408.  Rule 23 cannot be used to "abridge, enlarge or modify any substantive right."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011).

Due to Ms. Ley's arbitrary application of the six-month grace period, this class fails the commonality, predominance, adequacy, and typicality requirements of Rule 23.  To try this class action without abridging the claims of absent class members, Ms. Ley would have needed to do individualized inquiries to determine which sales were "first sales" subject to the six-month grace period (as well as the many other individualized issues identified by Sunoco in its opposition to class certification and motions to decertify).  As a result, Rule 23's commonality and predominance requirements are not satisfied.  And because Plaintiffs could avoid violaiting the commonality and predominance reuqirements only by arbitrarily sacrificing the claims of absent class members, Rule 23(a)'s adequacy and typicality requirements are not satisfied, either. *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 463 (10th Cir. 1974) ("a plaintiff cannot maintain a class action when his interests are antagonistic to, or in conflict with, the interests

of the persons he would seek to represent."); *see Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002) (class representative and counsel must pursue class members' claims with "zeal and competence").

The evidence at trial made clear that this Court erred as a matter of law, or abused its discretion, in certifying the class and in denying Sunoco's requests to decertify. As a result, the parties proceeded to a class-action trial that never should have occurred. At this post-trial juncture, the only way to put this case back on track is to decertify the class and order a new trial on Perry Cline's individual claim or, at the very least, order a new trial on the class's claims.

**E.     A new trial is required because the Court's post-trial allocation of the burden of proof to Sunoco violated Sunoco's Due Process rights.**

As noted above, the Court certified this class based on the express assumption that (1) the parties would not need to try the marketable-title issues on an individualized basis for each of the 53,000 class members because (2) Ms. Ley would resolve the marketable-title issues in a formulaic, class-wide manner using Sunoco's suspense codes. And the Court's pre-trial schedule was consistent with that holding, as that pre-trial schedule allowed time for Ms. Ley to do class-wide calculations but did not contain time for the parties to develop individualized marketable-title evidence for each of the 53,000 class members. Indeed, such a requirement—to develop such individualized evidence for 53,000 class members—would have been inconsistent with the class-certification requirements in Rule 23. *See, e.g.*, Fed. R. Civ. P. 23(b)(3). As a result, Sunoco had no realistic notice that it would bear the burden of proof on the marketable-title issue at trial, and Sunoco had no realistic opportunity to carry that burden.   The court even acknowledged at trial: "I did kind of put you on an accelerated schedule." Tr. 275.

Under these circumstances, the assignment of the burden of proof to Sunoco post-trial violated Sunoco's Due Process rights. Due Process demands "procedures [that] meet the essential

standard of fairness" (*Landon v. Plasencia*, 459 U.S. 21, 35 (1982)), including "an opportunity to present every available defense" (*Lindsey v. Normet*, 405 U.S. 56, 66 (1972)).  For all the reasons explained above, that standard was not achieved here.  A new trial is therefore required.

And for all the reasons explained above, such a new trial cannot proceed as a class action—consistent with class-certification requirements of Rule 23 and Due Process—but, instead, must be limited to the individual claim of Plaintiff Perry Cline.  *Supra*, p.2; *see Cimino v. Raymark Industries, Inc.,* 151 F.3d 297, 311 (5th Cir. 1998) (finding due process violation where district court's trial plan for class action did not allow individual determinations of liability and damages).  *Cf. In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996) (class-action defendant's due process rights were violated because court allowed no genuine opportunity for defendant to respond to complaint or class-certification motion).  The Court should decertify the class and order a new trial for plaintiff Perry Cline.  But even if the Court declines to decertify the class, the Court must order a new trial to give Sunoco a realistic opportunity to carry the burden of proof on the 6%-versus-12%-interest issue for the whole class.

## III.   A new trial is required because the Court erroneously assigned, to Sunoco, the burden of proof to show whether each class member, as an individual plaintiff, had marketable title, and thus to show which interest rate applies to each.

