IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PERRY CLINE, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 6:17-cv-313-JAG |
| SUNOCO, INC. (R&M); and SUNOCO PARTNERS MARKETING & TERMINALS, L.P., | ) ) ) | |
| Defendants. | ) ) ) | |

## SUNOCO DEFENDANTS' MOTION TO ALTER OR AMEND THE JUDGMENT AND BRIEF IN SUPPORT

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ III

ARGUMENT ........................................................................................................................ 1

    I.      Sunoco files this motion out of an abundance of caution, in the event the
            Tenth Circuit rules that this Court's Judgment Order is a final, appealable
            judgment. ........................................................................................................... 1

    II.     The punitive damages award is excessive under the U.S. Constitution. ............... 4

          A.     On reprehensibility, the harm here is economic (not physical). ............... 5

          B.     The ratio of compensatory to punitive damages is
               unconstitutionally high. ............................................................................. 7

          C.     The damages award exceeds any civil or criminal penalties for
               comparable misconduct. ........................................................................... 9

    III.    Based on all the arguments Sunoco has made to date—including Sunoco's
            argument that plaintiffs failed to prove liability on a class-wide basis—the
            Court should alter or amend the judgment to reduce actual damages to $0
            and punitive damages to $0 .............................................................................. 9

    IV.    Alternatively, the Court should alter or amend the judgment to reduce the
            amount of actual and punitive damages for "Undivided" and for class
            members whose proceeds were sent to state unclaimed property funds. ............. 10

PRAYER .............................................................................................................................. 11

# TABLE OF AUTHORITIES

## Cases

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) .................................................................................. 5

*Burke v. Regalado*,
  935 F.3d 960 (10th Cir. 2019) ............................................................... 7, 8

*Chandler-Frates & Reitz v. Kostich*,
  1981 OK 74, 630 P.2d 1287, 1289 .......................................................... 9

*Cline v. Sunoco, Inc. (R&M)*,
  2019 WL 6720206 (Dec. 10, 2019) .......................................................... 7

*Cont'l Trend Res., Inc. v. OXY USA Inc.*,
  101 F.3d 634 (10th Cir. 1996) ....................................................... 4, 5, 7, 8

*Cook v. Rockwell International Corp.*,
  618 F.3d 1127 (10th Cir. 2010) ............................................................ 2, 4

*E.E.O.C. v. Fed. Express Corp.*,
  513 F.3d 360 (4th Cir. 2008) .................................................................... 4

*F.D.I.C. v. Hamilton*,
  122 F.3d 854 (10th Cir. 1997) .................................................................. 8

*Floyd v. Laws*,
  929 F.2d 1390 (9th Cir. 1991) .................................................................. 1

*Johansen v. Combustion Eng'g, Inc.*,
  170 F.3d 1320 (11th Cir. 1999) ................................................................ 4

*Krakauer v. Dish Network, L.L.C.*,
  925 F.3d 643 (4th Cir. 2019) .................................................................... 3

*Lompe v. Sunridge Partners, LLC*,
  818 F.3d 1041 (10th Cir. 2016) ................................................................ 8

*Okland Oil Co. v. Conoco Inc.*,
  144 F.3d 1308 (10th Cir. 1998) ................................................................ 7

*Richardson v. Oldham*,
  12 F.3d 1373 (5th Cir. 1994) .................................................................... 1

*S.W. Oklahoma Dev. Auth. v. Sullivan Engine Works, Inc.*,
  1996 OK 9. 910 P.2d 1052, 1056-57 ........................................................ 6

*Sherrill v. Royal Indus.*,
   526 F.2d 507 (8th Cir. 1975) ................................................................... 1

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ............................................................................. 5

*Strey v. Hunt International Resources Corp.*,
   696 F.2d 87 (10th Cir. 1982) ............................................................. 2, 4

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ...................................................................... 3, 4

Statutes
Okla. Stat. tit. 15, § 266 ....................................................................... 9

