IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PERRY CLINE, on behalf of himself
and all others similarly situated,
           Plaintiff,

v.                                              Civil Action No. 6:17-cv-313-JAG

SUNOCO, INC. (R&M), et al.,
           Defendants.

## OPINION

Oklahoma's Production Revenue Standards Act ("PRSA") requires a first purchaser of crude oil—such as Sunoco, Inc. (R&M), and Sunoco Partners Marketing & Terminals, L.P. (collectively, "Sunoco")—to pay promptly for the oil.[1] *See* Okla. Stat. tit. 52, §§ 570.1–.15. If the purchaser pays late, it must pay interest to the owner of the well that produced the oil. This case involves Sunoco's failure to pay that interest to Perry Cline and the class he represents.[2]

In August 2020, the Court found for Cline and awarded him damages. Sunoco, however, does not concede. In September 2020, Sunoco moved for a new trial and to alter the judgment. For the reasons stated below, the Court will deny both motions.

## I. BACKGROUND[3]

Perry Cline represents a class of owners of interests in oil wells in Oklahoma. Cline sued Sunoco under the PRSA for failing to pay the statutory interest on late payments it made on oil

---

[1] Oklahoma law calls these payments "proceeds." Okla. Stat. tit. 52, § 570.2(8).

[2] Cline serves as the named representative of a class certified by the Court on October 3, 2019. (ECF Nos. 126, 127.) The Court uses the terms "the class" and "Cline" interchangeably.

[3] The Court detailed the background and procedural history of this case in its August 17, 2020 Opinion. (*See* ECF No. 298, at 2–5.)

proceeds.

On December 10, 2019, the Court concluded that the PRSA requires Sunoco to make statutory interest payments automatically with late payments. (ECF Nos. 231, 232.) The Court held a bench trial on the remaining issues from December 16–19, 2019, and heard closing arguments on June 17, 2020.

On August 17, 2020, the Court announced that Sunoco breached its obligation under the PRSA to pay statutory interest on late payments it made on oil proceeds. (ECF No. 298.) Accordingly, the Court entered judgment against the company, (ECF Nos. 299), and, on August 27, 2020, awarded the plaintiffs "damages in the amount of $80,691,486.00 in actual damages and $75,000,000.00 in punitive damages," (ECF No. 308).

On September 24, 2020, Sunoco filed two motions: one for a new trial and one to alter the judgment. (ECF Nos. 322, 323.) The Court addresses each motion in turn.

## II. MOTION FOR A NEW TRIAL

Sunoco argues that it "did not have a fair trial" and, therefore, the "Court should order a new" one "to prevent an injustice" and avoid violating its Due Process rights. (ECF No. 322, at 4, 15.) Sunoco makes this argument in two ways. First, Sunoco says that the Court unfairly announced its legal conclusion regarding which party bore the burden of proving marketable-title issues *after* trial. (*Id.* at 9–11, 15–16.) Second, Sunoco claims that when the Court allocated the burden of proving marketable-title issues to Sunoco, it "erred as a matter of law." (*Id.* at 16–19.) Both arguments fail for the reasons detailed below.

### *A. Post-Trial Announcement of Legal Conclusion*

According to Sunoco, "the trial was not fair, and a new trial is required to prevent injustice, because the Court held—for the first time *post*-trial—that Sunoco, *at trial*, bore the burden of proof to show which class members had unmarketable title." (*Id.* at 4–5.) The Court did, indeed, hold "for the first time *post*-trial" that the burden of proof on marketable-title issues fell to Sunoco. (*See* ECF No. 298, at 30–31.) But this post-trial announcement of its "conclusion of law" keeps with Federal Rule of Civil Procedure 52(a). (*See id.* at 2.)

Rule 52(a)(1) provides that "[i]n an action tried on the facts without a jury," courts must state "[t]he findings [of fact] and conclusions [of law] . . . on the record after the close of the evidence or . . . in an opinion or a memorandum of decision filed by the court." In this case, as Rule 52(a)(1) permits, the Court announced its conclusion as to which party bore the burden of proof on marketable-title issues in its August 27, 2020 Opinion. (ECF No. 298, at 2, 30–31.)

