IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **PERRY CLINE**, on behalf of himself and all others similarly situated, | )<br>)<br>)<br>) |
| **Plaintiff**, | )<br>) |
| v. | )   Case No. 17-cv-313-JAG<br>) |
| **SUNOCO, INC. (R&M)** and **SUNOCO PARTNERS MARKETING & TERMINALS, L.P.**, | )<br>)<br>)<br>) |
| **Defendants.** | ) |

**CLASS REPRESENTATIVE'S RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER FOR PRODUCTION OF <u>DOCUMENTS AND ASSET HEARING</u>**

Sunoco bears the heavy burden to show Judge West's Order was "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Sunoco's Objection cannot and does not meet this substantial burden. The undisputed facts are these: the Court entered an Order directing Sunoco to appear in person, through its designated representatives, and answer concerning its property and assets in compliance with Fed. R. Civ. P. 69 and 12 O.S. § 842. That hearing is scheduled to take place on September 12, 2022. *See* Dkt. Nos. 370, 430. Sunoco admitted to Judge West that if enforcement proceedings were allowed to commence, an asset hearing was an appropriate procedural vehicle and it would be required to produce a corporate representative to provide testimony regarding its assets. This is because §842 is not optional or discretionary, but mandatory. *See id.* ("At any time after a final judgment, order, or decree is filed, on application of the judgment creditor, a judge of the court in

which the final judgment, order, or decree was rendered ***shall order*** the judgment debtor to appear before the judge, or a referee appointed by the judge, at a time and place specified in the order, to answer concerning the judgment debtor's property.")(emphasis added).

Accordingly, the only pertinent issue at this juncture is whether Judge West committed clear error when she directed Sunoco to produce responsive documents on or before August 31, 2022. Dkt. No. 430. As stated more fully below, productions of the type at issue are permissible under Oklahoma law, and the requests at issue are reasonably calculated to ascertain the identity of what assets may be available to satisfy the underlying Judgment. As such, Sunoco's Objection should be overruled.

All Class Representative has requested is that Sunoco identify sufficient available assets against which Class Representative could execute to satisfy the outstanding Judgment. In his effort to do so, Class Representative has proposed the least intrusive path, and the Court endorsed it. Sunoco, however, has chosen the ***most*** obstructionist response. By its own onerous standards, Sunoco recognizes that some information must be provided (and it has purportedly agreed to do so), yet it has chosen to produce nothing. Instead, for the five months that this issue remained pending before Judge West, Sunoco never, not once, contacted Class Counsel to discuss any proposal for a lesser production whatsoever. Further, during the fourteen days since Judge West issued her Order, Sunoco remained silent and never once offering to produce even a single document. Sunoco has one goal and one goal only: to obfuscate and delay enforcement of the Judgment this Court entered against it more than two years ago.

As such, Sunoco's Objections should be overruled so that the August 31 and September 12 deadlines may remain in place.

## STANDARD

A magistrate judge's order will be deemed "clearly erroneous" only if the reviewing court, on the entire evidence, is left with the "definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). A magistrate judge's order is contrary to law if it applied an incorrect legal standard. *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 464 (D.N.M. 2018). "In sum, it is **extremely difficult** to justify alteration of the magistrate judge's non-dispositive actions by the district judge." *See id.* (emphasis added).

## ARGUMENT

Ostensibly, Sunoco objects to Judge West's Order on the basis that it: (1) orders production in the absence of proper requests under 12 O.S. § 842(B); (2) orders production in response to requests that were withdrawn and superseded by Class Representative's revised proposed Exhibit 1; (3) orders production in response to overbroad requests in Exhibit A; (4) orders production in a timeframe that Sunoco claims is not reasonable; and (5) orders an asset hearing to take place on a schedule that Sunoco claims does not permit adequate witness preparation. Each contention is without merit.

I.  **Judge West's Order Complies With The Law Governing Execution Of Judgments**

Judge West properly considered and applied §842 in rendering the subject Order. The purpose of an asset hearing is to provide detailed information about the judgment debtor's assets so the judgment creditor can then initiate the process of seizing those assets to satisfy the Judgment. Document production is essential to this process and Oklahoma law allows the Court to require document production in aid of post-judgment collection proceedings. Indeed, "[t]he ultimate purpose of [Oklahoma's enforcement of judgment statutes, 12 O.S. §§ 841 through 862] is to effect the application of a judgment debtor's property to a judgment." *Wells Fargo Bank, Nat'l Assoc. v. Apache Tribe of Okla.*, 2015 OK CIV APP 10, ¶46, 360 P.3d 1243, 1262 (citing *Ramco Operating Co. v. Bassett*, 1995 OK 8, ¶ 12, 890 P.2d 941, 944). To this end, courts routinely require document production as part of asset hearings authorized under 12 O.S. § 842.

