**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

PERRY CLINE, on behalf of himself and all
others similarly situated,

       *Plaintiff*,

      v.

SUNOCO, INC. (R&M) and
SUNOCO PARTNERS
MARKETING & TERMINALS, L.P.,

       *Defendants*.

§
§
§
§
§
§
§
§
§
§
§
§
§
§

CASE NO. 6:17-CV-313-JAG

**SUNOCO DEFENDANTS' RESPONSE TO MOTION FOR SANCTIONS**
**(Dkt. 711)**

**TABLE OF CONTENTS**

Page

Table of Authorities .................................................................................................. ii

Introduction ............................................................................................................... 1

Background ................................................................................................................ 3

    I.    Sunoco's defense of this hard-fought, novel litigation wasn't just meritorious, it succeeded in considerable part. .................................................................. 3

    II.    This Court, the Tenth Circuit, and plaintiff himself have already acknowledged that Sunoco acted reasonably in most instances that are now alleged to be sanctionable. ................................................................................................... 6

    III.    Sunoco's positions on other issues about which plaintiff complains were reasonable too, as confirmed by plaintiff's contemporaneous litigation positions—and plaintiff wasn't harmed in all events. ......................................... 9

    IV.    Sunoco took a reasonable path to Supreme Court review in this procedurally complex case. ................................................................................................ 10

Legal Standard ........................................................................................................ 11

Argument ................................................................................................................. 11

    I.    The only monetary sanction plaintiff seeks—"all fees and costs incurred" in this litigation—must be denied as a matter of law. ......................................... 11

    II.    Plaintiff hasn't identified any sanctionable conduct—so nothing in his motion supports any lesser sanction either. ................................................................. 15

        A.    Sunoco's merits defense isn't sanctionable, as confirmed by its results. ............... 17

        B.    Positions a court held to be reasonable—or plaintiff conceded were reasonable—aren't sanctionable. ................................................................. 18

        C.    Matters that were litigated on the merits—for which plaintiff contemporaneously received the full relief he sought—aren't sanctionable. ............ 21

        D.    Waiting to seek certiorari until there's a fully final judgment isn't sanctionable. ............................................................................................... 22

    III.    Non-monetary sanctions against McClure also aren't supportable. ................... 23

Conclusion ............................................................................................................... 25

Certificate of Service .............................................................................................. 26

TABLE OF AUTHORITIES

Page(s)

## Cases

*Acosta v. Paragon Contractors Corp.*,
884 F.3d 1225 (10th Cir. 2018) ...................................................................................................12

*Agency Premium Res., Inc. v. C.K. Patrick, Inc.*,
47 F.3d 1178 (10th Cir. 1995) ....................................................................................................16

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)....................................................................................................................19

*Autorama Corp. v. Stewart*,
802 F.2d 1284 (10th Cir. 1986) ..................................................................................................16

*Baca v. Berry*,
806 F.3d 1262 (10th Cir. 2015) ..................................................................................................15

*Bhd. of Locomotive Firemen & Enginemen v. Bangor & Aroostook R. Co.*,
389 U.S. 327 (1967)....................................................................................................................23

*Biocore Med. Techs., Inc. v. Khosrowshahi*,
1998 WL 919126 (D. Kan. Nov. 6, 1998) ..................................................................................24

*Braley v. Campbell*,
832 F.2d 1504 (10th Cir. 1987) ............................................................................................11, 24

*Butler v. Biocore Med. Techs., Inc.*,
348 F.3d 1163 (10th Cir. 2003) ..................................................................................................24

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016)....................................................................................................................21

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)............................................................................................................ *passim*

*Chung v. Lamb*,
73 F.4th 824 (10th Cir. 2023) .....................................................................................................14

*Cline v. Sunoco, Inc. (R&M)*,
159 F.4th 1171 (10th Cir. 2025) ....................................................................................... *passim*

*Cline v. Sunoco, Inc. (R&M)*,
2023 WL 4946312 (10th Cir. Aug. 3, 2023).................................................................... *passim*

*Cole v. Ruidoso Mun. Sch.*,
43 F.3d 1373 (10th Cir. 1994) ....................................................................................................24

*Farmer v. Banco Popular of N. Am.*,
791 F.3d 1246 (10th Cir. 2015) ............................................................................................14, 16

*FDIC v. Calhoun*,
34 F.3d 1291 (5th Cir. 1994) ......................................................................................................18

*FDIC v. Schuchmann*,
319 F.3d 1247 (10th Cir. 2003) ............................................................................................11, 18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*French v. Am. Airlines, Inc.*,
    427 F. App'x 666 (10th Cir. 2011) ...................................................................24

*Gentile v. State Bar of Nevada*,
    501 U.S. 1030 (1991)........................................................................................25

*Goodyear Tire & Rubber Co. v. Haeger*,
    581 U.S. 101 (2017)..................................................................................... *passim*

*Hamilton v. Boise Cascade Exp.*,
    519 F.3d 1197 (10th Cir. 2008) .................................................................14, 15

*Handloser v. HCL Am., Inc.*,
    2020 WL 6460986 (N.D. Cal. Nov. 3, 2020) .....................................................20, 22

*Int'l Union, UMWA v. Bagwell*,
    512 U.S. 821 (1994)..........................................................................................13

*Janus v. Am. Fed'n of State, Cnty., & Mun. Employees, Council 31*,
    585 U.S. 878 (2018).........................................................................................25

*Johnson v. Gov't Emps. Ins. Co.*,
    No. CIV-07-868-M, Dkt. 711-5 (W.D. Okla. Apr. 14, 2008).................................25

*Kaplan v. Fulton St. Brewery, LLC*,
    2018 WL 2187369 (D. Mass. May 11, 2018).....................................................21

*MLBPA v. Garvey*,
    532 U.S. 504 (2001)..........................................................................................22

*Mountain W. Mines, Inc. v. Cleveland-Cliffs Iron Co.*,
    470 F.3d 947 (10th Cir. 2006) ..................................................................... *passim*

*Obeslo v. Empower Capital Mgmt.*,
    85 F.4th 991 (10th Cir. 2023) ...........................................................................15

*Prod. Credit Ass'n of S. New Mexico v. Alamo Ranch Co.*,
    989 F.2d 413 (10th Cir. 1993) ..........................................................................19

*Rubio v. BNSF Ry.*,
    548 F. Supp. 2d 1220 (D.N.M. 2008) ...............................................................24

*Strack v. Continental Resources, Inc.*,
    507 P.3d 609 (Okla. 2021)................................................................................24

*Takeda Pharmaceutical Co. v. Painters & Allied Trades District Council*,
    No. 25-625 (U.S. Mar 23, 2026)......................................................................10

*Taylor v. Nat'l Collegiate Student Loan Tr., 2007-1*,
    2023 WL 2147332 (10th Cir. Feb. 22, 2023) ....................................................14

*Towerridge, Inc. v. T.A.O., Inc.*,
    111 F.3d 758 (10th Cir. 1997) ..........................................................................17

*Tripati v. Beaman*,
    878 F.2d 351 (10th Cir. 1989) ..........................................................................24

# TABLE OF AUTHORITIES
(continued)

Page(s)

*United States v. Owen*,
  553 F.3d 161 (2d Cir. 2009)................................................................................................19

*Wadsworth v. Walmart Inc.*,
  348 F.R.D. 489 (D. Wyo. 2025) ...................................................................................16, 24

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)............................................................................................................19

*Wooley v. Maynard*,
  430 U.S. 705 (1977)............................................................................................................25

*Yukos Capital S.A.R.L. v. Feldman*,
  977 F.3d 216 (2d Cir. 2020)..........................................................................................11, 16

## Statutes and Rules

28 U.S.C. § 1927................................................................................................... *passim*
Fed. R. Civ. P. 11(c) ..............................................................................................................16
Okla. R. of Prof. Conduct 4.2 ................................................................................................21

## Other Authorities

15 *Moore's Federal Practice* § 101.93................................................................................21

### INTRODUCTION

Plaintiff's request for more than $25 million in "punitive" sanctions—equal to class counsel's fee award for litigating the entire case—cannot be granted.

