**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| PERRY CLINE, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 17-cv-313-JAG |
| SUNOCO, INC. (R&M) and SUNOCO PARTNERS MARKETING & TERMINALS, L.P., | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Sunoco's Response to Plaintiff's Motion for Sanctions (Dkt. 715) is more of the same song that has permeated this lawsuit. Sunoco ignores the actual arguments and attempts to distract with others. Sunoco ignores the complete record, hoping to look at each abusive tactic in isolation. Sunoco and its lawyer refuse to acknowledge their conduct. And Sunoco and Dan McClure continue to feign ignorance to what is glaringly obvious to everyone else: their litigation strategy was designed to continue the business strategy Sunoco developed years ago (keeping money that does not belong to it). Sunoco's continued protestations that this is not their strategy cannot be reconciled with the facts, including that they quit challenging the Court's interpretation of the PRSA (requiring payment of interest at the time of a late payment) years ago.

**I.    SUNOCO'S RESPONSE DISTORTS PLAINTIFF'S POSITION (AND REALITY)**

Sunoco claims a surprising number of victories in its Response for a case in which Sunoco was found to have intentionally violated Oklahoma law for years to withhold over one hundred million dollars from royalty owners. Sunoco does so to try to undermine Plaintiff's argument that

Sunoco's position on the PRSA was frivolous. The record reveals the absurdity of Sunoco's argument that "it succeeded in considerable part" in this litigation. Dkt. No. 715 at 3.

The frivolous defense/position at the heart of Plaintiff's Motion is Sunoco's fundamental (mis)interpretation of the PRSA—*i.e.*, that interest accrues but never becomes due. *See* Dkt. No. 715-1 at ¶71 ("Sunoco's position on the PRSA was that the statutory language (providing interest "shall earn" and a first purchaser "shall be liable") does not create a self-executing payment duty absent a demand."). That interpretation necessitated and permeated this litigation. Dan McClure perpetuated it and doubles down on it in his affidavit. *See* Dkt. No. 715-1 at ¶¶70–73. Sunoco's Response tries to distract from its position on the PRSA and the centrality of that issue in this case, focusing instead on other issues. *See, e.g.*, Dkt. No. 715 at 17-18 (claiming that Sunoco "prevailed on three of plaintiff's four claims"). But Sunoco ignores that its fundamental position in this case was defeated at summary judgment because it was so wholly unsupportable that it could be stricken as a matter of law (and was not worth appealing). That position, which Mr. McClure (unlike his client) continues to champion, is frivolous, has always been frivolous, and cannot be ignored simply because Sunoco "prevailed" on Plaintiff's alternative claims for equitable relief and Plaintiff's additional claim that Sunoco's conduct was fraudulent.

Additionally, Sunoco plays up the Court's and Plaintiff's statements that the case presented "novel and highly difficult questions" as some sort of comment on the reasonableness of Sunoco's conduct in the case. Not so. There is no doubt that this case presented novel and highly difficult questions—as would any case where a party distorts the law and the record as much as Sunoco has here. Sunoco repeatedly took positions and executed strategies that were beyond the bounds of reason. And it took great skill and resolve to combat them. But, as this Court noted, that Sunoco and its lawyers continued to invent new ways to continue withholding the Class's money is less a

2

testament to their ingenuity, and more so that "good conscience has not spoken to Sunoco or its counsel." Dkt. No. 708 at 9.

Sunoco addresses each example of abusive conduct from Plaintiff's Motion as if it existed in isolation in a vacuum—an attempt to downplay the pervasiveness of its bad faith. *See* Dkt. No. 715 at 6-10. The approach is unavailing. One must view Sunoco and Mr. McClure's conduct in totality and, when one does, one clearly sees why it is "unconscionable." Evey action Plaintiff's Motion describes—every decision Sunoco has made in this case—has been to further Sunoco's and Mr. McClure's deliberate obstructionist strategy to perpetuate its unlawful scheme.

Worse still, Sunoco chose to deploy its bad-faith litigation tactics over a sum of money that Sunoco has conceded was "never a significant … amount" to it. *See* Dkt. No. 298 at 46. It is obstruction for obstruction's sake. Sunoco is willing and able to pay an endless supply of lawyers to say and do whatever they can to "stretch things out" (*see* Dkt. No. 708 at 9)—to make it harder and less attractive for royalty owners to stand up and demand what's rightfully theirs. That sort of abuse is precisely what sanctions are designed to combat.