As explained above, the Court's post-trial determination of the burden-of-proof issue requires a new trial.  But separately, a new trial is required because the Court erred as a matter of law by allocating the burden of proof to Sunoco on the marketable-title issue.  *Bosche v. Lear Petroleum Expl., Inc.*, 816 F.2d 1460, 1464 (10th Cir. 1987); *United States v. Intermountain Furniture Mfg. Co.*, 363 F.2d 554, 557 (10th Cir. 1966); *Whiteside v. Gill*, 580 F.2d 134, 139 (5th Cir. 1978); Mary Kay Kane, 11 Fed. Prac. & Proc. §2805 ("Any error of law, if prejudicial, is a good ground for a new trial."); Op.28-30.  Plaintiffs, rather than Sunoco, bore the burden of proof to establish which interest rate applies to their claims, so Plaintiffs, rather than Sunoco, bore the

- 16 -

burden of proof to show that the class member had marketable title during the period of delay in payment of proceeds.  *Supra*, n.2.

This complaint is appropriate for a new trial motion given that the Court did not rule that Sunoco had the burden of proof on this marketable-title issue until after trial, even though the issue was raised before trial, and even though the Court's class certification ruling gave every indication that Plaintiffs had the burden of proof on this issue, with Plaintiffs to carry that burden through classwide evidence to be presented by Ms. Ley.  And when, post-trial, the Court did rule on the burden-of-proof issue, the Court erred as a matter of law in assigning that burden to Sunoco.

**A.    Under *Tulsa Energy*, Plaintiffs, rather than Sunoco, bear the burden of proof on the marketable-title issue.**

The Tenth Circuit has held that, under the PRSA, "[i]t is the interest owner's responsibility to establish marketable title so that he can receive proceeds." *In re Tulsa Energy, Inc.*, 111 F.3d 88, 90 (10th Cir. 1997) (emphasis added).   In its Opinion, this Court limits *Tulsa Energy*'s allocation of the burden of proof to situations where the owner is seeking to recover "proceeds." Op.29-30.  And because—according to this Court's analysis—Sunoco has already paid proceeds to the class members "in some fashion" (Op.29-30), the Court concludes that *Tulsa Energy* is not controlling on the 6%-versus-12%-interest issue here.  *Id.*

But under *Tulsa Energy*, the interest owner bears the burden of proof on marketable title because marketable title is an element of the plaintiff's claim.  *Tulsa Energy*, 111 F.3d at 90. Similarly, where, as here, the plaintiff seeks recovery of PRSA interest at 12%, rather than 6%, marketable title is an element of the plaintiff's claim because the plaintiff is not entitled to 12% PRSA interest unless the plaintiff had marketable title during the time when payment was delayed. As shown below, this Court's allocation, to Sunoco, of the burden of proof is grounded in a

misreading of the PRSA and a misapplication of Oklahoma law on the assignment of burdens. Op.29.

> **B.** **Plaintiffs are suing Sunoco under PRSA <u>Subsection "E,"</u> so the Court should have analyzed Subsection "E"—rather than <u>Subsection "D"</u>—to determine the elements of Plaintiffs' claim.**

In its Opinion, the Court allocates the burden of proof to Sunoco based on the Court's analysis of Subsection "D" of the PRSA. Op.29. But Plaintiffs are not suing Sunoco under Subsection "D," which identifies two interest rates but does not make Sunoco, or anyone else, <u>liable</u> for interest. Okla. Stat. tit. 52, §570.10(D). Instead, Plaintiffs are suing Sunoco under Subsection "E" of the PRSA because Subsection "E" is the provision that imposes "liability" on a "first purchaser" (like Sunoco) for statutory "interest." Subsection "E" of the PRSA states in relevant part:

> [A] first purchaser [] who fails to remit proceeds [] within the [PRSA's] time limitations [] shall be liable [] for interest as provided in subsection D of this section[.]

Okla. Stat. tit. 52, §570.10(E)(1). Accordingly, the elements of Plaintiffs' claims are found in Subsection "E" of the PRSA—not Subsection "D."