Okla. Stat. tit. 23, § 6 ........................................................................... 9

Other Authorities
Wright & Miller, *Federal Practice & Procedure* § 2818 (3d ed. 2006) ...................... 1

Rules
Fed. R. Civ. P. 59(b) ........................................................................ 1, 4

Constitutional Provisions
U.S. Const. amend. V ............................................................................. 4

U.S. Const. amend. VIII .......................................................................... 4

U.S. Const. amend. XIV ........................................................................... 4

## ARGUMENT

"As a general rule of federal practice, any question which has been presented to a federal district court for a ruling and which has not thereafter been waived or withdrawn is preserved for review." *Floyd v. Laws*, 929 F.2d 1390, 1400-01 (9th Cir. 1991); *accord Richardson v. Oldham*, 12 F.3d 1373, 1377 (5th Cir. 1994); *Sherrill v. Royal Indus.*, 526 F.2d 507, 509 n.2 (8th Cir. 1975); Wright & Miller, *Federal Practice & Procedure* § 2818 (3d ed. 2006). Thus, Sunoco files this motion to alter or amend the judgment subject to, and without waiving, any issues previously raised and ruled upon (or to be ruled upon) by this Court.[1]

**I.      Sunoco files this motion out of an abundance of caution, in the event the Tenth Circuit rules that this Court's Judgment Order is a final, appealable judgment.**

On August 27, 2020, this Court entered its Judgment Order in this case. Dkt. No. 308. The Judgment Order states in relevant part:

> [P]ursuant to Federal Rule of Civil Procedure 58, the Court ENTERS JUDGMENT against the defendants as to Count One. The Court AWARDS damages in the amount of $80,691,486.00 in actual damages and $75,000,000.00 in punitive damages.

*Id.* Assuming the Judgment Order is a final, appealable judgment, Sunoco's to alter or amend the judgment is due September 24, 2020. Fed. R. Civ. P. 59(e).

---

[1] Those issues include, but are not limited to, the points raised in Defendants' Response to Plaintiff's Motion to Certify Class (Dkt. 105), Defendants' Response to Class Representative's Motion for Partial Summary Judgment (Dkt. 160), Defendants' Motion to Clarify That Class Definition Does Not Include Escheat Payments to States, or Alternatively to Decertify Class or Exclude Escheat Payments From Class, and Brief in Support (Dkt. 172), Defendants' Pretrial Brief on Standing, Ripeness and Prohibitions Against "Fluid" Recovery of Damages (Dkt. 222), Defendants' Pretrial Brief Regarding Plaintiff's Claims on Behalf of Owners of Unclaimed Proceeds Paid to the States (Dkt. 223), Defendants' Post-Trial Brief (Dkt. 274), Defendants' Amended Proposed Findings of Fact and Conclusions of Law (Dkt. 275), all arguments that Sunoco raised at the trial of this case and at the closing argument held June 17, 2020, and any and all other arguments that Sunoco raised before, during, or after trial.

1

But the Tenth Circuit has questioned whether the Judgment Order is, in fact, a final appealable judgment.  After Sunoco filed its notice of appeal from the Judgment Order, the Tenth Circuit, on September 18, 2020, issued an Order (1) questioning whether the Judgment Order is a final, appealable judgment; (2) suspending the appellate briefing schedule; and (3) directing Sunoco to file, in the Tenth Circuit, a memorandum brief addressing whether the Judgment Order is a final, appealable judgment.

The finality question arises from the fact that this Court has not yet:

- adopted a plan for allocating damages among class members, or
- provided directions for disposing of any funds that, under the plan of allocation, go unclaimed after distributions are made.