Sunoco claims that the Court's conclusion of law on the marketable-title issue surprised them. (ECF No. 322, at 15 ("Sunoco had no realistic notice that it would bear the burden of proof on the marketable-title issue at trial . . . .").) But Sunoco *knew* that the question of which party bore the burden of proof regarding marketable-title issues remained in dispute during the trial. In fact, both Sunoco and Cline wrote pretrial briefs on the issue.[4] (ECF Nos. 208, 213.) And the Court's reference to its initial thoughts on the issue during the December 11, 2019 pretrial conference provided further notice to Sunoco that the issue remained undecided. (*See* ECF No. 333, at 12.) The Court, therefore, finds Sunoco's surprise insincere.

---

[4] The Court permitted both parties to file "pretrial bench briefs on material issues expected to arise at trial." (ECF No. 102 ¶ 13.)

3

The Court also rejects the defendant's claim that the Court deprived it of the opportunity to present evidence about marketable-title issues. (ECF No. 322, at 11.) Not only did Sunoco never ask for a continuance, but it also did not object to finishing trial a day early. (ECF 298, at 18; ECF No. 333, at 10.) Sunoco claims that the Court "cut off" its presentation of evidence when it "attempted, at trial, to adduce evidence to demonstrate that individualized evidence was necessary to prove why particular payments for particular class members were late" and "precluded Sunoco from presenting any 'more [examples] like this.'" (ECF No. 322, at 11 (alteration in original) (quoting Trial Tr. vol. 1, 279:21–280:1).)

In making this argument, Sunoco boldly mischaracterizes the record. During the incident Sunoco cites, the company's lawyers questioned Eric Koelling, Sunoco's representative at trial, about the "circumstances" of "three royalty owners" that Sunoco planned to call as witnesses. (Trial Tr. vol. 1, 254:19–23). By showing the "circumstances" of these royalty owners, Sunoco intended "to show examples of late payments and what it took to figure out" the reason for the late payment and how much, if anything, Sunoco owed the royalty owner. (*Id.* at 279:18–19.) Sunoco proceeded to ask Koelling questions about the three royalty owners, discussing the difficulties Sunoco had determining what it owed each royalty owner. By the time Sunoco reached its questions about the third royalty owner, the Court had a firm grasp on the difficulty Sunoco has determining how much money the company owes and to whom they owe it. Accordingly, the Court characterized further testimony about the third royalty owner's circumstances as "fairly cumulative." (*Id.* at 279:25.)

Pointing to this exchange for support, Sunoco suggests that the Court would not have permitted its presentation of individualized proof of marketable title for each class member. (ECF No. 322, at 11.) Considering the context surrounding this exchange and the limited purpose for

4

which Sunoco elicited this testimony, Sunoco's claim rings hollow. The emptiness of Sunoco's claim becomes even clearer upon its confession that it could not have presented individualized proof of marketable title for the class members even if it had tried.

In sum, the Court's post-trial announcement of which party bore the burden on marketable-title issues complied with Federal Rule of Civil Procedure 52, and, therefore, the Court will deny Sunoco's claim that it "did not have a fair trial." (ECF No. 322, at 4.) The Court also rejects Sunoco's claim that this post-trial announcement violated its due process rights because it did not have "an opportunity to present every available defense"—here, the unmarketability of class members' title. (ECF No. 322, at 16 (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)). The Court did not deny Sunoco the opportunity; Sunoco's records—or lack thereof—denied it the opportunity. Accordingly, the Court finds Sunoco's due process rights remain intact.