In response to Sunoco's objections that Class Representative's document requests were overly broad and would result in undue burden, Judge West noted "[t]he document production does nothing more than require in written form that which Defendants will be required to provide at an asset hearing under Okla. Stat. tit. 12 § 842." *See* Dkt. No. 430 at 2. Judge West went on to point out that this case was "well-beyond" the general discovery phase guided by the Federal Rules, but was in the post-judgment enforcement phase, which required the discovery of information about "possible assets from which the prevailing Plaintiff may recover his judgment," and which invoked the Court's equitable powers under, *inter alia*, §842. *See id.* at 3 (citing *Stone v. Coleman*, 1976 OK 182, ¶ 2, 557 P.2d

904; *Treadway v. Collins*, 1947 OK 98, ¶ 11, 178 P.2d 886, 889). To this end, Judge West concluded that Sunoco's claims of undue burden and overbreadth were unpersuasive because "so long as the information sought is reasonably related to ascertaining assets from which Plaintiff's judgment may be satisfied ... [a]ll of Plaintiff's requests pertain to the identification of Defendants' assets from which Plaintiff may recover on his judgment." *See id*.

Sunoco's objections on this issue (specifically objections nos. 1 and 3) can be summed up as: Sunoco owns a lot of assets and therefore it is too difficult to compile all of the information. *See, e.g.,* Obj. at 7-8. That argument sounds a lot like its excuse for not paying the Class the money it owed: it was just too hard. However, the mere fact a company like Sunoco has a large number of assets does not automatically render a document request for an asset hearing overbroad or unduly burdensome.

As Judge West aptly noted, the standard for relevancy in post-judgment enforcement proceedings is different from general pretrial discovery provisions governing the production of documents. Relevant at this juncture is the identification of those assets which may be seized to satisfy the Judgment, and federal courts have observed that "***[b]road*** post-judgment discovery in aid of execution is ***the norm*** in federal ... courts." *Gesualdi v. BKS-NY, LLC*, No. CV 18-1708 (SJF) (AKT), 2019 U.S. Dist. LEXIS 161455, at *5 (E.D.N.Y. Sept. 20, 2019)(emphasis added). "Discovery of a judgment debtor's assets is conducted ***routinely*** under the Federal Rules of Civil Procedure. ... The scope of discovery under Rule 69(a)(2) is constrained principally in that it must be ***calculated to assist in collecting on a judgment***." *See id*. at *6 (emphasis added, citations omitted). The

5

subject requests are specifically tailored towards the goal of identifying which of Sunoco's assets may be seized for enforcement purposes.[1]

Satisfaction of the $155,691,486.00 Judgment will require a detailed understanding of various financial accounts and other information related to Sunoco's vast collection of assets. Therefore, in addition to being authorized by the Oklahoma Supreme Court and federal courts, and confirmed by decades of noncontroversial daily practice in said courts, the type of document production at issue is also authorized by the Court's equitable power to fashion appropriate relief to fit the circumstances and exigencies of this case.

Sunoco previously acknowledged it could easily produce many of the documents at issue. For example, Sunoco admitted that: (1) for cash accounts, "summaries of pertinent information (*i.e.*, total deposits into and total check amounts issued from Defendants accounts from bank statements for the preceding three months)" (Dkt. No. 377 at 8); (2) for oil and NGL volumes, month-end inventories by general location (in Oklahoma) (*see id.*); (3) for accounts receivable, "[s]ummaries of accounts receivable as of year-end 2021 organized by how long the debt has been outstanding" (*see id.* at 9); and (4) the "general schedule of these assets and their book value" (*see id.* at 10) and indication of whether such asset is in Oklahoma or passes through Oklahoma. Yet, Sunoco did not inform this Court

---

[1] Moreover, other than the application of a cognizable privilege, there is no procedural mechanism that permits a party to simply refuse to produce documents. *See* 12 O.S. § 3237(E)("The failure to act as described in this subsection may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order...."); Fed. R. Civ. P. 37(d)(2)(same). By Sunoco's own standards, the information at issue is relevant under Oklahoma law, and Sunoco should not be allowed to avoid compliance simply by filing an Objection.

of this fact. And, Sunoco still has not agreed to produce any such information despite its clear obligation to do so.