Nine years ago, in *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017)—a case plaintiff doesn't cite, much less grapple with—the U.S. Supreme Court rejected precisely what plaintiff himself describes (at 19) as the "punitive *sanction* requested here":  an award of all legal fees and costs plaintiff incurred throughout this entire case.  581 U.S. at 103.  As the *Goodyear* Court made clear, bad-faith sanctions under the Court's inherent powers are "limited to the fees the innocent party incurred *solely* because of the misconduct." *Id.* at 104 (emphasis added).  And it vacated an award of "all fees in the litigation" because the award included "fees beyond those resulting from the litigation misconduct." *Id.* at 104, 111.

So too here.  Plaintiff seeks (at 18) "an order shifting all costs and fees incurred by the Plaintiff and the Class in this case."  But he doesn't attempt to make the causal showing required by *Goodyear*—that *all* of his costs and fees were attributable *solely* to the alleged misconduct.  Nor could he.  As this Court and plaintiff have recognized, this case involved many "novel and highly difficult questions," including "a number of significant defenses and legal theories," adding up to "a high risk that the class . . . would not recover."  Dkt. 626 at 5–6, 8–9; Dkt. 614 at 15–19.  And Sunoco's arguments twice prevailed on appeal to the Tenth Circuit.

Plaintiff's motion is surprisingly forthright.  Despite taking a kitchen-sink approach to identifying the alleged misconduct here—from re-raising stale grievances about scheduling orders, privilege logs, and document production, to blunderbuss attacks on the trial, post-trial, and appellate proceedings—plaintiff makes clear that what he's after isn't compensation, it's punishment.  He seeks "punitive sanctions" to "send a message" and punish Sunoco and its lawyer

for defending it.  Mot. 2, 12–14, 18–19, 21.  That concession is fatal.  *Goodyear* makes clear that inherent-authority sanctions (like those sought here) "must be compensatory rather than punitive in nature"—courts "may not impose an additional amount as punishment for the sanctioned party's misbehavior."  581 U.S. at 108.

Plaintiff's omnibus request for "all costs and fees" incurred in the case (at 18)—including fees untethered to any alleged misconduct—rests exclusively on pre-*Goodyear* authority.  For good reason.  It's squarely foreclosed by *Goodyear*:  "A sanctioning court must determine which fees were incurred because of, and solely because of, the [alleged] misconduct at issue."  581 U.S. at 108, 113 ("the fee award . . . may not impose an additional amount as punishment for the sanctioned party's misbehavior").  And that alone requires denying plaintiff's motion.

Plaintiff's motion suffers from a second, even more fundamental flaw—it fails to identify any sanctionable conduct whatsoever.  Despite this Court's invitation, none of the relief plaintiff seeks falls within § 1927, which is limited to monetary sanctions against counsel.  Plaintiff seeks no monetary sanctions against counsel, so § 1927 is wholly inapplicable.  And there's a "high bar" for imposing inherent-authority sanctions.  *Mountain W. Mines, Inc. v. Cleveland-Cliffs Iron Co.*, 470 F.3d 947, 954 (10th Cir. 2006).  Plaintiff must show "bad intent or improper motive," by clear and convincing evidence, to ensure "those with colorable, albeit novel, legal claims" aren't "deterred from testing those claims."  *Id.*

Plaintiff doesn't come close to making that showing with respect to any of his "litigation abuse" allegations—much less all twelve.  *First*, Sunoco's defense wasn't frivolous.  This was a complex, high-stakes, precedent-setting class action involving novel and contentious questions of statutory interpretation.  And Sunoco prevailed on numerous important issues—including three of plaintiff's four claims and punitive damages.  Dkt. 299 at 1–2; *Cline v. Sunoco, Inc. (R&M)*, 159

F.4th 1171, 1205 (10th Cir. 2025).  This Court and plaintiff agreed that the case presented "novel and highly difficult questions," to which Sunoco raised "significant defenses and legal theories." Dkt. 626 at 5–6, 9; Dkt. 614 at 15–16.  Those opinions and admissions defeat plaintiff's effort to recast the defense as so groundless as to be sanctionable.

*Second*, this Court, the Tenth Circuit, and plaintiff himself already acknowledged that most of the purported "abuses" were reasonable positions for Sunoco to take.  *Third*, plaintiff already received the full relief he requested for other issues he now tries to resurrect, confirming no one contemporaneously viewed them as sanctionable, and Sunoco's litigation positions didn't harm plaintiff in all events.  *Fourth*, Sunoco took a reasonable path to Supreme Court review in this procedurally complex case.

Plaintiff also doesn't come near justifying non-monetary sanctions against Dan McClure, one of Sunoco's lawyers.  Plaintiff paints with an extraordinarily broad brush—refusing to identify the specific, sanctionable conduct in which McClure engaged or tie that conduct to the remedies he seeks.  McClure has not been lead counsel in this case since November 2019, and the record, confirmed by McClure's attached declaration, demonstrates good-faith advocacy.

Plaintiff's motion fails at every step.  *Goodyear* forecloses his requested relief (all fees incurred in this case); the record forecloses any finding of sanctionable conduct; and plaintiff offers no basis on which to sanction McClure personally.  The motion should be denied.

BACKGROUND

I.    **Sunoco's defense of this hard-fought, novel litigation wasn't just meritorious, it succeeded in considerable part.**

This high-value class action presented challenging legal and factual issues that Sunoco litigated in good faith.[1]  Plaintiff asserted four causes of action:  (1) "breach of statutory obligation

---

[1]  *Contra* plaintiff's grievance no. 8 (at 7).

to pay interest," (2) "fraud," (3) "accounting and disgorgement," and (4) "injunctive relief." Dkt. 2-2 at 9–12 (capitalization altered).

Plaintiff won his statutory claim and lost the other three claims. Plaintiff alleged that Sunoco violated Oklahoma's Production Revenue Standards Act by failing to pay interest absent a demand for payment—an unresolved question of statutory interpretation. The Court ultimately agreed with plaintiff's reading of the statute and awarded actual and punitive damages. Dkt. 299 at 1. The Court rejected plaintiff's other claims—concluding Sunoco didn't commit fraud and denying plaintiff's requests for an accounting, disgorgement, and a permanent injunction. Dkt. 299 at 1–2.