II.     **NEITHER THIS COURT, THE TENTH CIRCUIT, NOR PLAINTIFF, HAVE ACKNOWLEDGED THAT SUNOCO "ACTED REASONABLY IN MOST INSTANCES THAT ARE NOW ALLEGED TO BE SANCTIONABLE" AS SUNOCO BOLDLY CLAIMS**

The entirety of Sunoco's Response continues Sunoco's and Mr. McClure's habit of boldly mischaracterizing the record. The Tenth Circuit stated that Sunoco did not challenge "the district court's findings that Sunoco and its counsel engaged in litigation obstruction." *Cline v. Sunoco, Inc.*, 159. F.4th 1171, 1183 (10th Cir. 2025). This Court has repeatedly shared its view of Sunoco's and its counsel's tactics in the case as well as Sunoco's business scheme. For Sunoco to now contend that such statements or findings "lend[] no support to the contention that Sunoco or its counsel acted in bad faith" is laughable. *See* Dkt. No. 715 at 20. Lawyers and parties are not

supposed to try to "derail" or "obstruct" discovery or litigation as a strategy. Obstruction *is* bad faith. Yet that was Sunoco's and Mr. McClure's strategy from the start.

### III.    THE LAW SUPPORTS SANCTIONS AGAINST SUNOCO

Sunoco's sole legal argument against the imposition of monetary sanctions is the notion that the *Goodyear* case somehow overruled or displaced the sanctions authority cited in Plaintiff's Motion, primarily the Supreme Court's decision in *Chambers*. It did not. *Chambers* continues to be the principal case discussed in treatises regarding federal courts' inherent power to sanction. *See, e.g.,* Wright & Miller, 20 FED. PRAC. & PROC. DESKBOOK § 74, *Sanctions* (2d ed., April 2026 Update) ("First, the courts have an 'inherent power' to control their dockets and the people appearing before them. … The Supreme Court discussed the 'inherent power' of the district courts in *Chambers v. NASCO, Incorporated*."). *Goodyear* did not overrule *Chambers*. Indeed, *Goodyear* repeatedly cites *Chambers* with approval and, in particular, as an example of the sort of "exceptional case[]" when "the but-for standard … permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Goodyear Tire & Rubber Co.*, 581 U.S. at 110; *see also id.* at 107. As Plaintiff's Motion demonstrates, this is precisely one of those "exceptional cases."

Plaintiff does not run from the "but-for standard." Plaintiff's Motion argues the full fee shift is appropriate here *because*:

> The "unconscionable conduct in this case"… goes beyond the most recent tactics employed "in the effort to prevent the day of judgment." ***Unconscionable conduct has permeated the litigation from the start***. As this Court found when it first announced the judgment back in 2020: "When it became clear that the case would move forward, Sunoco adopted a number of tactics to derail the litigation."

Dkt. No. 711 at 1 (internal citations omitted; emphasis added); *accord id.* at 2 ("Sunoco and its counsel's efforts to derail this litigation began from the moment discovery began."); *see also* Dkt.

4

No. 715 at 6 ("[P]laintiff devotes his sanctions motion to airing a plethora of grievances about how this case was litigated *from its inception in October 2017*—nearly nine years ago.").

Plaintiff relies on *Chambers* because it is most analogous to the circumstances here. This is not like *Goodyear*, where the court was asked to impose a full-fee sanction as a result of a single act of bad faith. *See* 581 U.S. at 104 (sanctions premised on defendant's failure to disclose product test results in discovery). Rather, like the defendant in *Chambers*, Sunoco's "'entire course of conduct' throughout, and indeed preceding the litigation … was 'part of a sordid scheme' to defeat a valid claim" through "harassment, repeated and endless delay, mountainous expense and waste of financial resources." *Id.* (quoting *Chambers*, 501 U.S. at 51, 57); *Chambers*, 501 U.S. at 56–57.

As Plaintiff explained in its Motion and again here, this entire litigation stemmed from Sunoco's *and* Mr. McClure's intentional choice to ignore the duties imposed by the PRSA and adopt a blatantly frivolous position that the Oklahoma Legislature wrote a statute that said Sunoco "shall be liable" for interest but never actually had to pay it. There would have been no lawsuit had Sunoco merely paid the money it knew it owed. *See* Dkt. No. 298 at 43 ("Cline proved by clear and convincing evidence that Sunoco knew it owed interest payments and intentionally withheld that interest until—and unless—the owner finally asked for the interest."); *compare with Goodyear*, 581 U.S. at 110 ("If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award."). Sunoco's entire litigation strategy was designed to preserve its ability to maintain that knowingly absurd position to withhold other royalty owners' money—to "force all 53,000 victims of its scheme to file independent claims, just as it has tried to compel them to make individual requests for interest," now in the "hope[] that the owners will abandon their claims, most of which are small, rather than incur the cost and effort to take on a behemoth." *See* Dkt. No. 298 at 18. And

Sunoco compounded that original sin with the series of "harassment, repeated and endless delay, mountainous expense and waste of financial resources" detailed in Plaintiff's Motion.

This Court should, of course, look to *Goodyear*. It should compare the facts of that case, of *Chamber*s, and of others cited to the facts here. And it should, consistent with the holding of *Goodyear*, make its sanctions decision based on the fees it believes were incurred "because of" Sunoco's misconduct.