> **C.** **Plaintiffs bear the burden of proof on their claim for statutory interest under <u>Subsection "E"</u>—including the burden to establish, as an element of their claim, the "interest as provided in subsection D."**

As noted above, Subsection "E" of the PRSA makes a first purchaser liable for PRSA interest. Okla. Stat. tit. 52, §570.10(E)(1). Again, Subsection "E" states in relevant part:

> [A] first purchaser [] who fails to remit proceeds [] within the [PRSA's] time limitations [] shall be liable [] for *interest as provided in subsection D* of this section[.]

Okla. Stat. tit. 52, §570.10(E)(1) (emphasis added). Thus, Subsection "E" of the PRSA makes the first purchaser liable for "*interest as provided in subsection D*."

Nowhere does Subsection "E" indicate that the burden of proof on this element—to establish the "*interest as provided in subsection D*"—is somehow divided between the plaintiff, who is suing under Subsection "E," and the defendant.  Rather, reading Subsection "E" together with Oklahoma law on allocating the burden of proof, because Plaintiffs are seeking "judicial relief" under Subsection "E" of the PRSA, Plaintiffs bear the *entire* burden of proof to establish each element of their Subsection "E" claim—including the burden to establish the "interest as provided in subsection D" of the PRSA. *Parsons v. Dist. Court of Pushmataha Cty.*, 408 P.3d 586, 596 (Okla. 2017) (burden of proof on party who is seeking judicial relief); *Pioneer Ctrs. Holding Co. v. Alerus Fin., N.A.,* 858 F.3d 1324, 1335 (10th Cir. 2017) ("the ordinary default rule is that plaintiffs bear the risk of failing to prove their claims").

> **D.  To establish the "interest as provided in subsection D," Plaintiffs had the burden of proof to show whether their title was marketable at the time payment of proceeds was delayed.**

Subsection "E" of the PRSA imposes on Plaintiffs the burden of proof to establish the "interest as provided in subsection D"; and to establish the "interest as provided in subsection D," Plaintiffs must show which of the two interest rates in Subsection "D" applies to their claims. Those interest rates (12% and 6%) are provided in two numbered paragraphs within Subsection "D."  Paragraph 1 of Subsection "D" establishes the 12% rate as follows:

> 1. Except as otherwise provided in paragraph 2 of this subsection, where proceeds [] are not paid [within applicable time periods], that portion not timely paid shall earn interest at the rate of twelve percent (12%)[.]

Paragraph 1 begins by specifying that it applies "[e]xcept as otherwise provided in paragraph 2." Thus, to carry their burden of proof to establish the "interest as provided in subsection D," Plaintiffs must consult both of these two paragraphs.  And paragraph 2 explains that, if proceeds

were not paid because title was unmarketable, then the applicable interest rate is 6% (or the prime

rate after November 1, 2018):

> 2. [] Where such proceeds are not paid because the title thereto is not marketable, such proceeds shall earn interest at the rate of [] six percent (6%)[.]

Okla. Stat. tit. 52, § 570.10(D)(1)-(2).

Thus, Plaintiffs bore the burden of proof on the "marketable title" issue because:

- to prove their claim under subsection "E"—a claim for "liability" of the "first purchaser" (Sunoco) for "interest"—Plaintiffs had to establish the "interest as provided in subsection D";

- to show the "interest as provided in subsection D," Plaintiffs had to show which paragraph in subsection "D" applies (paragraph 1 or paragraph 2); and, finally

- to show which of those two paragraphs applies, Plaintiffs had the burden to show whether they had marketable title during the time when payment of proceeds was delayed.  Okla. Stat. tit. 52, § 570.10(D).

The Court erred in holding that the 6%-versus-12%-interest issue is an affirmative defense and, as

a result, the Court erred in allocating the burden of proof on that 6%-versus-12%-interest issue to

Sunoco.  Because, as explained above, the 6%-versus-12% issue requires extensive individualized

evidence, the Court should decertify the class and order a new trial for class representative Perry

Cline.  But even if the Court does not decertify the class, the erroneous allocation of the burden of

proof to Sunoco requires a new trial.