In *Strey v. Hunt International Resources Corp.*, 696 F.2d 87, 88 (10th Cir. 1982), the Tenth Circuit held that a class-action judgment was <u>not</u> final because that judgment "award[ed] damages in favor of the plaintiff class" but did not "provide for the division of damages among the class members [or] the disposition of any funds that go unclaimed by class members."  *Id.*  The Court explained that the judgment would not be final "until the district court establishes both the formula that will determine the division of damages among class members and the principles that will guide the disposition of any unclaimed funds."  *Id.*

And in *Cook v. Rockwell International Corp.*, 618 F.3d 1127, 1137–38 (10th Cir. 2010), the Tenth Circuit applied the principles of *Strey*—although in *Cook*, the Court ended up holding that the judgment was final.  Like the judgment in *Strey*, the District Court's judgment in *Cook* recited "the total damages" but did not "distribute the aggregate class award among individual members."  *Id.* But unlike the judgment in *Strey*, the judgment in *Cook* "attached a Plan of

Allocation," which provided "a thorough framework for determining each individual class member's damages." *Id.*

In *Cook*, the Tenth Circuit held that the judgment was final and appealable *because the district court's Plan of Allocation provided* "for the appointment of a claims administrator, who is directed to determine the proper allocation of damages based on specific data," and "for the distribution of any unclaimed funds," and any challenges to the allocation of damages "would not affect the total damages owed by Defendants, which are clearly identified in the judgment." *Id.* Here, this Court has not yet entered such a plan of allocation.

*Strey* and *Cook* appear to be good law in the Tenth Circuit even though, in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1050 (2016), the Supreme Court exercised appellate jurisdiction where the District Court had not adopted a plan for allocating damages among class members. In *Tyson Foods*, the Supreme Court did not expressly address finality of the judgment, but nevertheless exercised appellate jurisdiction where the judgment

(1)   stated a total amount of damages awarded to a plaintiff class, but

(2)   did not provide how the damages would be allocated among class members.

*Id.* The petitioner challenged the judgment on grounds that "it will not be possible to know which [class members] are entitled to share in the award." *Id.* The Court rejected that argument as "premature" because "the damages award has not yet been disbursed, nor does the record indicate how it will be disbursed." *Id.* The Court held that the petitioner "may raise a challenge to the proposed method of allocation when the case returns to the District Court for disbursal of the award." *Id.*

Three years later, the Fourth Circuit relied on *Tyson* in holding that a class-action judgment was final. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 651 n.1 (4th Cir. 2019). The court

- 3 -

explained that the judgment "includes an aggregate damages award," and "[a]ll that remains at the district court are questions as to distribution of the damages award that can be resolved expeditiously and easily via a claims process." *Id.*

The Tenth Circuit has not yet had an opportunity to consider (1) what effect, if any, *Tyson Foods* has on the holdings of *Strey* and *Cook*; or (2) whether the holdings of *Strey* and *Cook* should be revisited in light of *Tyson Foods*.  However, under current Tenth Circuit law, *Strey* and *Cook* would indicate that the Judgment Order is not a final, appealable judgment.

Nevertheless, given the possibility that the Tenth Circuit may hold the Judgment Order to be a final judgment, Sunoco's post-judgment motions would be due within 28 days after entry of the Judgment Order.  Fed. R. Civ. P. 59(e).  Therefore, Sunoco files this motion to alter or amend the judgment within 28 days after entry of the Judgment Order.  If the Tenth Circuit rules that the Judgment Order is not final, then Sunoco reserves its right to file post-judgment motions— including a subsequent motion to alter or amend the judgment—once final judgment is entered. And Sunoco reserves its right, in such additional post-judgment motions, to assert, among other complaints/objections, challenges to the plan for allocating damages that this Court ultimately adopts.

## II.     The punitive damages award is excessive under the U.S. Constitution.

The U.S. Constitution bars deprivations of property without due process of law and also bars excessive fines.  U.S. Const. amends. V, VIII, XIV.  Federal courts have an "obligation" and "mandatory duty" to correct a punitive damages award that is excessive under the U.S. Constitution.  *E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 376 (4th Cir. 2008); *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999).  To do so, the Court may suggest a remittitur (*Cont'l Trend Res., Inc. v. OXY USA Inc.*, 101 F.3d 634, 643 (10th Cir. 1996)), or reform the award (*Johansen*, 170 F.3d at 1331-32).