### B. Sunoco Bore the Burden of Proof on Marketable-Title Issues

Sunoco claims that "a new trial is required because the Court erred as a matter of law by allocating the burden of proof to Sunoco on the marketable-title issue." (ECF No. 322, at 16.) Sunoco says that *In re Tulsa Energy, Inc.*, 111 F.3d 88 (10th Cir. 1997), compels this conclusion. For the same reasons discussed in its August 17 Opinion, the Court disagrees. In *In re Tulsa Energy, Inc.*, the Tenth Circuit explained that "[i]t is the interest owner's responsibility to establish marketable title so that he can receive *proceeds*." *Id.* at 90 (emphasis added). Here, Sunoco has already paid the class members "proceeds." Sunoco disputes the rate at which it must pay the class members *interest* on those proceeds. *In re Tulsa Energy, Inc.*, therefore, does not compel the conclusion Sunoco says it does.

Sunoco also says the Court erred by allocating "the burden of proof to Sunoco based on [its] analysis of Subsection 'D' of the PRSA." (ECF No. 322, at 18.) Instead, Sunoco points the

5

Court towards Subsection "E," the provision under which the plaintiffs sued and which Sunoco claims "imposes on Plaintiffs the burden of proof" as to which rate of interest applies.[5] (*Id.* at 19.) Again, the Court disagrees and maintains—for all the same reasons announced in its August 17 Opinion—that the first purchasers or holders of proceeds referred to in § 570.10(E)(1) bear of the burden of proving that the 12 percent default interest rate set by the PRSA does not apply.[6]

### *C. The Punitive Damages Award is Constitutional*

Sunoco argues that the $75,000,000 punitive damages award in this case "is excessive" under the due process clauses of the Fifth and Fourteenth Amendments to U.S. Constitution.[7] (ECF No. 322, at 20.) In support of this position, Sunoco says that its "conduct was not reprehensible under the Supreme Court's standards"; that "[t]he ratio of compensatory to punitive damages is unconstitutionally high"; and that "[t]he damages award exceeds any civil or criminal penalties for comparable misconduct." (ECF No. 322, at 23, 25 (emphasis omitted).) For the

---

[5] The Court refers to Subsection "D" not because the Court does not understand which provision creates the right the class members enforced in this suit, but because Subsection "E" directs its readers to Subsection "D."

[6] Although the Court recognizes the general rule that "plaintiffs bear the risk of failing to prove their claims," *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005), the Court declines to place the burden of proving marketable title on royalty owners whose marketable title "[is] not legitimately in question," *Quinlan v. Koch Oil Co.*, 25 F.3d 936, 940 (10th Cir. 1994), and who have gone without interest payments that Sunoco rightfully owes them, § 570.10(E)(1). Doing so would undermine the purpose of the PRSA—"to ensure that those entitled to royalty payments would receive proceeds in a timely fashion." *Hull v. Sun Refin. & Mktg. Co.*, 789 P.2d 1272, 1279 (Okla. 1989); *see H.B. Krug v. Helmerich & Payne, Inc.*, 362 P.3d 205, 210 (Okla. 2015) ("Legislative intent controls statutory interpretation.").

[7] Although Sunoco also claims that the punitive damages award in this case violates the Eighth Amendment's Excessive Fines Clause, the "Excessive Fines Clause does not apply to awards of punitive damages in cases between private parties." *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 260 (1989).

following reasons, this Court finds the punitive damages award in this case comports with due process.

### 1. *Degree of Reprehensibility*

Regarding the "degree of reprehensibility of the defendant's conduct"—"[p]erhaps the most important indicium" for determining the constitutionality of a punitive damages award—the Court agrees with Sunoco that it caused economic, not physical, harm. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). But Sunoco's practice of "paying statutory interest" only after the royalty owner demanded it amounted to an enormous loss for the public. (ECF No. 322, at 22.) Although Sunoco may have "acted on the advice of counsel," and although Sunoco's practice "was consistent with the industry practices," its conduct clearly violated the PRSA and kept millions of dollars that belonged to others. (*Id.*) Essentially, Sunoco took the position that it could keep other people's money indefinitely. Its position was reprehensible. The Court did not err in issuing the punitive damages award.