Class Representative's request adequately set forth the requisite information and documentation necessary to aid execution of the Judgment. Judge West's Order accurately cited and applied the controlling law regarding post-judgment enforcement proceedings. Sunoco's objections regarding overbreadth and undue burden should be overruled.

**II.  Class Representative's Exhibit A Has Never Been "Superseded"**

Next, Sunoco contends Judge West's Order is clearly erroneous because it purportedly ignored an alternative proposal offered by Class Representative, which Sunoco mischaracterizes as an attempt by Class Representative to "remedy the unwieldy document requests by proposing limitations in several respects." Obj. at 2, 6. To the contrary, after expending considerable time responding to Sunoco's multiple appeals and motions, all of which prolonged these proceedings and delayed enforcement, Class Counsel offered, ***in the interest of time***—five months ago—to pursue the document requests identified in "Exhibit 1" and limit its scope to Sunoco's Oklahoma assets. *See, e.g.,* Dkt. No. 378 at 4, 11-12. However, Class Counsel intended to expedite collecting the Judgment and clearly stated such stipulation was without prejudice. *See id.* at 4. Sunoco, however, ***rejected*** this offer. In fact, the first time Class Counsel heard any response from Sunoco was more than five months later—***the day before*** it filed its Objection. Sunoco has ***never*** offered any counterproposal, evidencing its ongoing intent to produce nothing and further delay these proceedings. Thus, any notion that (1) Class Counsel stipulated the document requests in

Exhibit A were overly broad or (2) Exhibit A was "superseded" by the aforementioned "Exhibit 1" misstates the record.

In the same vein, Sunoco's Certificate of Conference omits material facts.[2] Again, in an effort to avoid any delay in complying with the Court's directive and prevent further gamesmanship from Sunoco, Class Counsel proposed the following solution, without prejudice to Sunoco's ability to later object beyond the 14-day deadline:

- Limit the document requests to identification of Sunoco's Oklahoma assets. For example, if there were any assets that were in Oklahoma that would satisfy the Judgment or work towards satisfying the Judgment (*i.e.*, a bank account, storage facility, terminal or vehicles with sufficient fair market value), Class Counsel asked that Sunoco produce the documents and a witness prepared to identify such assets;

- If Sunoco did not agree to this condition, Class Counsel asked that Sunoco produce those documents identified in Exhibit 1 (not Exhibit A) and the specific requests referenced in Class Representative's Motion for Order to Appear (Dkt. No. 360) to which it had no objection;

- Class Counsel would review the production to determine if it was sufficient to identify assets that could be seized for enforcement purposes. If that production was not sufficient, Class Counsel stated it would inform Sunoco of what additional information was needed, at which time Sunoco could determine whether to provide additional information or stand on its objections;

- If Sunoco decided to stand on its objections, Class Counsel agreed Sunoco would not waive its right to object (to the extent such right was available) based on that objection being asserted beyond the 14-day time period for objections (if applicable); and

- Lastly, Class Counsel unequivocally stated it would ***not*** agree to move the asset hearing unless Sunoco identified its corporate witness and there was a convenience issue that would justify moving the hearing within a couple of days earlier or later.

---

[2] Once again, although the meet and confer was conducted by Sunoco counsel Paul Yetter, the actual Objection is signed by Dan McClure, who purports to attest to the veracity of events he was not privy to.

In fact, Class Representative proposed a similar stipulation in response to Sunoco's earlier objection to producing documents. *See* Dkt. No. 378 at 11-12. Sunoco's Objection omits the foregoing proposal because it is plainly reasonable and resolves any real issues related to compliance. But, complying with the above would not get Sunoco what it truly wants—delay—and, therefore, Sunoco filed its Objection requesting seventy-five more days before an asset hearing occurs.

Based on this record, Judge West's Order cannot be said to constitute "clear error."

### III. Sunoco Has Had Ample Time To Prepare For The Asset Hearing

Sunoco also complains that the Order was clearly erroneous because it allegedly ignores Sunoco's "undisputed" testimony about burden/time and gives inadequate time for witness preparation. Obj. at 7-8. Sunoco conveniently ignores it had nearly five months to prepare for, and comply with, Judge West's directive. Further, in March 2022, the Court told the parties that, in no uncertain terms, enforcement proceedings would resume if mediation efforts were unsuccessful. *See* Dkt. No. 405 at 2. Thus, it should have come as no surprise that, after the 60-day stay expired, Judge West ordered document production and the presentation of a witness. At minimum, Sunoco should have anticipated *some* production would be required because, as Judge West noted, Oklahoma law permits inquiry into the existence of assets sufficient to satisfy a judgment. *See* Dkt. No. 430 at 2 (citing 12 O.S. § 842(B)(3)).