Despite plaintiff's position today that Sunoco never should've defended itself, when class counsel sought to support their fee request for 40 percent of the class's recovery in 2023, they affirmatively argued that the "issues of Oklahoma oil and gas law" in this case were "difficult and highly contested." Dkt. 614 at 15–16. They also acknowledged that Sunoco's "highly skilled defense counsel" "spared no effort in the defense of their client," mounting a "vigorous opposition" based on "a number of significant defenses and legal theories that Class Counsel had to overcome," which made this case "exceptional[ly]" complex—"even for class actions." Dkt. 614 at 15–19. The Court agreed, noting that "this litigation presented novel and highly difficult questions"— including "the burden of proof regarding the appropriate rate"—creating "a high risk that the class . . . would not recover." Dkt. 626 at 5–6, 8–9.

Sunoco prevailed on multiple important issues on appeal to the Tenth Circuit. Sunoco several times argued that the Court's adverse orders didn't meet all requirements of a final judgment, and the Tenth Circuit ultimately agreed. *Cline v. Sunoco, Inc. (R&M)*, 2023 WL 4946312, at *1 (10th Cir. Aug. 3, 2023) (detailing history of appeals and holding "the district

court's allocation plan satisfies neither finality requirement"—allocating damages among class members and disposing of unclaimed funds).

Sunoco appealed again to challenge the judgment on its merits. Although the Tenth Circuit affirmed the $103 million actual-damages award, it vacated the $75 million punitive-damages award, erasing nearly half the judgment. *Cline*, 159 F.4th at 1179, 1205.[2] The dissenting circuit judge would also have drastically cut the actual-damages award on the basis that Oklahoma law doesn't authorize statutory interest to accrue after the underlying proceeds are paid. *Cline*, 159 F.4th at 1206–07 (Moritz, J., concurring in part and dissenting in part).

Seeking (at 7, 20) to increase his recovery by another $25 million, plaintiff now abandons his 2023 position that this was a challenging and hard-fought case that presented novel legal issues and instead argues that "Sunoco's entire legal defense to the interest claims was frivolous."

Plaintiff's sanctions motion began as a narrow grievance about events that occurred during the 90 days after the Tenth Circuit's November 2025 decision. In February, plaintiff sought sanctions for alleged "misrepresentations" surrounding the timing of Sunoco's petition for U.S. Supreme Court review. Dkt. 690 at 3–5 (arguing Sunoco "injected further delay into paying the rightful owners of the judgment"). The Court invited plaintiff to move for sanctions and also directed him to "submit a brief and any supporting documentation addressing liability under § 1927." Dkt. 708 at 9–10.

Plaintiff barely takes up that invitation. He devotes only four paragraphs to events after the Tenth Circuit's decision. And he declines to seek any relief authorized by § 1927, not trying to identify any attorney conduct that "unreasonably and vexatiously" multiplied proceedings—the

---

[2] En route to securing that relief, Sunoco filed other appeals to ensure it could present its arguments if this Court's prior orders were held to be final. *See Cline*, 2023 WL 4946312, at *1–2.

less demanding standard compared with sanctions under a court's inherent powers.  Instead, plaintiff devotes his sanctions motion to airing a plethora of grievances about how this case was litigated from its inception in October 2017—nearly nine years ago.

## II.    This Court, the Tenth Circuit, and plaintiff himself have already acknowledged that Sunoco acted reasonably in most instances that are now alleged to be sanctionable.

Plaintiff seeks sanctions for Sunoco's litigation positions and decisions already established as reasonable.

*Appeals.*[3]  Plaintiff now seeks sanctions (at 9) for what he calls a "frenetic string of appeals designed to cause unnecessary delay."  But the Tenth Circuit ruled *for Sunoco* multiple times on appeal—agreeing that the allocation plan wasn't a final judgment and that the $75 million punitive-damages award couldn't stand.  *Cline*, 2023 WL 4946312, at *6–7; *Cline*, 159 F.4th at 1203–05.

And this Court already rejected plaintiff's effort to sanction Sunoco's (successful) requests for a final judgment.  When Sunoco made those finality arguments in 2022, plaintiff moved to "strike" Sunoco's motion and to "sanction" and "disciplin[e]" Sunoco and its counsel for filing it.  Dkt. 379 at 1, 11, 13–14.  Then, as now, plaintiff asserted (and Sunoco corrected) the misconception that McClure was participating in the case pro hac vice, seeking to revoke that status.  *Id.* at 14; Dkt. 391 at 20–21.  The Court denied all of the requested sanctions, explaining: "I am not going to strike their briefs and I am not going to sanction anybody"—"I may disagree with things and you may disagree with things . . . and that's fine.  That's why we have courts."  Dkt. 406 at 19, 32.  Consistent with the Court's view that reasonable disagreement was possible, the Tenth Circuit then proceeded to agree that Sunoco's position—which plaintiff argued was sanctionable—was legally correct.  *Cline*, 2023 WL 4946312, at *1.

---

[3]  Plaintiff's grievance no. 11 (at 9).

***Bifurcation, document productions, suspense data, and expert witnesses.***[4]    Plaintiff contends (at 3) Sunoco "misrepresented" whether discovery had been "bifurcated" between class and merits issues during the scheduling-order process.  But Sunoco didn't seek "bifurcation" in the scheduling order, the Court didn't grant bifurcation, and Sunoco's position didn't change.  *See* Dkt. 29 at 5 (Sunoco arguing that "the Court is ***not*** now ruling on the issue of bifurcated discovery") (emphasis added).  Plaintiff concedes (at 3) that the Court *agreed* with Sunoco's proposal.  Dkt. 33 at 1 (Court's scheduling order, which neither required nor prohibited merits discovery and explained that the "deadline for all merits discovery will be set ***after*** a court decision on class certification") (emphasis added).  When plaintiff later asserted Sunoco had treated discovery as bifurcated, Sunoco explained it instead objected to the proportionality of certain discovery requests, for which plaintiff was free to seek the Court's review but didn't.  Dkt. 269 at 670–71 (trial discussion of proportionality objections and plaintiff's burden to move to compel if he disagreed).

Plaintiff also complains (at 4) about a so-called document dump in 2018, which consisted of 155 documents—largely Oklahoma Mineral Interest Reports.  Dkt. 37 at 12.  Plaintiff objected to the production and sought an extension of the discovery deadline, which this Court granted. Dkt. 36.  Plaintiff didn't seek (and the Court didn't contemplate) any other remedy, which confirms that, at the time, no one in this case viewed the production as problematic beyond the need for an extension (much less sanctionable).  Dkt. 36; Dkt. 39.

Plaintiff next takes issue (at 6–7) with when the suspense code data, the expert analysis built on it, and related expert testimony were produced.  Not only did plaintiff not seek sanctions contemporaneously, he acknowledged at trial that he never even secured a ruling on his motion to

---

[4]  Plaintiff's grievance nos. 1–2, 5, 7 (at 3–4, 6–7).

compel this data. *See* Dkt. 269 at 674–75 (responding to the Court's inquiry: "why didn't you move to compel this sooner?"). Plaintiff did take issue with the expert's analysis and testimony. And he received all the contemporaneous remedial measures he sought—the Court excluded the testimony of Sunoco's expert, Eric Krause, in full. Dkt. 298 at 19–25.