But it should <u>not</u> allow that exercise to turn into a second (if not third) major round of litigation. As *Goodyear* itself acknowledges:

> trial courts … need not, and indeed should not, become green-eyeshade accountants (or whatever the contemporary equivalent is). The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection. Accordingly, a district court may take into account its overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. The court may decide, for example, that all (or a set percentage) of a particular category of expenses—say, for expert discovery—were incurred solely because of a litigant's bad-faith conduct. And such judgments, in light of the trial court's superior understanding are entitled to substantial deference on appeal.

581 U.S. at 110 (internal marks and citations omitted).

## IV.    MR. MCCLURE SHOULD BE SANCTIONED FOR HIS CONDUCT

Finally, Mr. McClure argues that he should not be sanctioned because he did not do anything wrong and has not been lead counsel since November 1, 2019. *See* Response at 23.[1]

Regarding timing, at least seven of the twelve specific instances of abuse Plaintiff included in the Motion occurred prior to November 1. Thus, it is unclear why the timing of Mr. McClure's

---

[1] Oddly, Mr. McClure also claims he does not have a "meaningful opportunity to respond" to the Motion despite the fact that: (1) Plaintiff agreed to Sunoco's request extension of the Response deadline specifically for Mr. McClure's injury; and (2) Mr. McClure provided an 18-page single spaced declaration in response.

removal as lead counsel matters for evaluating whether sanctions are appropriate, particularly given that he continued to participate in the case since that time.

Regarding the nature of Mr. McClure's abuse, the Court has seen his conduct in this case has all of the information it needs to determine whether sanctions are appropriate. There is no need for Plaintiff to repeat that conduct again here. Mr. McClure's declaration does not change the facts or provide any revelations about why his vexatious litigation tactics were somehow proper when viewed in hindsight.

Regarding the sanctions requested, Plaintiff acknowledges that Mr. McClure has been admitted to practice in the Eastern District of Oklahoma since originally appearing via *pro hac* status. However, that changes little about the appropriate remedy. Instead of revoking his pro hac, the Court can and should revoke his admission to the Eastern District of Oklahoma for his violations of the Rules of Professional Conduct for a period of less than two years. *See* Local Rule 83.6 (governing attorney discipline in the District and adopting the Oklahoma Rules of Professional Conduct).

Mr. McClure claims that the effect of the sanctions requested on him "could be substantial." McClure Declaration at ¶17. Sanctions are intended to be substantial, otherwise they are useless. Thus, if the Court agrees that Mr. McClure's conduct was unconscionable and rises to the level of sanctionable, then it should impose sanctions that have a substantial effect. Otherwise, the type of strategies and tactics deployed here will continue. Lawyers and businesses will view such strategies as effective ways to withhold money they or their clients owe. The next generation of lawyers will use the same strategies and nothing will change.

Substantial sanctions are appropriate.

Respectfully submitted,

*/s/Drew Pate*
Bradley E. Beckworth, OBA No. 19982
Jeffrey Angelovich, OBA No. 19981
Drew Pate, OBA No. 34600
Trey Duck, OBA No. 33347
**NIX PATTERSON, LLP**
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
*bbeckworth@nixlaw.com*
*jangelovich@nixlaw.com*
*dpate@nixlaw.com*
*tduck@nixlaw.com*

Susan Whatley, OBA No. 30960
**NIX PATTERSON, LLP**
P.O. Box 178
Linden, Texas 75563
Telephone: (903) 215-8310
*swhatley@nixlaw.com*

Phillip G. Whaley, OBA No. 13371
Jason A. Ryan, OBA No. 18824
Paula M. Jantzen, OBA No. 20464
**RYAN WHALEY**
400 N. Walnut Ave.
Oklahoma City, OK  73104
Telephone:  405-239-6040
Facsimile:  405-239-6766
*pwhaley@ryanwhaley.com*
*jryan@ryanwhaley.com*
*pjantzen@ryanwhaley.com*

Michael Burrage, OBA No. 1350
**WHITTEN BURRAGE**
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73103
Telephone: (405) 516-7800

8

Facsímile: (405) 516-7859
*mburrage@whittenburragelaw.com*

Robert N. Barnes, OBA No. 537
Patranell Lewis, OBA No. 12279
Emily Nash Kitch, OBA No. 22244
**BARNES & LEWIS, LLP**
208 N.W. 60th Street
Oklahoma City, OK  73118
Telephone: (405) 843-0363
Facsimile: (405) 843-0790
*rbarnes@barneslewis.com*
*plewis@barneslewis.com*
*ekitch@barneslewis.com*

Lawrence R. Murphy, Jr., OBA No. 17681
**SMOLEN LAW, PLLC**
611 South Detroit Avenue
Tulsa, Oklahoma 74120
Telephone: (918) 777-4529
*larry@smolen.law*

**CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send email notification of such filing to all registered parties.

*/s/Drew Pate*

9