## IV.    The punitive damages award is excessive under the U.S. Constitution.

The U.S. Constitution bars deprivations of property without due process of law and also

bars excessive fines.  U.S. Const. amends. V, VIII, XIV.  Federal courts have an "obligation" and

"mandatory duty" to correct a punitive damages award that is excessive under the U.S. Constitution. *E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 376 (4th Cir. 2008); *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999). To do so, the Court may suggest a remittitur (*Cont'l Trend Res., Inc. v. OXY USA Inc.*, 101 F.3d 634, 643 (10th Cir. 1996)), or reform the award (*Johansen*, 170 F.3d at 1331-32).

The Supreme Court has established three guideposts for deciding whether an award is constitutionally excessive. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996).

- "The **first** and perhaps the most important guidepost is the <u>degree of reprehensibility</u> of the defendant's conduct."

- "The **second** and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is [the] <u>ratio [of punitive damages] to the actual harm</u> inflicted on the plaintiff."

- "The **third** guidepost is a <u>comparison of the punitive damages award with the civil or criminal penalties</u> that could be imposed for comparable misconduct."

*Cont'l Trend Res., Inc. v. OXY USA Inc.*, 101 F.3d 634, 636 (10th Cir. 1996) (alterations and quotation marks omitted; emphasis added). Each guidepost is addressed below.

### A.   On <u>reprehensibility, the harm here is economic (not physical).</u>

For reprehensibility, courts ask whether the harm was "physical as opposed to economic," and whether it impacted "the health or safety of others." *State Farm*, 538 U.S. at 419. Here, the alleged harm was purely economic because Sunoco failed to pay money (statutory interest). Such a "[p]urely economic harm may warrant less punishment than harm to the health or safety of individuals." *Cont'l Trend Res.*, 101 F.3d at 638.

Courts also examine whether "the target of the conduct had financial vulnerability." *State Farm*, 538 U.S. at 419. Here, the plaintiff class is dominated by large payees, such as producers, working interest owners, and very large royalty owners. Dkt. 105, Ex. C ¶¶6, 14, Ex. D ¶¶ 31, 61

n.43.  The top 4% of the class sought 75% of the damages, and the top 10% of the class sought 90% of the damages.  Dkt. 105, Ex. D ¶¶31, 61 n.43.  The overwhelming majority of this harm was felt by large, sophisticated parties, rather than financially vulnerable individuals.  Even for individual royalty owners not paid interest, the interest represented a small fraction of the oil royalties received from Sunoco for the proceeds of oil sales.

Finally, courts consider whether the defendant "repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful."  *Cont'l Trend Res.*, 101 F.3d at 638.  Here, it is undisputed that Sunoco—in paying statutory interest primarily on demand—acted on advice of counsel that was consistent with the industry practices.  Tr. at 84, 230-34.  There was no evidence that anyone at Sunoco (or the industry as a whole) thought this practice violated the law. Moreover, Sunoco had a reasonable, good faith legal basis for interpreting the PRSA as not requiring interest to be paid contemporaneously with the late payment of proceeds, as the statutory language does not specifically require a holder to *pay* interest, sets no time for the *payment* of interest (as opposed to the payment of proceeds), and merely states that a first purchaser "shall be liable" for interest. Okla. Stat. tit. 52, Sec. 570.10(E)(1); *See* Sunoco's Response to Plaintiff's Motion for Partial Summary Judgment, Dkt. 160. The Oklahoma Supreme Court has interpreted "is liable" language in a statute to mean a party is subject to suit for its action, in which the legal process will determine liability, not that it is obligated to determine its own liability and pay it automatically. *S.W. Oklahoma Dev. Auth. v. Sullivan Engine Works, Inc.,* 1996 OK 9. 910 P.2d 1052, 1056-57 ("We find the phrase "is liable" denotes that if the seller committed the specific acts of fraud or misinformation, an action for damages may be instituted against the seller for the violation."). It was not until 6 days before trial that this court made a definitive ruling that interest must be paid

with late proceeds, granting the plaintiff's motion for summary judgment. Opinion, Dkt. 231, December 10, 2019.