The Supreme Court has established three guideposts for deciding whether an award is constitutionally excessive.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996).

- "The **first** and perhaps the most important guidepost is the <u>degree of reprehensibility</u> of the defendant's conduct."

- "The **second** and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is [the] <u>ratio [of punitive damages] to the actual harm</u> inflicted on the plaintiff."

- "The **third** guidepost is a <u>comparison of the punitive damages award with the civil or criminal penalties</u> that could be imposed for comparable misconduct."

*Cont'l Trend Res., Inc. v. OXY USA Inc.*, 101 F.3d 634, 636 (10th Cir. 1996) (alterations and quotation marks omitted; emphasis added).  Each guidepost is addressed below.

### A.      On <u>reprehensibility,</u> the harm here is economic (not physical).

For reprehensibility, courts ask whether the harm was "physical as opposed to economic," and whether it impacted "the health or safety of others."  *State Farm*, 538 U.S. at 419.  Here, the alleged harm was purely economic because Sunoco failed to pay money (statutory interest).  Such a "[p]urely economic harm may warrant less punishment than harm to the health or safety of individuals."  *Cont'l Trend Res.*, 101 F.3d at 638.

Courts also examine whether "the target of the conduct had financial vulnerability."  *State Farm*, 538 U.S. at 419.  Here, the plaintiff class is dominated by large payees, such as producers, working interest owners, and very large royalty owners. Dkt. 105, Ex. C ¶¶6, 14, Ex. D ¶¶ 31, 61 n.43.  The top 4% of the class sought 75% of the damages, and the top 10% of the class sought 90% of the damages.  Dkt. 105, Ex. D ¶¶31, 61 n.43.  The overwhelming majority of this harm was felt by large, sophisticated parties, rather than financially vulnerable individuals.  Even for individual royalty owners not paid interest, the interest represented a small fraction of the oil royalties received from Sunoco for the proceeds of oil sales.

Finally, courts consider whether the defendant "repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful." *Cont'l Trend Res.*, 101 F.3d at 638. Here, it is undisputed that Sunoco—in paying statutory interest primarily on demand—acted on advice of counsel that was consistent with the industry practices. Tr. at 84, 230-34. There was no evidence that anyone at Sunoco (or the industry as a whole) thought this practice violated the law. Moreover, Sunoco had a reasonable, good faith legal basis for interpreting the PRSA as not requiring interest to be paid contemporaneously with the late payment of proceeds, as the statutory language does not specifically require a holder to *pay* interest, sets no time for the *payment* of interest (as opposed to the payment of proceeds), and merely states that a first purchaser "shall be liable" for interest. Okla. Stat. tit. 52, Sec. 570.10(E)(1); *See* Sunoco's Response to Plaintiff's Motion for Partial Summary Judgment, Dkt. 160. The Oklahoma Supreme Court has interpreted "is liable" language in a statute to mean a party is subject to suit for its action, in which the legal process will determine liability, not that it is obligated to determine its own liability and pay it automatically. *S.W. Oklahoma Dev. Auth. v. Sullivan Engine Works, Inc.,* 1996 OK 9. 910 P.2d 1052, 1056-57 ("We find the phrase "is liable" denotes that if the seller committed the specific acts of fraud or misinformation, an action for damages may be instituted against the seller for the violation."). It was not until 6 days before trial that this court made a definitive ruling that interest must be paid with late proceeds, granting the plaintiff's motion for summary judgment. Opinion, Dkt. 231, December 10, 2019.

Finally, roughly 2/3 of the damages represent interest on oil proceeds, where Sunoco paid such oil proceeds to state unclaimed property funds because Sunoco could not identify or locate the owner or the owner did not claim the funds from Sunoco. Tr. at 904-05. Sunoco did not "know[] or suspect[] that it was unlawful" to fail to pay owners who could not be identified or

located, or to fail to pay PRSA interest to the 50 states, none of which required such interest to be paid under their statutes.  Sunoco's conduct was not reprehensible under the Supreme Court's standards.