### 2. *Ratio between Compensatory and Punitive Damages*

As for the ratio between the punitive damages and "the actual harm inflicted on the plaintiff," *Gore*, 517 U.S. at 580, Sunoco suggests that the Court awarded punitive damages twenty-four times greater than "the amount that would fully compensate the plaintiffs for their loss." (ECF No. 322, at 24.) Sunoco reached this conclusion first, by claiming that a market interest rate of 1 percent would "fully compensate the class." (*Id.*) Consequently, the Court's actual damage figure—calculated based on the 12 percent interest rate provided by the PRSA—"is 12 times higher" than the amount "that would fully compensate the class for its actual losses for not receiving interest at the time the proceeds were paid." (*Id.* (emphasis omitted).) Next, Sunoco combines this 12 percent interest with the Court's $75,000,000 punitive damages award,

7

and concludes that "this damage award . . . is 24 times larger than the amount that would fully compensate the plaintiffs for their loss." (*Id.* (emphasis omitted).)

Sunoco appears to misunderstand the nature of "compensatory damages," which Black's Law Dictionary defines as "sufficient in amount to indemnify the injured person for the loss suffered." *Damages*, Black's Law Dictionary (11th ed. 2019). Here, Sunoco owes the class members interest on untimely statutory payments. The PRSA sets the rate of interest on these payments at 12 percent, unless the first purchaser or holder of proceeds can prove that it paid the proceeds late because of unmarketable title, in which case a 6 percent rate applies. Sunoco may object to the PRSA and the interest rates it sets, but the law applies "to all owners," and its rates define the amount of loss suffered by the class members. Okla. Stat. tit. 52, § 570.3. Consequently, the Court's award of $80,691,486 merely indemnifies the class members for the amount of interest Sunoco owes them under the PRSA.

Sunoco also seems to confuse the ratio courts consider when assessing whether a punitive damages award satisfies due process. Courts do not combine the punitive and compensatory damages awards and compare that sum with what the defendant thinks "would fully compensate the class," as Sunoco suggests. (ECF No. 322, at 24.) Indeed, if courts did as Sunoco suggests, they would often compare damages awards against the defendant's desired award of $0. Such a comparison would render every damages award unconstitutional. This the law does not support.

Instead, courts consider "the ratio between punitive and compensatory damages." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 507 (2008). Here, that ratio is *less than* 1:1, falling well within the bounds of constitutional permissibility. *See Lompe v. Sunridge Partners, LLC*, 818 F.3d

1041, 1068 (10th Cir. 2016) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)).[8]

### *3. Penalties for Comparable Misconduct*

Finally, Sunoco claims that "[t]he damages award exceeds any civil or criminal penalties for comparable misconduct." (ECF No. 322, at 25.) In support of this, Sunoco cites Oklahoma's 6 percent default legal interest rate. Okla. Stat. tit. 15, § 266. The Court calculated both the compensatory and punitive damages awards pursuant to Oklahoma law. Sunoco's gripe about the PRSA's 12 percent default interest rate, therefore, lies with the Oklahoma legislature, not with this Court.

### *C. The Energy Litigation Reform Act Allows Cline's Recovery*

In its reply brief, Sunoco raised again its argument that the Energy Litigation Reform Act ("ELRA"), Okla. Stat. tit. 52, § 903, only applies to claims for "proceeds," not "interest," and, therefore, Cline may not recover punitive damages. (ECF No. 338, at 6–8.) For all the reasons stated in its August 17 Opinion, the Court disagrees. (ECF No. 298, at 42–43.)

Sunoco also says that Cline failed to prove, by clear and convincing evidence, that "Sunoco willfully deprived Plaintiffs of proceeds knowing that Plaintiffs were legally entitled thereto—*i.e.*, knowing Plaintiffs had marketable title." (ECF No. 338, at 7 (emphases omitted).) Sunoco mischaracterizes Cline's burden under § 903.