Further, even if Sunoco could be excused for sitting back and doing nothing until Judge West entered the order setting the hearing date, for Sunoco to claim that the *five*

*weeks* since is insufficient to prepare a witness on issues as simple as asset location is not credible. Sunoco is a highly sophisticated company; it should know where its assets are.

Sunoco neither presents any controlling authority nor compelling argument that its witness should be granted more than five weeks to prepare for the asset hearing. As stated above, Sunoco has known for nearly *five months* that such information would be required. Indeed, its own counsel admitted to Judge West that the witness requirement was proper— the only point of contention was *who* the witness would be, and Judge West has permitted Sunoco to present one of its own choosing. Accordingly, this argument should be deemed waived.

Regardless, this contention is unreasonable and inconsistent with similar rules governing the presentation of witnesses. None of the federal rules set a time period as long as five weeks as a default deadline. Even dispositive motions and formal interrogatories provide shorter response periods. *See, e.g.,* Fed. R. Civ. P. 33(b); LCvR 7.1(d) (default 14 day time frame). Oklahoma rules are similar and, with respect to depositions, prescribe "3 days" as sufficient time for an adverse party to prepare. *See* 12 O.S. § 3230(C)(1) ("The notice shall be served in order to allow the adverse party sufficient time, by the usual route of travel, to attend, and *three (3) days for preparation*, exclusive of the day of service of the notice.")(emphasis added). Sunoco employs highly skilled and sophisticated accounting employees and officers who can readily testify about the company's assets.

Sunoco's phased approach to witness preparation is similarly unreasonable. Sunoco asks for a schedule whereby it gets another 45 days to gather basic accounting information (on top of the nearly 180 days it already had), then an additional 30 days to prepare a

witness. Obj. at 10. Why wouldn't Sunoco have an employee who knows where its assets are located? Isn't that the job of the CFO or COO of a publicly traded company? And, certainly, when that Company has (1) lost a significant verdict, (2) lost multiple appeals, (3) had counsel admit to the Court that live testimony at an asset hearing is required and (4) been told by the Court that if mediation was not successful enforcement would be allowed, the CFO or COO knew, or reasonably should have known, that someone at the Company was going to have to answer these questions. To claim be completely unprepared to testify—if such is even true—is inexcusable. In fact, Sunoco's conduct is reminiscent of its behavior during the class certification stage which led to the striking of its expert, Eric Krause. *See, e.g., Cline v. Sunoco, Inc. (R&M)*, 479 F. Supp. 3d 1148, 1167 (E.D. Okla. 2020) (noting "Sunoco had no reasonable justification to delay the production of its historical suspense data and the disclosure of Krause's opinions; it simply hoped that the case would not proceed to trial.").

Lastly, Sunoco claims that the testimony from its witnesses regarding the burden and timing of production and preparation was "undisputed." Obj. at 7-8. But Judge West is permitted to evaluate the credibility of that testimony and Sunoco's arguments about the length of time it would take to comply with simple requests related to assets. *Albrecht v. United States*, 831 F.2d 196, 199 (10th Cir. 1987)("It is within the trial court's discretion to weigh the evidence and to determine the credibility of witnesses."). Sunoco's self-serving affidavits do not mean its objections are sustained simply because Class Representative does not have access to Sunoco's witnesses or the ability to cross examine its affiants.

## IV. Sunoco Should Not Be Permitted To Further Delay These Proceedings

Finally, Sunoco boldly contends a stay of asset discovery is appropriate given its other pending appeals. Respectfully, this request is unbelievable. Just recently this Court expressed concern that Sunoco's retention of the unpaid interest/royalties at issue constituted an "interest free loan of $155,000,000.00." *See* Tr. of Hearing at 16:8-10 (Mar. 31, 2022). Each day that passes is another day the Class goes without proper compensation. Class Representative voiced this very concern when it stated Sunoco's behavior was indicative of its intent to *never* pay the Judgment unless Class Counsel followed through with enforcement proceedings. *See* Dkt. No. 365 at 1.