And when plaintiff sought sanctions on this exact ground two years after trial, the Court declined to grant further relief. Dkt. 379 at 13 (seeking sanctions for Sunoco's failure "to timely disclose its primary expert's opinions"); Dkt. 404 (denying sanctions motion).

***Privilege log.***[5] In reviving his grievances about Sunoco's privilege log, plaintiff quotes (at 4) his own attorney's argument from the hearing transcript, but fails to mention that the magistrate judge rejected his argument and held that Sunoco's operative privilege log was sufficient to assert the privilege. Dkt. 54 at 6, 31 ("I'm not going to deem the privilege waived at this time.").

***Payment tendered to Cline and motion to dismiss.***[6] Plaintiff also re-urges (at 5–6) his position that Sunoco wrongfully tendered payment to Cline for the amount of his interest claims and filed a corresponding motion to dismiss the case as moot. Dkt. 103. Sunoco viewed the motion as reasonable and well-grounded in authority for the reasons McClure explains in his declaration at ¶¶ 42–50. Plaintiff first asserted this complaint in his opposition to Sunoco's motion to dismiss. And he received the only remedy he sought: the Court denied Sunoco's motion to dismiss on the ground that the tender didn't resolve Cline's equitable claims. Dkt. 122 at 7.

And, when plaintiff sought sanctions two years later for this same conduct (tendering payment to Cline), the Court declined to impose sanctions. Dkt. 379 at 13 (seeking sanctions

---

[5] Plaintiff's grievance no. 3 (at 4).

[6] Plaintiff's grievance no. 4 (at 5–6).

against McClure for "trying to 'pick off' Class Representative in a 'last ditch' effort to moot this case"); Dkt. 404 (denying plaintiff's motion).

### III. Sunoco's positions on other issues about which plaintiff complains were reasonable too, as confirmed by plaintiff's contemporaneous litigation positions—and plaintiff wasn't harmed in all events.

Plaintiff asserts (at 6–10) a litany of complaints about Sunoco's motion to clarify the class definition and some of Sunoco's positions in post-trial and appellate briefing. The contemporaneous record—the parties' briefing and the Court's rulings—conclusively refutes any suggestion that Sunoco's conduct was sanctionable or in bad faith. Plaintiff engaged with Sunoco's arguments on the merits, there was no suggestion from anyone of sanctions, and none of the purported misstatements caused any harm in all events.

***Motion to clarify the class definition.***[7] Plaintiff takes issue (at 6) with Sunoco's pretrial motion to clarify whether owners with unclaimed property were class members. Sunoco's motion, which plaintiff opposed on its merits, relied on ample, valid authority. *See* Dkt. 172. Plaintiff didn't otherwise take issue with Sunoco's motion, which the Court ultimately denied—granting plaintiff everything he sought. *See* Dkt. 177; Dkt. 298 at 5; 159 F.4th at 1183–84.

***Post-trial and appellate briefing.***[8] Relying on partial quotations, plaintiff contends (at 8–9) that Sunoco's post-trial and appellate briefing contained factual misrepresentations. Closer inspection reveals, however, that the statements plaintiff complains about are really arguments—and even then, he just identifies three problematic sentences in 36 pages of post-trial briefing. Dkt. 322; Dkt. 323. The parts of Sunoco's Tenth Circuit brief that plaintiff complains about (at 9) deal exclusively with issues Sunoco "was not even appealing." Plaintiff responded to Sunoco's

---

[7] Plaintiff's grievance no. 6 (at 6).

[8] Plaintiff's grievance nos. 9–10 (at 8–9).

arguments on the merits. The Court similarly addressed Sunoco's arguments on the merits, ultimately denying relief. Dkt. 349. On appeal, the Tenth Circuit reached a mixed decision—agreeing with some of plaintiff's arguments and some of Sunoco's. 159 F.4th at 1203–05.

**IV.     Sunoco took a reasonable path to Supreme Court review in this procedurally complex case.**

Sunoco took a reasonable approach after the Tenth Circuit's November 2025 decision.[9] The Tenth Circuit affirmed as to several issues but vacated the $75 million punitive-damages award. *Cline*, 159 F.4th at 1205. It remanded the case on November 17, 2025 for this Court to amend the judgment. *Id.* Two days after this Court amended its judgment, Sunoco appealed what was then a truly final judgment. Dkt. 686; Dkt. 689.

Sunoco sought to preserve its ability to benefit from a potential Supreme Court decision changing the law or, at minimum, to seek Supreme Court review in a non-interlocutory posture. Mot. to Abate 4–5, No. 26-7014 (10th Cir. Mar. 12, 2026). The Supreme Court was considering a petition for certiorari in *Takeda Pharmaceutical Co. v. Painters & Allied Trades District Council*, No. 25-625 (U.S. pet'n for cert. denied Mar. 23, 2026), that presented relevant class certification issues. *Id.*

Plaintiff never moved to dismiss the appeal. Instead, when the Supreme Court denied certiorari in *Takeda*, Sunoco moved for summary affirmance, which plaintiff didn't oppose, so it could seek U.S. Supreme Court review of the final judgment in this case. *See* Pl's. Resp. to Mot. to Abate 2, No. 26-7014 (10th Cir. Mar. 23, 2026) ("Summary affirmance is appropriate"). The Tenth Circuit summarily affirmed the amended judgment just over a month after Sunoco had noticed its appeal. Order, No. 26-7014 (10th Cir. Mar. 30, 2026).

---

[9] *Contra* plaintiff's grievance no. 12 (at 10–11).

## LEGAL STANDARD

The Court has the inherent authority to shift a party's attorney fees caused by the bad-faith misconduct of the other party.  Inherent power to shift fees is "limited to . . . the fees that [the movant] would not have incurred but for the bad faith."  *Goodyear*, 581 U.S. at 104.

"A party acts in bad faith only when the claim brought is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons."  *FDIC v. Schuchmann*, 319 F.3d 1247, 1250 (10th Cir. 2003).  A finding of bad faith—which must be made by clear and convincing evidence—"requires more than a mere showing of a weak or legally inadequate case" and isn't established "by findings of negligence, frivolity, or improvidence."  *Id.* at 1252; *see also Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020) ("clear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power").

Section 1927 authorizes sanctioning an attorney by requiring him to pay "the excess costs, expenses, and attorneys' fees reasonably incurred because of [his unreasonable and vexatious] conduct."  28 U.S.C. § 1927; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47–48 (1991).  The standard for sanctions under § 1927 is conduct that, "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."  *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987).

## ARGUMENT

I.    **The only monetary sanction plaintiff seeks—"all fees and costs incurred" in this litigation—must be denied as a matter of law.**

Plaintiff seeks (at 18) a single monetary sanction:  an order requiring Sunoco to pay "all costs and fees incurred by the Plaintiff and the Class in this case."  He defines that amount as the

same fee award class counsel received—25 percent of the $103 million common fund—plus $1.5 million in litigation expenses and $500,000 as a case-contribution award for the named plaintiff.

Plaintiff's request—for what he concedes (at 18) are "punitive sanctions"—must be denied for the reasons laid out in *Goodyear*.  He seeks *all* fees incurred throughout this entire litigation, but he hasn't shown—and can't show—that "literally everything" Sunoco did—its "'entire course of conduct' throughout, and indeed preceding, the litigation—was 'part of a sordid scheme' to defeat a valid claim."  581 U.S. at 110 (quoting *Chambers*, 501 U.S. at 51, 57).