Finally, roughly 2/3 of the damages represent interest on oil proceeds, where Sunoco paid such oil proceeds to state unclaimed property funds because Sunoco could not identify or locate the owner or the owner did not claim the funds from Sunoco.  Tr. at 904-05.  Sunoco did not "know[] or suspect[] that it was unlawful" to fail to pay owners who could not be identified or located, or to fail to pay PRSA interest to the 50 states, none of which required such interest to be paid under their statutes.  Sunoco's conduct was not reprehensible under the Supreme Court's standards.

**B.    The <u>ratio</u> of compensatory to punitive damages is unconstitutionally high.**

A "punitive [damages] award more than four times the compensatory [damages is] close to the line" of what the Constitution permits.  *Cont'l Trend Res.*, 101 F.3d at 639.  "[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process." *Burke v. Regalado*, 935 F.3d 960, 1038 (10th Cir. 2019).

Here, an award of **1%** interest would fully compensate the class.  After all, the harm here— the inability to use the interest on oil proceeds that Sunoco paid late—could be redressed by an award of interest at market rates, and the average annualized interest rates for risk-free investments between 2012 and 2019 was approximately **1%** or less.[4]  Nevertheless, this Court awarded actual

---

[4]    https://fred.stlouisfed.org/series/MMNRNJ;   https://fred.stlouisfed.org/series/SAVNRNJ; https://fred.stlouisfed.org/series/DGS3MO; https://fred.stlouisfed.org/series/DGS1; https://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yieldYear&year=2020.  Sunoco asks the Court to take judicial notice of these rates, as they are provided by the Federal Reserve or Treasury Department and cannot reasonably be disputed. *See, e.g.*, *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1235 n.12 (11th Cir. 1999); *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 219 n.6 (D.C. Cir. 2018).  The average interest rates for 2012-2019 were .71% for 3-month Treasuries, .17% for 1-year Treasuries, .11% for money market accounts, and .07% for savings accounts.

damages of **12%** under Oklahoma's Production Revenue Standards Act ("PRSA"). The PRSA's 12% rate is intended not only to *compensate* for the loss of oil and gas proceeds but also to *compel* payment of those proceeds. *Cline v. Sunoco, Inc. (R&M)*, 2019 WL 6720206, at *6 (Dec. 10, 2019) (citing *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1320 (10th Cir. 1998)); Okla. Stat. tit. 52, §570.10(D)(2). The actual damages of **12%** interest is **12 times** higher than the **1%** interest that would fully compensate the class for its actual losses for not receiving interest at the time the proceeds were paid.

The Court separately awarded punitive damages of $75 million, "an amount approximately equal to the class' actual damages." Dkt. 298 at 47. Taken together, this damages award—(a) the 12% interest combined with (b) the punitive damages—is **24 times** larger than the amount that would fully compensate the plaintiffs for their loss.

To illustrate this point, assume Sunoco is one year late in paying $100 in proceeds. The class member would be fully compensated by 1% interest, which is $1. Applying the PRSA's 12% rate would result in a payment of $12, which is 12 times higher than the $1 that would provide full compensation for loss of use of money. Adding an equivalent amount of punitive damages (an *additional* $12) would result in a total award of $24, which is 24 times higher than the $1 that would provide full compensation.

The Due Process Clause does not tolerate this 24:1 ratio between damages awarded to coerce or punish the defendant, on the one hand, and damages awarded to compensate the plaintiff, on the other. *See Cont'l Trend Res.*, 101 F.3d at 639 (an award "four times the compensatory [damages]" is "close to the line"); *Burke*, 935 F.3d at 1038 ("[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process."); *F.D.I.C. v. Hamilton*, 122 F.3d 854, 861 (10th Cir. 1997) ("The ratio between the punitive and actual damages

- 24 -

awards, which is approximately 27:1, is unconstitutionally excessive."). Such a ratio is especially intolerable where, as here, "compensatory damages are substantial." *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1068 (10th Cir. 2016). (Assuming an award of 1% interest would fully compensate the class, such a "compensatory" portion of the damages award still amounts to millions of dollars.)