**B.      The <u>ratio</u> of compensatory to punitive damages is unconstitutionally high.**

A "punitive [damages] award more than four times the compensatory [damages is] close to the line" of what the Constitution permits.  *Cont'l Trend Res.*, 101 F.3d at 639.  "[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process." *Burke v. Regalado*, 935 F.3d 960, 1038 (10th Cir. 2019).

Here, an award of **1%** interest would fully compensate the class.  After all, the harm here—the inability to use the interest on oil proceeds that Sunoco paid late—could be redressed by an award of interest at market rates, and the average annualized interest rates for risk-free investments between 2012 and 2019 was approximately **1%** or less.[2]  Nevertheless, this Court awarded actual damages of **12%** under Oklahoma's Production Revenue Standards Act ("PRSA").  The PRSA's 12% rate is intended not only to *compensate* for the loss of oil and gas proceeds but also to *compel* payment of those proceeds.  *Cline v. Sunoco, Inc. (R&M)*, 2019 WL 6720206, at *6 (Dec. 10, 2019) (citing *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1320 (10th Cir. 1998)); Okla. Stat. tit. 52, §570.10(D)(2).  The actual damages of **12%** interest is **12 times** higher than the **1%** interest

---

[2]       https://fred.stlouisfed.org/series/MMNRNJ;   https://fred.stlouisfed.org/series/SAVNRNJ; https://fred.stlouisfed.org/series/DGS3MO; https://fred.stlouisfed.org/series/DGS1; https://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yieldYear&year=2020.  Sunoco asks the Court to take judicial notice of these rates, as they are provided by the Federal Reserve or Treasury Department and cannot reasonably be disputed.  *See, e.g.*, *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1235 n.12 (11th Cir. 1999); *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 219 n.6 (D.C. Cir. 2018).  The average interest rates for 2012-2019 were .71% for 3-month Treasuries, .17% for 1-year Treasuries, .11% for money market accounts, and .07% for savings accounts.

that would fully compensate the class for its actual losses for not receiving interest at the time the proceeds were paid.

The Court separately awarded punitive damages of $75 million, "an amount approximately equal to the class' actual damages." Dkt. 298 at 47.  Taken together, this damages award—(a) the 12% interest combined with (b) the punitive damages—is **24 times** larger than the amount that would fully compensate the plaintiffs for their loss.

To illustrate this point, assume Sunoco is one year late in paying $100 in proceeds.  The class member would be fully compensated by 1% interest, which is $1.  Applying the PRSA's 12% rate would result in a payment of $12, which is 12 times higher than the $1 that would provide full compensation for loss of use of money.  Adding an equivalent amount of punitive damages (an *additional* $12) would result in a total award of $24, which is 24 times higher than the $1 that would provide full compensation.

The Due Process Clause does not tolerate this 24:1 ratio between damages awarded to coerce or punish the defendant, on the one hand, and damages awarded to compensate the plaintiff, on the other.  *See Cont'l Trend Res.*, 101 F.3d at 639 (an award "four times the compensatory [damages]" is "close to the line"); *Burke*, 935 F.3d at 1038 ("[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process."); *F.D.I.C. v. Hamilton*, 122 F.3d 854, 861 (10th Cir. 1997) ("The ratio between the punitive and actual damages awards, which is approximately 27:1, is unconstitutionally excessive.").  Such a ratio is especially intolerable where, as here, "compensatory damages are substantial."  *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1068 (10th Cir. 2016).  (Assuming an award of 1% interest would fully compensate the class, such a "compensatory" portion of the damages award still amounts to millions of dollars.)