---

[8] '[S]ingle-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution.' This suggests that up to a 9:1 ratio of punitive damages to compensatory damages is likely acceptable in some cases, and that a 10:1 ratio might be permissible because it does not exceed 9:1 to a significant degree.

*Id.* (quoting *Campbell*, 538 U.S. at 425).

In order to recover punitive damages under § 903, Cline needed to prove that Sunoco failed to pay interest "with the actual, knowing[,] and willful intent . . . to deprive" the interest from Cline, who Sunoco "knows, or is aware, is legally entitled thereto." For all the reasons stated in its August 17 Opinion, the Court finds that Cline satisfied this burden. (ECF No. 298, at 42–43.) Sunoco attempts to heap onto Cline the additional burden of proving marketable title, contending that the class could not prove their legal entitlement to the interest otherwise. But Sunoco *knew* it owed interest to royalty owners for late payments. (Trial Tr. vol. 1, 82:20–85:19.) And Cline introduced other evidence, such as emails, that established Sunoco's awareness of its legal obligation to pay interest and its intent to keep the interest absent a demand, thereby depriving owners of the interest owed them. (*See, e.g.*, Pl.'s Ex. 38.) Consequently, the Court again finds that Cline satisfied his burden under § 903 and, therefore, the ELRA permits punitive damages in this case.

### III. <u>MOTION TO ALTER OR AMEND THE JUDGMENT</u>

Sunoco asks the Court to eliminate, or at least reduce, the damages awards in this case. First, Sunoco argues that the punitive damages award exceeds what the Constitution permits. The Court disagrees for the same reasons discussed above. Second, Sunoco contends that "[b]ased on all the arguments Sunoco has made to date—including . . . that plaintiffs failed to prove liability on a class-wide basis—the Court should alter or amend the judgment" pursuant to Federal Rule of Civil Procedure 59(e). (ECF No. 323, at 9.) Finding that Cline *did* prove class-wide liability for the reasons outlined below, the Court will decline to alter or amend the judgment.

#### *A. The Punitive Damages Award is Constitutional*

Sunoco raises arguments identical to those in its briefing in support of its motion for a new trial regarding the punitive damages award. (*Id.* at 4–9; ECF No. 322, at 20–25). For all the

reasons set forth in Section II.C, the Court finds that the punitive damages award in this case comports with due process.

### B. The Class Proved Class-Wide Liability

Sunoco says that "[b]ased on all the arguments Sunoco has made to date," the Court should alter the judgment by lowering the damages awards. (ECF No. 323, at 9.) But Sunoco specifically identifies one argument for the Court to consider: Cline's alleged failure to prove liability on a class-wide basis. (*Id.*) Sunoco argues that Cline failed to prove that all the members of the class "are the true owners 'legally entitled' to interest." (*Id.*)

The Court disagrees, and again finds that Cline met his burden of proving, by a preponderance of the evidence, class-wide liability. The certified class in this case includes only those who "received Untimely Payments from Defendants . . . for oil proceeds" after a certain date, and "who have not already been paid statutory interest on the Untimely Payments." (ECF No. 127.) These limitations—narrowing the class to those who have already received[9] untimely payments for oil proceeds but have not received the statutory interest payments—ensure the legal entitlement of each member of the class to interest payments under the PRSA. (*See* Trial Tr. vol. 1, 159:03–159:12.) Sunoco's contention that its payment of proceeds does not demonstrate legal entitlement defies logic. The Court finds implausible that Sunoco paid people money that it did not owe them, especially considering the company's policy of withholding interest payments from their rightful owners in contravention of clear Oklahoma law. The Court, therefore, finds again, by a preponderance of the evidence, that Cline demonstrated Sunoco's liability to the entire class.

---

[9] Although Sunoco directed the proceeds it owed to some class members to an unclaimed property fund, that does not negate the right of those unidentified or unlocated class members to the proceeds—a right that they could vindicate at any time by collecting the proceeds from their respective state. (ECF No. 298, at 33–43.)