Despite having a $155,000,000.00 Judgment looming over its head, Sunoco has, in essence, won by losing. For nearly two years, it has had the fortune of keeping its "interest-free loan" and retaining money to which it has no legal entitlement.[3] This Court presciently observed this imbalance when it recited the unlawfulness of Sunoco's conduct: "Sunoco has never even bothered to figure out how much interest it owes to owners. ... Instead, Sunoco simply keeps the money for its own use, knowing two things: that most owners will not request interest, and that eventually the owners' potential claims will die at the hands of the statute of limitations. *And when that happens, Sunoco will have irrevocably pocketed the money.*" *Cline v. Sunoco, Inc. (R&M)*, 479 F. Supp. 3d 1148, 1155 (E.D. Okla. 2020) (emphasis added). Even now, despite not having posted a supersedeas bond or other security to stay enforcement, Sunoco has managed to delay these proceedings without

---

[3] Sunoco *still* has not posted a supersedeas bond or other security to stay enforcement.

12

following the proper protocols to obtain such relief. And, to date, Sunoco still has not identified a single asset located in Oklahoma that would satisfy the $155,691,486.00 Judgment plus the statutory attorneys' fees owed.

As demonstrated in other filings, this Court and the Tenth Circuit Court of Appeals have uniformly rejected Sunoco's ongoing attempts to avoid the Judgment by denying its multiple motions for new trial, motions to alter or amend the Judgment, appeals, and petitions for extraordinary writs. There is simply no good reason to further delay these proceedings and Sunoco makes minimal effort in trying to justify this extreme relief. Sunoco's Objection—in this regard—does not raise anything new, but instead seeks to relitigate old matters of disagreement and assert stale arguments. As such, its request for a stay should be denied as well.

## **CONCLUSION**

Judge West's Order is consistent with controlling law governing execution of judgments and no "clear error" can or should be discerned from its findings. Class Representative respectfully submits that Sunoco's Objection be overruled and the asset hearing and attendant document production be allowed to proceed accordingly.

DATED: August 24, 2022.                    Respectfully submitted,

/s/Bradley E. Beckworth
Bradley E. Beckworth, OBA No. 19982
Jeffrey Angelovich, OBA No. 19981
Andrew G. Pate, OBA No. 34600
Trey Duck, OBA No. 33347
**NIX PATTERSON, LLP**
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
*bbeckworth@nixlaw.com*
*jangelovich@nixlaw.com*
*dpate@nixlaw.com*
*tduck@nixlaw.com*

Susan Whatley, OBA No. 30960
**NIX PATTERSON, LLP**
P.O. Box 178
Linden, Texas 75563
Telephone: (903) 215-8310
*swhatley@nixlaw.com*

Patrick M. Ryan, OBA No. 7864
Phillip G. Whaley, OBA No. 13371
Jason A. Ryan, OBA No. 18824
Paula M. Jantzen, OBA No. 20464
**RYAN WHALEY COLDIRON JANTZEN PETERS & WEBBER PLLC**
400 N. Walnut Ave.
Oklahoma City, OK  73104
Telephone:  405-239-6040
Facsimile:  405-239-6766
*pryan@ryanwhaley.com*
*pwhaley@ryanwhaley.com*
*jryan@ryanwhaley.com*
*pjantzen@ryanwhaley.com*

Michael Burrage, OBA No. 1350
**WHITTEN BURRAGE**
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73103
Telephone: (405) 516-7800
Facsímile: (405) 516-7859
*mburrage@whittenburragelaw.com*

Robert N. Barnes, OBA No. 537
Patranell Lewis, OBA No. 12279
Emily Nash Kitch, OBA No. 22244
**BARNES & LEWIS, LLP**
208 N.W. 60th Street
Oklahoma City, OK  73118
Telephone: (405) 843-0363
Facsimile: (405) 843-0790
*rbarnes@barneslewis.com*
*plewis@barneslewis.com*
*ekitch@barneslewis.com*

Lawrence R. Murphy, Jr., OBA No. 17681
**SMOLEN LAW, PLLC**
611 South Detroit Avenue
Tulsa, Oklahoma 74120
Telephone: (918) 777-4529
Facsimile:(918) 890-4529
*larry@smolen.law*

**CLASS COUNSEL**

**CERTIFICATE OF SERVICE**

I hereby certify that I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send email notification of such filing to all registered parties.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:  August 24, 2022.

*/s/ Bradley E. Beckworth*
Bradley E. Beckworth