Section 1927 can't support an *all-fees* sanction against a *party*.  Plaintiff admits (at 11) that § 1927 is "limited, both in terms of who it targets and the extent of the sanctions it authorizes."  It applies only to attorneys and other persons admitted to conduct cases before the court.  Mot. 11; 28 U.S.C. § 1927.  And it authorizes only "excess" fees "reasonably incurred because of" the attorney's unreasonable and vexatious multiplication of proceedings.  Mot. 12 (quoting 28 U.S.C. § 1927).  That undisputed standard defeats any § 1927 basis for the requested sanction.

Plaintiff hasn't made—and can't make—the showing required to impose a $25 million sanction against Sunoco under the Court's inherent powers.  He seeks to recover the entire cost of litigating this case but hasn't tried to—and can't as a matter of law—show that the full cost (or even a portion of the cost) of litigating the case was "incurred because of, and solely because of, the [alleged] misconduct at issue."  *Goodyear*, 581 U.S. at 104, 113 (inherent-powers sanction limited to "fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith"); *see also Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1240 (10th Cir. 2018) (applying *Goodyear*'s "but-for test").

Rather than identify which fees were incurred solely because of Sunoco's alleged litigation abuses, plaintiff asks the Court (at 18) to award him "all costs and fees incurred" in this case.  He

doesn't identify which fees were caused by what alleged misconduct, subtract out the fees incurred on issues Sunoco won, or propose an award of anything less than "all costs and fees."  Much of class counsel's work in this novel and complex class action had nothing to do with any so-called litigation abuse about which plaintiff now complains—for example, work predating Sunoco's answer, on class certification, on trial preparation, or on appeals Sunoco won in part or in full. Plaintiff instead tells the Court (at 14, 18–19) that there's no need to "tailor the sanction to the particular wrong" on the ground that "punitive sanctions" are "necessary to send a message to Sunoco."

But that's precisely the approach *Goodyear* rejected:  "sanction[s], when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature."  581 U.S. at 108.  If "an award extends further than that—to fees that would have been incurred without the misconduct— then it crosses the boundary from compensation to punishment."  *Id.*  Punitive sanctions like those plaintiff requests can be awarded only following criminal-type procedures, including proof beyond a reasonable doubt—which plaintiff doesn't request.  *Id.* at 108 (citing *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821 (1994)).

Plaintiff's only case that shifts all fees incurred from the start of a suit—*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)—just serves to highlight why that approach is impermissible here.  As *Goodyear* explained, the all-fee award was permissible in *Chambers* "because literally everything the defendant did—'his entire course of conduct' throughout, and indeed preceding, the litigation—was 'part of a sordid scheme' to defeat a valid claim."  581 U.S. at 110 (quoting 501 U.S. at 51, 57).[10]  So the district court reasonably could "conclude that all legal expenses in

---

[10]  Chambers, after receiving notice on a Friday that NASCO would file suit and seek a temporary restraining order on Monday, "acted to place the properties at issue beyond the reach of the District

the suit" were caused solely by the defendant's misconduct.  581 U.S. at 110.  Similarly, *Goodyear* suggests that if "a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior," then such a "blanket award" could be permissible.  *Id*. But that's "only because all fees in the litigation . . . meet the applicable test:  They would not have been incurred except for the misconduct."  *Id*. at 111.

That simply isn't the case here, even considering together all twelve "litigation abuses" plaintiff complains about—and even assuming each constitutes sanctionable misconduct (none does).  That's because, to recover all his fees, plaintiff needs to show that he wouldn't have incurred *any* fees absent that alleged misconduct—something he can't do.  *See Goodyear*, 581 U.S. at 113 ("A sanctioning court must determine which fees were incurred because of, and solely because of, the misconduct at issue (however serious, or concurrent with a lawyer's work, it might have been)").[11]

Strip away every privilege-log complaint, discovery dispute, trial objection, and appellate-delay theory, and this case still exists and involves difficult, meritorious issues the parties need to litigate—as plaintiff himself has conceded.  Dkt. 614 at 15–16 (describing Sunoco's "significant defenses and legal theories"); *see also* Dkt. 626 at 5–6, 9.  The issues that would still need to be litigated include novel and disputed statutory-interpretation issues, class-certification issues, trial,

---

Court" by arranging a related-party transaction before the case even began, followed by other sanctionable acts.  501 U.S. at 36.

[11]  None of plaintiff's Tenth Circuit cases affirm an award of all fees incurred litigating a case. *Chung v. Lamb*, 73 F.4th 824, 828–29 (10th Cir. 2023) (partial fee sanction because attorney spent "extraordinary energy . . . to conceal herself as the [case's] real party in interest"); *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1258 (10th Cir. 2015) (partial fee sanction because self-represented party breached and refused to pay settlement agreement); *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1199 (10th Cir. 2008) (partial fee sanction for motion to enforce settlement agreement that misrepresented opposing party's unwillingness to pay); *Taylor v. Nat'l Collegiate Student Loan Tr., 2007-1*, 2023 WL 2147332, at *2 (10th Cir. Feb. 22, 2023) (partial fee sanction for "falsely raising a claim for identity theft").

post-trial proceedings, finality, punitive damages, and appeal.[12]  The Court itself acknowledged as much, observing that "this case presented a high risk that the class . . . would not recover." Dkt. 626 at 8.

Sunoco mounted a well-supported defense to plaintiff's complex class-action lawsuit, which involved substantial legal and factual disputes.  There's no evidence to support a finding that all fees plaintiff incurred litigating this case—from complaint to class certification, through trial and two appeals—were caused solely (or at all) by sanctionable misconduct.

## II.    Plaintiff hasn't identified any sanctionable conduct—so nothing in his motion supports any lesser sanction either.

Holding to the side plaintiff's inability to support his request for a sanction award exceeding $25 million, his motion suffers from an even more fundamental problem:  Plaintiff hasn't identified any sanctionable conduct by either Sunoco or its lawyers.

The sanctions plaintiff seeks—monetary sanctions against Sunoco and non-monetary sanctions against its attorney, McClure—can be awarded only under this Court's inherent authority.  *See Chambers*, 501 U.S. at 47–48 (section 1927 covers only monetary sanctions against lawyers, not monetary sanctions against clients or non-monetary sanctions against lawyers).[13]

---

[12]  *Goodyear* forecloses any argument that Sunoco's alleged misconduct was so pervasive or egregious that it made the misconduct the but-for cause of all plaintiff's legal fees.  581 U.S. at 114 (rejecting argument that alleged discovery misconduct "so permeated" suit it justified awarding all fees—because sanctions cannot reimburse fees plaintiff "would have paid . . . even had the company behaved immaculately in every respect").

[13]  Plaintiff hasn't made (and can't make) the showing required under § 1927 in all events.  As the Tenth Circuit has explained, the standard for shifting fees under § 1927 is "extreme"—courts "strictly construe[ ]" it to avoid "dampen[ing] the legitimate zeal of an attorney in representing his client."  *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015).  That class counsel and the Court engaged with Sunoco's arguments on the merits—and that there were no contemporaneous suggestions that its arguments were unreasonable, meritless, or vexatious—only confirm that § 1927 wasn't violated.  *See Obeslo v. Empower Capital Mgmt.*, 85 F.4th 991, 1008 (10th Cir. 2023) (reversing § 1927 sanction given that "the court itself did not realize [counsel's claims] lacked merit when presented with the same evidence and arguments").  And plaintiff identifies no

---

To support sanctions under the Court's inherent authority, plaintiff must show by clear and convincing evidence that a party or attorney acted with subjective "bad intent or improper motive." *Mountain W. Mines*, 470 F.3d at 954; *see also Autorama Corp. v. Stewart*, 802 F.2d 1284, 1288 (10th Cir. 1986); *Yukos Capital*, 977 F.3d at 235.

As plaintiff's own cases demonstrate, the kind of misconduct that supports inherent-power sanctions is exceptional—fraud on the court, citing AI-fabricated cases, willful violation of court orders, or obstructing a settlement the party itself signed. *See*, *e.g.*, *Chambers*, 501 U.S. at 35–42; *Farmer*, 791 F.3d at 1250–52; *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 493–94 (D. Wyo. 2025). Plaintiff's principal case underscores why sanctions are insupportable here: in *Farmer*, the Tenth Circuit affirmed *partial-fee* sanctions against a party who reneged four times on his own settlement agreement. 791 F.3d at 1250–53. Here, by contrast, Sunoco litigated genuinely unsettled questions of Oklahoma statutory law, prevailed on three of four claims, and secured a $75 million appellate reversal.[14]

The record shows that Sunoco's conduct—raising substantial defenses, real appellate wins, and disputes the Court managed and resolved in real time—bears no resemblance to those types of egregious misconduct. Instead, plaintiff has collected a hodgepodge of other grievances dating back nearly a decade. Nothing in plaintiff's list of twelve "litigation abuses" demonstrates bad faith by Sunoco or its attorneys. As the Court's records and docket confirm, this nine-figure,

---

"excess" fees attributable to any specific attorney's conduct in all events. *Cf. Hamilton*, 519 F.3d at 1204.

[14] Plaintiff's discussion and citation of Rule 11 doesn't help him because he makes no request for sanctions under that standard and couldn't meet it in all events—he hasn't met the Rule's procedural requirements, Fed. R. Civ. P. 11(c), and has waived any Rule 11 sanctions by delay. *See Agency Premium Res., Inc. v. C.K. Patrick, Inc.*, 47 F.3d 1178, 1178 (10th Cir. 1995) (unpublished) (affirming denial of sanctions because "four-month delay in filing the motion was unreasonable").

complex class action, which involved novel questions of Oklahoma law, was hard fought by competent lawyers who zealously represented their respective clients.

### A.    Sunoco's merits defense isn't sanctionable, as confirmed by its results.

Sunoco prevailed on three of plaintiff's four claims and twice prevailed on appeal—to remove almost half the monetary judgment and to correct the judgment's completeness and finality.  Dkt. 299 at 1–2; *Cline*, 2023 WL 4946312, at *1; *Cline*, 159 F.4th at 1205.  A Tenth Circuit judge further agreed with Sunoco that part of the actual-damages award should be vacated, confirming the strength of Sunoco's position beyond areas it prevailed in.  *Cline*, 159 F.4th at 1206–07 (Moritz, J., concurring in part and dissenting in part).  This Court agreed that "this litigation presented novel and highly difficult questions"—including "the burden of proof regarding the appropriate rate," creating "a high risk that the class . . . would not recover."  Dkt. 626 at 5–6, 8–9.  Sunoco's defense of the case was reasonable, not sanctionable.[15]

Sanctions also can't serve as a second recovery for the underlying violation.  Inherent-power sanctions turn on "how the parties conduct themselves *during the litigation*," and are designed to remedy an "abuse of judicial process rather than the original wrong."  *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 766 (10th Cir. 1997).  So plaintiff's reliance (at 1, citing Dkt. 298 at 43) on the Court's statement that Sunoco followed an industry practice of withholding interest until a demand for payment falls flat.  The judgment in this case already compensates plaintiff for that injury.  The class can't recover again simply because Sunoco defended its practice during the lawsuit that adjudicated the practice's validity.  *See Towerridge*, 111 F.3d at 766.

Plaintiff's effort to recast a vigorous and partially successful defense as frivolous bad faith is further undermined by his counsel's own inconsistent position.  To justify their fee in 2023,

---

[15]  *Contra* plaintiff's grievance no. 8 (at 7–8).

class counsel told the Court that the case involved "difficult and highly contested issues of Oklahoma oil and gas law," that Sunoco mounted "vigorous opposition" through "significant defenses and legal theories," and that Sunoco was "represented by skilled class-action defense attorneys who spared no effort in the defense of their client." Dkt. 614 at 15–16, 18–19. Class counsel obtained an enhanced fee award in part *because* of the quality and difficulty of the liability issues and the skilled opposition they faced. *See* Dkt. 626 at 5–6, 8–9. That same conduct can't now be characterized as meritless and in bad faith solely to extract an additional $25 million— especially given the Tenth Circuit's admonition that courts must "guard against the application of hindsight" in assessing sanctions. *Schuchmann*, 319 F.3d at 1251 (quoting *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994)).

### B.    Positions a court held to be reasonable—or plaintiff conceded were reasonable—aren't sanctionable.

Post-hoc reasoning doesn't justify imposing sanctions on positions that were concededly reasonable at the time. *See Schuchmann*, 319 F.3d at 1251. Issues Sunoco won, or which plaintiff or the court has already acknowledged were reasonable, can't meet the standard for imposing sanctions. *Id.* at 1250–52 (bad faith "requires more than a mere showing of a weak or legally inadequate case" and isn't established "by findings of negligence, frivolity, or improvidence").

*Appeals.*[16] The Tenth Circuit granted Sunoco significant relief in two separate appeals— holding that the allocation plan wasn't a final judgment and that the $75 million punitive-damages award couldn't stand. *Cline*, 2023 WL 4946312, at *6–8; *Cline*, 159 F.4th at 1202–05.

And the Court can't sanction Sunoco for procedurally proper protective appeals that (correctly) recognized the judgment wasn't final but nevertheless sought to preserve Sunoco's

---

[16]  Plaintiff's grievance no. 11 (at 9–10).

right to appeal in the event the Tenth Circuit disagreed.[17]    That's zealous advocacy, not sanctionable misconduct—particularly given that the Tenth Circuit ultimately agreed with Sunoco on multiple appellate issues.

This Court already rejected plaintiff's efforts to sanction Sunoco's (ultimately successful) finality arguments.  Dkt. 406 at 19, 32 ("I am not going to strike their briefs and I am not going to sanction anybody"—"I may disagree with things and you may disagree with things . . . and that's fine.  That's why we have courts.").  Our justice system encourages and requires zealous advocacy.

***Bifurcation, document productions, suspense data, and expert opinions.***[18]  There was no misrepresentation about bifurcation.  At every stage, Sunoco correctly represented that the Court needn't "bifurcate" discovery, but that ordinary limits like proportionality—including whether full merits discovery must be produced before a class is even defined—still apply.  Dkt. 269 at 670–71 (trial discussion of proportionality objections and plaintiff's burden to move to compel if he disagreed).  Any purported representation about a preferred schedule was also immaterial, and caused no harm to plaintiff, once the Court had adopted a scheduling order.  *See* Dkt. 33 at 1 (scheduling order neither required nor precluded merits discovery in advance of class certification); McClure Decl. ¶¶ 25–29.[19]

---

[17]  *See Prod. Credit Ass'n of S. New Mexico v. Alamo Ranch Co.*, 989 F.2d 413, 417 (10th Cir. 1993) (party "reasonably filed a protective notice of appeal which ripened upon final judgment"); *United States v. Owen*, 553 F.3d 161, 164 (2d Cir. 2009) ("there was, technically, no need to file a notice of appeal at that time" before final judgment, but court "d[id] not doubt, however, the good faith of [ ] appellate counsel in filing a 'protective' notice of appeal").

[18]  Plaintiff's grievance nos. 1–2, 5, 7 (at 3–4, 6–7).

[19]  To the extent plaintiff suggests bifurcating discovery would have been improper, he's wrong. *See* Dkt. 269 at 662 (class counsel suggesting at trial that the Court "can't bifurcate discovery anymore after the *Walmart* case . . . because it's completely intertwined").  *Wal-Mart* simply held that the "rigorous analysis" required by Rule 23 "will entail some overlap with the merits," not that certification-stage and merits discovery must always proceed as one.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *see Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S.

---

The 2018 document production was reasonable at the time. Plaintiff already raised the issue and declined to seek any sanctions. Dkt. 36. The Court granted an extension and awarded no sanctions. Dkt. 39. No one contemporaneously viewed the modest 155-document production 31 days before the discovery deadline as sanctionable, and plaintiff wasn't harmed because he then moved for and received a full remedy via extending the discovery deadline.

The suspense code data, the expert analysis built on it, and related expert testimony were reasonably offered and disclosed. Plaintiff deliberately stopped pursuing the suspense data during discovery. Dkt. 269 at 674–75 ("[w]e did file a motion to compel" but didn't secure a "rul[ing] on this specific issue"). He sought no sanction at the time, and he confirmed he wasn't harmed by Sunoco's position. *Id.* at 676 ("we don't feel handicapped" because data related to "an issue that is [Sunoco's] burden"). The Court excluded the opinions of Sunoco's expert, Krause. Dkt. 298 at 19–25. The Court already declined to sanction Sunoco for "fail[ing] to timely disclose its primary expert's opinions." Dkt. 379 at 13; Dkt. 404 (denying motion to strike and for sanctions).

Plaintiff's reliance (at 1, 6, 7, 19) on the Tenth Circuit's statement that "Sunoco and its counsel engaged in litigation obstruction," 159 F.4th at 1183, misses the mark. That statement just describes discovery disputes that this Court managed in real time through scheduling orders and evidentiary rulings—and which weren't appealed or assessed either way by the Tenth Circuit. *See id.* ("Sunoco, however, does not actually appeal any of the discovery deadlines, the case scheduling order, or the trial date"). It lends no support to the contention that Sunoco or its counsel acted in bad faith. *See Mountain W. Mines*, 470 F.3d at 954 (requiring "subjective wrongdoing" even beyond positions "stretch[ing] the bounds of reason"); *Handloser v. HCL Am., Inc.*, 2020 WL

---

455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage"). Courts still routinely bifurcate discovery in class actions.

6460986, at *5 (N.D. Cal. Nov. 3, 2020) (declining to grant monetary sanctions because court had "already remedied the prejudice" through ordinary litigation rulings).

***Privilege log.***[20] The magistrate judge who examined the issue already held that Sunoco's privilege log was sufficient to assert the privilege and declined to sanction it. Dkt. 54 at 31 ("I'm not going to deem the privilege waived at this time").

***Payment tendered to Cline and related motion to dismiss.***[21] Sunoco took a reasonable position: as described in the motion, ample authority supported tendering payment to satisfy a claim this way. Dkt. 103 at 6–12; *see Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016) ("reserv[ing]" decision on whether claim was mooted if "defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff"); 15 *Moore's Federal Practice* § 101.93[4][b] (approving tender of payment); *Kaplan v. Fulton St. Brewery, LLC*, 2018 WL 2187369, at *3, *8 (D. Mass. May 11, 2018) (holding individual and class claims moot where defendant fully satisfied two named plaintiffs' individual damages).[22] The Court denied Sunoco's motion to dismiss, giving plaintiff all the relief he sought. A reasonable legal position isn't transformed into bad faith because the Court rejects it. *See* Dkt. 404 (denying sanctions for so-called pickoff attempt); Dkt. 379 at 12–13 (motion to strike and for sanctions).

### C. Matters that were litigated on the merits—for which plaintiff contemporaneously received the full relief he sought—aren't sanctionable.

Courts resolve disputes that arise during litigation by ruling on motions and providing other, real-time relief as appropriate (extending deadlines, excluding evidence, etc.). Those rulings

---

[20] Plaintiff's grievance no. 3 (at 4–5).

[21] Plaintiff's grievance no. 4 (at 5–6).

[22] There is also, of course, no rule against a litigation party communicating with another party. *E.g.*, Okla. R. of Prof. Conduct 4.2, cmt. 4 ("Parties to a matter may communicate directly with each other, and a lawyer is not prohibited from advising a client concerning a communication that the client is legally entitled to make.").

don't support imposing sanctions—particularly when plaintiff didn't contemporaneously request them and already received all the relief he sought.  *See Mountain W. Mines*, 470 F.3d at 954 (requiring "subjective wrongdoing" even beyond positions "stretch[ing] the bounds of reason"); *Handloser*, 2020 WL 6460986, at *5 (declining to grant money sanctions because court had "already remedied the prejudice" through ordinary litigation rulings).

*Motion to clarify the class definition.*[23]  Arguments don't become sanctionable because a court rejects them.  *See Mountain W. Mines*, 470 F.3d at 954.  Sunoco sought to clarify the class definition based on valid authority, and the Court denied the motion.  Dkt. 172; Dkt. 298 at 5.

*Post-trial motions and appellate brief.*[24]  Arguments don't become "misrepresentations" if opposing parties or even a court disagrees with them.  *See Mountain W. Mines*, 470 F.3d at 954.  And plaintiff identifies no harm from responding to the arguments he cites (at 8–9) in Sunoco's post-trial motions and appellate brief.  *See Goodyear*, 581 U.S. at 108 ("court can shift only those attorney's fees incurred because of the misconduct at issue").

### D.     Waiting to seek certiorari until there's a fully final judgment isn't sanctionable.

That leaves the issue on which plaintiff initially moved to show cause (and on which the Court invited briefing):  the alleged delay after the Tenth Circuit's November 2025 decision.[25]  Sunoco's course was reasonable.  Parties may properly wait to seek certiorari until lower-court proceedings are complete.  *See MLBPA v. Garvey*, 532 U.S. 504, 508 n.1 (2001) (confirming that Court can "consider questions determined in earlier stages of the litigation where certiorari is sought from the most recent of the judgments of the Court of Appeals" in case where petition was

---

[23]  Plaintiff's grievance no. 6 (at 6–7).

[24]  Plaintiff's grievance nos. 9–10 (at 8–9).

[25]  Plaintiff's grievance no. 12 (at 10–11).

"filed more than 90 days after *Garvey I*" but "in sufficient time . . . to review *Garvey II*"); *Bhd. of Locomotive Firemen & Enginemen v. Bangor & Aroostook R. Co.*, 389 U.S. 327, 328 (1967) (denying certiorari because "the Court of Appeals remanded the case, [so] it is not yet ripe for review"). That's all plaintiff alleges Sunoco did here.[26] It was fully justified and procedurally proper—particularly in this case, where an appellate court already stepped in once to correct finality.

### III.    Non-monetary sanctions against McClure also aren't supportable.

Plaintiff's demand (at 20–22) to punish McClure personally fares no better.

***There's no factual basis to sanction McClure.*** Plaintiff hasn't raised a single instance of bad-faith litigation conduct, which is required to invoke the only identified source of non-monetary sanctions—the Court's inherent powers. *See Goodyear*, 581 U.S. at 103–04 (inherent-power sanctions "limited to . . . bad faith"); *Mountain W. Mines*, 470 F.3d at 954 (same). As explained above, § 1927 is inapposite—it authorizes only "costs, expenses, and attorneys' fees"—not non-monetary sanctions like those plaintiff seeks against McClure.

Even if there were sanctionable conduct at issue here (there isn't), plaintiff doesn't identify what part of that conduct is attributable to McClure (as opposed to Sunoco or its other lawyers). He doesn't identify what conduct McClure personally engaged in, which decisions he was responsible for, or why anything he did warrants an individual sanction.

Notably, McClure transitioned away from the lead-counsel role after November 1, 2019, when Paul Yetter filed his appearance (Mot. 2 n.1), and plaintiff hasn't suggested he was involved with (much less bore responsibility for) Sunoco's appellate strategy. Plaintiff's failure to identify

---

[26] Plaintiff's criticism (at 10) about whether summary affirmance would be "immediate" is based on statements at a March 16, 2026 hearing, but the Tenth Circuit summarily affirmed the judgment two weeks later on March 30, confirming that any resulting delay wasn't material in the context of seeking certiorari.

the specific conduct for which he contends McClure (1) was responsible and (2) should be sanctioned denies him fair notice and deprives him of a meaningful opportunity to respond. *See Braley*, 832 F.2d at 1513 ("because the person sanctioned is entitled to notice and opportunity to be heard, the objectionable conduct must be identified sufficiently to make the opportunity to respond meaningful").[27]

To the extent plaintiff does identify any conduct involving McClure, the record in this case—the filings themselves, supported by McClure's declaration—confirms legitimate, good-faith legal argument and advocacy.

***There's no legal basis for the requested sanction, either.*** Plaintiff first asks (at 21) to revoke McClure's pro hac vice admission. But McClure isn't participating pro hac vice—and hasn't since being admitted to practice before this Court in late 2017. *See* Dkt. (list of parties and counsel).[28]

Plaintiff's requests for publication sanctions and compelled speech are similarly insupportable. His authorities are far removed from this case, which involved defending a complex class action by pressing substantial (and often successful) legal arguments.[29] Plaintiff's example

---

[27] Plaintiff's motion targets McClure alone—not other lawyers who signed the filings it attacks, or Sunoco's appellate counsel—for no stated reason, suggesting extrinsic motivations. *See Strack v. Continental Resources, Inc.*, 507 P.3d 609, 613 n.4, 617 (Okla. 2021) (Oklahoma Supreme Court agreed with McClure as class objector, over amicus brief prepared by this case's class counsel, that 40% attorney fee in mineral rights case was abuse of discretion).

[28] Sunoco previously corrected this assertion in response to plaintiff's other (denied) request for the same sanction. Dkt. 391 at 20–21.

[29] *See Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989) (pro se litigant asserted abusive action against district court clerk for purportedly "not properly processing [his] papers"); *French v. Am. Airlines, Inc.*, 427 F. App'x 666, 668 (10th Cir. 2011) (unpublished) (pro se litigant filed a third case "virtually identical" to claims already dismissed with prejudice); *Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163, 1170 (10th Cir. 2003) (attorney "hire[d] an ex-employee of an adversary who had been exposed to substantial amount of confidential information to assist in litigation"); *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1385 (10th Cir. 1994) (affirming denial of motion to disqualify based on alleged former client conflict); *Wadsworth*, 348 F.R.D. at 493–94

---

of a judicially compelled article from an unpublished, unreported order is distinguishable. *Johnson v. Gov't Emps. Ins. Co.*, No. CIV-07-868-M, Dkt. 711-5 (W.D. Okla. Apr. 14, 2008) (sanctioning gratuitous message from lawyer to opposing counsel to "[b]e like a potted plant and sit quietly in the corner").  And the First Amendment places strict constraints on the government's power to compel an attorney to recite a court-ordered message as a condition of practicing before that court. *See Janus v. Am. Fed'n of State, Cnty., & Mun. Employees, Council 31*, 585 U.S. 878, 892 (2018) ("Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional [free speech] command"); *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1033 (1991) (reversing attorney sanction that "violate[d] the First Amendment"); *see also Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (First Amendment protects "both the right to speak freely and the right to refrain from speaking at all").

Plaintiff identifies no sanctionable conduct by McClure and no lawful, workable sanction against him.  His conduct demonstrated good-faith advocacy.  The request for non-monetary sanctions should be denied.

## CONCLUSION

The Court should deny plaintiff's scattershot and insupportable request for sanctions.

---

(attorneys cited fake cases); *Rubio v. BNSF Ry.*, 548 F. Supp. 2d 1220, 1221, 1226 (D.N.M. 2008) (attorney violated ethical rules by subsidizing litigation); *Biocore Med. Techs., Inc. v. Khosrowshahi*, 1998 WL 919126, at *3 (D. Kan. Nov. 6, 1998) (attorney violated protective order on pretense that judge directed the violations).

Dated:    June 21, 2026                    Respectfully submitted,


                                           /s/ *John T. Cox III*

R. Paul Yetter (*pro hac vice*)            John T. Cox III (OBA # 34113)
pyetter@yettercoleman.com                  tcox@gibsondunn.com
Robert D. Woods (*pro hac vice*)           Bradley G. Hubbard (*pro hac vice forthcoming*)
rwoods@yettercoleman.com                   bhubbard@gibsondunn.com
YETTER COLEMAN LLP                         GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 4100                2001 Ross Avenue, Suite 2100
Houston, Texas 77002                       Dallas, Texas 75201
(713) 632-8000                             (214) 698-3100


Erin E. Murphy (*pro hac vice*)            Daniel M. McClure (OBA # 20414)
erin.murphy@clementmurphy.com              dan.mcclure@nortonrosefulbright.com
CLEMENT & MURPHY PLLC                       NORTON ROSE FULBRIGHT US LLP
706 Duke Street                            1550 Lamar Street, Suite 2000
Alexandria, Virginia 22314                 Houston, Texas 77010-4106
(202) 742-8900                             (713) 651-5159


                    ATTORNEYS FOR SUNOCO DEFENDANTS



                        CERTIFICATE OF SERVICE

    I certify that a true and correct copy of this document was served on all counsel of record

by electronic service.


                                           /s/ *John T. Cox III*
                                           John T. Cox III