      C.    **The damages award exceeds any civil or criminal penalties for comparable misconduct.**

Apart from the statutes applied here, Sunoco has not identified any statute that imposes a penalty—either civil or criminal—for making payments late or only on request. Under Oklahoma law, the default legal rate of interest is 6%. 15 O.S. §266; 23 O.S. §6; *Chandler-Frates & Reitz v. Kostich*, 1981 OK 74, 630 P.2d 1287, 1289. By awarding interest at 12%, and then effectively doubling that award under the punitive damages statute, the Court's damages greatly exceed what would be awarded by applying the default legal rate of interest in Oklahoma.

PRAYER

Defendants Sunoco, Inc. (R&M) and Sunoco Partners Marketing & Terminals, L.P., pray that the Court decertify the class and grant a new trial on Perry Cline's individual claims. In the alternative, Defendants Sunoco, Inc. (R&M) and Sunoco Partners Marketing & Terminals, L.P., pray that the Court grant a new trial on the class's claims. In the second alternative, due to the unconstitutionally excessive damages award, Sunoco prays that the Court suggest a remittitur, or order a reduction, of the damages to an amount that does not violate the Constitution.

Dated:  September 24, 2020

Mark D. Christiansen OBA # 1675
**EDINGER LEONARD & BLAKLEY PLLC**
6301 N. Western Avenue, Suite 250
Oklahoma City, OK 73118
Telephone: (405) 702-9900
Fax:  (405) 605-8381
mchristiansen@elbattorneys.com

R. Paul Yetter *(pro hac vice)*
pyetter@yettercoleman.com
Robert D. Woods *(pro hac vice)*
rwoods@yettercoleman.com
**YETTER COLEMAN LLP**
811 Main Street, Suite 4100
Houston, TX 77002
Telephone: (713) 632-8000
Fax: (713) 632-8002

*/s/ Daniel M. McClure*
Daniel M. McClure OBA # 20414
dan.mcclure@nortonrosefulbright.com
Matthew A. Dekovich (*pro hac vice*)
matt.dekovich@nortonrosefulbright.com
Mark T. Emery
mark.emery@nortonrosefulbright.com
Rebecca J. Cole (*pro hac vice*)
rebecca.cole@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone (713) 651-5151
Fax (713) 651-5246

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2020, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to all counsel of record, including the following:

Michael Burrage
WHITTEN BURRAGE
mburrage@whittenburragelaw.com

Bradley E. Beckworth
Jeffrey J. Angelovich
Lisa P. Baldwin
Andrew G. Pate
Trey Duck
Cody L. Hill
NIX PATTERSON, LLP
bbeckworth@nixlaw.com
jangelovich@npraustin.com
lbaldwin@nixlaw.com
dpate@nixlaw.com
tduck@nixlaw.com
codyhill@nixlaw.com
bchurchman@nixlaw.com

Susan R. Whatley
NIX PATTERSON, LLP.
swhatley@nixlaw.com

Patrick M. Ryan
Philip G. Whaley
Jason A. Ryan
Paula M. Jantzen
RYAN WHALEY COLDIRON JANTZEN
    PETERS & WEBBER PLLC
pryan@ryanwhaley.com
pwhaley@ryanwhaley.com
jryan@ryanwhaley.com
pjantzen@ryanwhaley.com

Lawrence R. Murphy, Jr.
LAWRENCE R. MURPHY, JR., P.C.
larrymurphy999@gmail.com

Robert N. Barnes
Patranell Lewis
Emily Nash Kitch
BARNES & LEWIS, LLP
208 NW 60th Street
Oklahoma City, OK 73118
rbarnes@barneslewis.com
plewis@barneslewis.com
ekitch@barneslewis.com

/s/ *Daniel M. McClure*
Daniel M. McClure