C.      **The damages award exceeds any civil or criminal penalties for comparable misconduct.**

Apart from the statutes applied here, Sunoco has not identified any statute that imposes a penalty—either civil or criminal—for making payments late or only on request.  Under Oklahoma law, the default legal rate of interest is 6%.  15 O.S. §266; 23 O.S. §6; *Chandler-Frates & Reitz v. Kostich*, 1981 OK 74, 630 P.2d 1287, 1289.  By awarding interest at 12%, and then effectively doubling that award under the punitive damages statute, the Court's damages greatly exceed what would be awarded by applying the default legal rate of interest in Oklahoma.

III.    **Based on all the arguments Sunoco has made to date—including Sunoco's argument that plaintiffs failed to prove liability on a class-wide basis—the Court should alter or amend the judgment to reduce actual damages to $0 and punitive damages to $0.**

Many of Sunoco's arguments to date have been aimed at demonstrating that Sunoco is not liable, including, without limitation, Sunoco's argument (*e.g.*, Dkt. 274 at 3-25) that plaintiffs failed to prove liability on a class-wide basis.  For example, under the PRSA, interest is owed only to the owner "legally entitled" to interest, but plaintiffs failed to prove that every member of this class is legally entitled to interest under the PRSA.  *Id.*  Indeed, in many situations, Sunoco never even paid *proceeds* because Sunoco could not identify or locate the correct payee.  Tr. 267-69, 297-98, 577-80, 638-40, 787.  This may occur if Sunoco cannot determine that the payee information received from the producer or operator correctly identifies the true interest owner— *i.e.*, the person "legally entitled" to interest under the PRSA.  Tr. at 178-79, 191, 212, 219, 221, 226, 281.  When proceeds go unclaimed after passage of time, the proceeds are presumed abandoned under state law and sent to state unclaimed property funds, rather than the interest owner.  There is no class-wide evidence that all members of this class are the true owners "legally entitled" to interest.  Plaintiffs failed to prove liability on a class-wide basis.

IV.    **Alternatively, the Court should alter or amend the judgment to reduce the amount of actual and punitive damages for "Undivided" and for class members whose proceeds were sent to state unclaimed property funds.**

On September 22, 2020, Sunoco filed its Response and Objections to Plaintiffs' Plan of Distribution, including a Declaration of Eric Krause and Exhibits 1 and 2 attached thereto.  Dkts. 321, 321-1.  Sunoco hereby incorporates these filings, and all arguments and evidence presented therein, into this motion to amend or alter the judgment pursuant to Rule 59(e).

"It is a fundamental legal principle that the determination of the quantum of damages in civil cases is a fact-finder's function."  *Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir. 1985).  Sunoco has argued that the proposed Plan of Distribution will improperly send substantial sums— as much as two-thirds of the judgment—to a "Residual Unclaimed Funds" pool because the class members have not been identified and/or located and verified as the proper owners.  Dkt. 321 at 6-11.  As a result, the judgment will order a "fluid" recovery that violates Due Process; many class members will receive no damages at all, or some may receive damages in excess of what the judgment awards them if damages are re-distributed, or damages may be sent to non-parties, such as states.  *Id*. at 11-16.  Additionally, Sunoco would be compelled to pay damages to class members that lack standing to sue, and the damages paid to such persons will essentially operate as an improper fine or additional punishment, *id.* at 16-19, and Sunoco may be improperly bound by a judgment to thousands of unknown persons, *id*. at 19-21.  Because Cline cannot meet his burden to present an adequate plan to distribute the damages to members of the class, the Court should reduce the actual amount of damages awarded in the judgment by whatever amount cannot be distributed to and received directly by class members.  *Id*. at 6, 20-22 & Prayer for Relief.

As Barbara Ley's data and Eric Krause's Declaration in support of Sunoco's response and objections shows, the amount of an appropriate reduction can be reasonably determined now, as the exact amount allocated to class members whose proceeds were sent to state unclaimed property

funds is $102,110,606, including the amount of punitive damages attributable to those unclaimed funds, and the exact amount allocated to "Undivided" is $16,710,471. Krause Dec., Dkt. 321-1 at ¶¶ 9-10. Sunoco hereby moves the Court to alter or amend the judgment to reduce the judgment accordingly by $102,110,606; or, in the alternative, by $16,710,471.

Sunoco also renews and incorporates its prior arguments in pretrial and post-trial briefs and Amended Findings and Conclusions that Sunoco is not liable for, and class members cannot recover for, alleged untimely payments of proceeds to states under their unclaimed property statutes.

As of the date of the filing of this motion, the Court is still receiving briefing on Plaintiffs' proposed Plan of Distribution and has not yet issued a ruling approving or denying a Plan of Distribution. Accordingly, Sunoco reserves all rights to further respond to and object to any approved Plan of Distribution and to move for post-judgment relief upon any amended or other further judgment issued by the Court.

## PRAYER

Because Plaintiffs failed to prove liability on a class-wide basis, Defendants Sunoco, Inc. (R&M) and Sunoco Partners Marketing & Terminals, L.P., pray that the Court alter or amend the judgment to reduce the actual damages to $0 and the punitive damages to $0. In the alternative, the Court should grant the relief requested in Sunoco's motion for new trial, but if the Court declines to do so, then, at the very least, the Court should alter or amend the judgment by making the largest possible reduction in damages based on the arguments presented herein.

Dated: September 24, 2020

Mark D. Christiansen OBA # 1675
**EDINGER LEONARD & BLAKLEY PLLC**
6301 N. Western Avenue, Suite 250
Oklahoma City, OK 73118
Telephone: (405) 702-9900
Fax:  (405) 605-8381
mchristiansen@elbattorneys.com

R. Paul Yetter *(pro hac vice)*
pyetter@yettercoleman.com
Robert D. Woods *(pro hac vice)*
rwoods@yettercoleman.com
**YETTER COLEMAN LLP**
811 Main Street, Suite 4100
Houston, TX 77002
Telephone: (713) 632-8000
Fax:  (713) 632-8002

*/s/Daniel M. McClure*
Daniel M. McClure OBA # 20414
dan.mcclure@nortonrosefulbright.com
Matthew A. Dekovich (*pro hac vice*)
matt.dekovich@nortonrosefulbright.com
Mark T. Emery
mark.emery@nortonrosefulbright.com
Rebecca J. Cole (*pro hac vice*)
rebecca.cole@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone (713) 651-5151
Fax (713) 651-5246

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2020, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to all counsel of record, including the following:

Michael Burrage
WHITTEN BURRAGE
mburrage@whittenburragelaw.com

Bradley E. Beckworth
Jeffrey J. Angelovich
Lisa P. Baldwin
Andrew G. Pate
Trey Duck
Cody L. Hill
NIX PATTERSON, LLP
bbeckworth@nixlaw.com
jangelovich@npraustin.com
lbaldwin@nixlaw.com
dpate@nixlaw.com
tduck@nixlaw.com
codyhill@nixlaw.com
bchurchman@nixlaw.com

Susan R. Whatley
NIX PATTERSON, LLP.
swhatley@nixlaw.com

Patrick M. Ryan
Philip G. Whaley
Jason A. Ryan
Paula M. Jantzen
RYAN WHALEY COLDIRON JANTZEN
    PETERS & WEBBER PLLC
pryan@ryanwhaley.com
pwhaley@ryanwhaley.com
jryan@ryanwhaley.com
pjantzen@ryanwhaley.com

Lawrence R. Murphy, Jr.
LAWRENCE R. MURPHY, JR., P.C.
larrymurphy999@gmail.com

Robert N. Barnes
Patranell Lewis
Emily Nash Kitch
BARNES & LEWIS, LLP
208 NW 60th Street
Oklahoma City, OK 73118
rbarnes@barneslewis.com
plewis@barneslewis.com
ekitch@barneslewis.com

/s/ *Daniel M. McClure*
Daniel M. McClure

- 13 -