11

Sunoco also contends that because it will remit a portion of the judgment to state unclaimed property funds due to the number of unidentified or unlocated class members, "the judgment will order a 'fluid' recovery that violates Due Process." (ECF No. 323, at 10.) For all the reasons discussed in its August 17 Opinion, the Court disagrees. (ECF No. 298, at 40–42.) Because Cline has demonstrated Sunoco's liability to each member of the class and because Sunoco had the opportunity to rebut Cline's assertions, recovery in this case does not "mask the prevalence of individual issues [such that] it is an impermissible affront to defendants' due process rights." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 232 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008).

The Court also rejects Sunoco's claims that it "would be compelled to pay damages to class members that lack standing to sue, . . . and [that] Sunoco may be improperly bound by a judgment to thousands of unknown persons." (ECF No. 323, at 10.) First, for the same reasons detailed in its August 17 Opinion, the Court finds that the class members—including those who remain unlocated and unidentified—had standing to seek damages in this case. (ECF No. 298, at 31–34.) Second, the Court's judgment does not bind Sunoco to *unknown* persons as Sunoco alleges. The company anticipates difficulty determining "who is a party to the judgment, and against whom it could assert estoppel or res judicata if future lawsuits against Sunoco for PRSA interest are filed." (ECF No. 321, at 20.) Although the judgment binds Sunoco to unidentified and unlocated persons, a class member's status as unlocated or unidentified does not render them *unknown* to Sunoco. The Court, therefore, finds that the judgment does *not* bind Sunoco to unknown persons, and it does not place Sunoco at risk for subsequent, duplicative claims. Indeed, Sunoco itself paid these unidentified or unlocated class members by remitting payment to the relevant state unclaimed property fund.

Finally, Sunoco "renews . . . its prior arguments . . . that Sunoco is not liable for, and class members cannot recover for, alleged untimely payments of proceeds to states under their unclaimed property statutes." (ECF No. 323, at 11.) As the Court confirmed above, owners entitled to unclaimed funds had standing to seek damages in this case. (*See also* ECF No. 298, at 31–34.) In addition, the PRSA compels the conclusion that Sunoco must timely pay proceeds to "persons legally entitled thereto" unless one of the exceptions provided in § 570.10(B)(3) applies. Because the statute does not list unclaimed funds among its exceptions, the Court finds that the PRSA's timing requirements do, in fact, apply to unclaimed funds. (*See* ECF No. 298, at 34–35.) Accordingly, Sunoco "is . . . liable for, and class members can[] recover for, . . . untimely payments of proceeds" to state unclaimed property funds. (ECF No. 323, at 11.)

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny Sunoco's motion for a new trial and its motion to alter or amend the judgment.[10] (ECF Nos. 322, 323.)

The Court will issue an appropriate Order.

---

[10] On November 25, 2020, Sunoco renewed its motion for a new trial and its motion to alter the judgment. (ECF Nos. 347, 348.) Challenging the Plan of Allocation, Sunoco argues that because the Court should either order a new trial or alter the judgment, the Court should also vacate or amend the Plan of Allocation. Sunoco also reasserts that the Plan of Allocation "does not adequately (1) address the method for distributing funds that go unclaimed by class members . . . or (2) allocate, to identified class members, the 10% of the damages awarded to class members whose interests were combined with Sunoco's 'undivided' account." (ECF No. 347, at 3; ECF No. 348, at 3.)

The Court dismisses both arguments. Sunoco's first argument fails because the Court will deny Sunoco's motion for a new trial and its motion to alter the judgment. The Court also finds the Plan of Allocation adequate as it provides for the distribution of funds to state unclaimed property funds if the class member does not claim their funds or remains unidentified or unlocated. Accordingly, the Court will deny Sunoco's renewed motion for a new trial and its motion to alter the judgment. (ECF Nos. 347, 348.)

Let the Clerk send a copy of this Order to all counsel of record.

Date: 9 December 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge